

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| MULLEN INDUSTRIES LLC, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | No. 2:24-cv-00049-JRG |
| | § | |
| SAMSUNG ELECTRONICS CO., LTD. and | § | ▬▬▬▬▬ |
| SAMSUNG ELECTRONICS AMERICA, | § | |
| INC., | § | **JURY TRIAL DEMANDED** |
| | § | |
| *Defendants.* | § | |

**SAMSUNG'S MOTION TO TRANSFER VENUE TO THE
<u>NORTHERN DISTRICT OF CALIFORNIA UNDER 28 U.S.C. § 1404(a)</u>**

## TABLE OF CONTENTS

**Page**

I.  FACTUAL BACKGROUND ................................................................. 1

    A.  Mullen's Complaint Accuses Samsung and Google Functionality ...................... 1

    B.  Samsung's Relevant Witnesses and Documents are Primarily in Korea ............... 2

    C.  Third-Party Google's Witnesses and Documents are Primarily in the NDCA ....... 4

    D.  Third Party Prior Artists are Located in the NDCA and California ..................... 5

    E.  Apple's Prior Transfer to the NDCA .................................................... 6

II.  LEGAL STANDARD ..................................................................... 6

III. ARGUMENT ................................................................................ 7

    A.  This Case Could Have Been Brought in the NDCA ................................. 7

    B.  All Private Factors Favor Transfer ..................................................... 7

        1.  The Availability of Compulsory Processes Strongly Favors Transfer ....... 7

        2.  Access to Sources of Proof Favors Transfer ................................. 9

        3.  Cost of Attendance for Willing Witnesses Favors Transfer .................. 10

        4.  Other Practical Problems is Neutral ........................................... 12

    C.  The Public Interest Factors Favor Transfer to the NDCA ......................... 13

        1.  The NDCA Has a Strong Local Interest ..................................... 13

        2.  The Remaining Public Interest Factors are Neutral ......................... 13

IV. CONCLUSION ........................................................................... 14

**TABLE OF AUTHORITIES**

**Page**

**Cases**

*Adaptix, Inc. v. HTC Corp.*,
  937 F. Supp. 2d 867 (E.D. Tex. 2013) ........................................................................... 7

*Auto. Body Parts Ass'n v. Ford Glob. Techs., LLC*,
  No. 4:13-CV-705, 2015 WL 123852 (E.D. Tex. Jan. 7, 2015) ................................. 12

*Fujinomaki v. Google Inc.*,
  No. 2:15-cv-1381-JRG-RSP, 2016 WL 2807798 (E.D. Tex. May 13, 2016) .......... 12

*In re Apple Inc.*,
  No. 2022-128, 2022 WL 1196768 (Fed. Cir. Apr. 22, 2022) .................................... 9

*In re Clarke*,
  94 F.4th 502 (5th Cir. 2024) ...................................................................................... 14

*In re Genentech Inc.*,
  566 F.3d 1338 (Fed. Cir. 2009) ...................................................................... 9, 10, 14

*In re Google LLC*,
  58 F.4th 1379 (Fed. Cir. 2023) ...................................................................... 9, 10, 13

*In re Google LLC*,
  No. 2021-170, 2021 WL 4427899 (Fed. Cir. Sept. 27, 2021) .................................. 10

*In re Google LLC*,
  No. 2021-171, 2021 WL 4592280 (Fed. Cir. Oct. 6, 2021) ...................................... 13

*In re Google LLC*,
  No. 2022-140, 2022 WL 1613192 (Fed. Cir. May 23, 2022) ...................... 8, 9, 10, 12

*In re Juniper Networks, Inc.*,
  14 F.4th 1313 (Fed. Cir. 2021) ............................................................................. 9, 10

*In re Samsung Elecs. Co., Ltd.*,
  No. 2023-146, 2023 WL 8642711 (Fed. Cir. Dec. 14, 2023) .................................. 11

*In re Samsung Electronics Co.*,
  2 F.4th 1371 (Fed. Cir. 2021) .......................................................................... 8, 10, 12

*In re TikTok, Inc.*,
  85 F.4th 352 (5th Cir. 2023) ...................................................................................... 11

*In re Volkswagen AG*,
  371 F.3d 201 (5th Cir. 2004) ........................................................................................ 7

*In re Volkswagen of Am., Inc.*,
  545 F.3d 304 (5th Cir. 2008) ........................................................................................ 6

*Porto Tech. Co. v. Samsung Elecs. Am., Inc.*,
  No. 2:15-cv-458-JRG-RSP, 2016 WL 937388 (E.D. Tex. Mar. 11, 2016) .......... 8, 12

*Realtime Data LLC v. Teradata Operations, Inc.*,
   No. 6:15-CV-463-RWS-JDL, 2016 WL 235183 (E.D. Tex. Jan. 20, 2016) ........................... 11

**Statutes**

28 U.S.C. § 1391(c)(3) ............................................................................................................. 7

28 U.S.C. § 1400(b) ................................................................................................................. 7

28 U.S.C. § 1404(a) ................................................................................................................. 6

**Rules**

Fed. R. Civ. P. 45(c)(1) ........................................................................................................... 7

Defendant Samsung[1] respectfully moves to transfer this action filed by Plaintiff Mullen to the Northern District of California ("NDCA") under § 1404(a).

The relevant events, individuals, and evidence in this case bear little, if any, connection to Texas.  Mullen lacks any connection to Texas—it is a Delaware LLC, and its principal and the sole inventor of the patents resides in Pennsylvania.  Mullen's infringement theories, meanwhile, are predicated on three software applications: (1) Google Maps; (2) notifications on Samsung watches running Wear OS; and (3) Samsung's SmartThings Find.  Google Maps and Wear OS are developed by third-party Google, whose relevant, knowledgeable employees are primarily located in the NDCA, where Google is based, and not in Texas.  This Court and the Federal Circuit have transferred past cases filed against Samsung that were predicated on third-party Google software developed in the NDCA, including Google Maps.  Samsung requests the same outcome here.

SmartThings Find's development also supports transfer as it was developed by SEC in Korea, which is closer to the NDCA than to this District.  Further, the feature is a downloadable add-on application in the SmartThings platform that originated from an NDCA-based company that Samsung acquired.  Samsung has also identified eight prior art authors in California.  Because the events that give rise to this lawsuit depend on evidence and witnesses located in the NDCA and Korea, this case should be transferred to the NDCA.

## I.     FACTUAL BACKGROUND

### A.     Mullen's Complaint Accuses Samsung and Google Functionality

Mullen filed this case on January 26, 2024, asserting nine patents against Samsung: U.S. 11,246,024 (the "'024 Patent"), 11,234,117 (the "'117 Patent"), 11,190,633 (the "'633 Patent"), 11,122,418 (the "'418 Patent"), 11,109,218 (the "'218 Patent"), 11,096,039 (the "'039 Patent"),

---

[1] "Samsung" refers collectively to Defendants Samsung Electronics Co., Ltd. ("SEC") and Samsung Electronics America, Inc. ("SEA").  "Mullen" refers to Plaintiff Mullen Industries LLC.

█████████

9,635,540 (the "'540 Patent"), 9,204,283 (the "'283 Patent"), and 8,374,575 (the "'575 Patent"). Compl., Dkt. 1 at 1. As summarized in the table below, Mullen's infringement contentions are predicated on three categories of software applications or features: (1) Google Maps running on Samsung devices; (2) notifications of calls and other events on Samsung watches running Google's Wear OS software; and (3) Samsung's SmartThings Find application, which is a downloadable add-on application in the SmartThings platform. Exs. A-C, Infringement Contentions for the '039, '540, and '633 Patents, respectively.[2] Mullen's allegations against Google Maps are based on the application itself, and not on any particular modification by Samsung. Ex. B at 31-35.

| Asserted Patent(s) | Accused Software and Products |
|---|---|
| '039, '283, '218, '575, '418, '117, '024 | Google Maps, SmartThings Find on mobile devices |
| '540 | Google Maps on mobile devices |
| '633 | Notifications on watches running Wear OS |

Mullen is a Delaware LLC, and the sole inventor of the asserted patents, Jeffrey Mullen, resides in the Pittsburgh, Pennsylvania area. Dkt. 1 ¶ 19; Ex. D, Jeffrey Mullen LinkedIn profile.

### B.    Samsung's Relevant Witnesses and Documents are Primarily in Korea

SEC is a Korean corporation with its principal place of business in Suwon, Republic of Korea. Declaration of ███████ (hereinafter, "SEC Decl.") ¶ 6. SEA is a wholly-owned subsidiary of SEC and a New York corporation with its principal place of business in Ridgefield Park, New Jersey. Declaration of ███████ (hereinafter, "SEA Decl.") ¶¶ 6-7. SEA maintains corporate offices throughout the United States, including in Plano, Texas. SEA's activities are focused on commercialization, sales, and marketing for Samsung devices. Id. ¶ 8. SEA also maintains an office in Mountain View, California (in the NDCA), where it has over ███ regular full-time employees. Id. ¶ 12.

---

[2] All exhibit citations are to the declaration of Cason Cole, filed herewith.

FILED UNDER SEAL

Neither SEC nor SEA has any employees who research, design, or develop Google Maps. SEC Decl. ¶ 11; SEA Decl. ¶ 11. Nor do they have access to any proprietary documentation or source code for Google Maps. *Id*. SEC employees who manage the supply and commercial relationship with Google regarding Google Maps are in Korea and include ███████████ SEC Decl. ¶ 10.

**SmartThings Find**: The SmartThings platform was developed by SmartThings, Inc. ("STI"), which is based in Mountain View, California, and which Samsung acquired in 2014. SEC Decl. ¶¶ 8-9. The accused application, SmartThings Find, was previously called "Find My Mobile" and was developed by SEC engineers in Korea. While its core functionality, including the accused functionality, has remained essentially the same, it is now integrated as a downloadable add-on application in the SmartThings platform. *Id*. ¶ 9. STI has ██ employees in the NDCA and does not have a place of business in the EDTX. *Id*. ¶ 8. Design documents and source code for the SmartThings Find application are located in Korea. *Id*. ¶ 17. Samsung employees knowledgeable about ████████████████████ are located in Korea and include ████████████ *Id*. ¶ 9.

**Samsung Watches**: For Samsung watches, Mullen accuses notifications of calls and other events generated on the watches running the Wear OS software. SEC Decl. ¶ 13; Ex. C. Wear OS is designed and developed by Google, and ████████████████ SEC Decl. ¶ 14; Declaration of ████████ (hereinafter, "Google Wear OS Decl.") ¶ 2. SEC employees responsible for ████████████████ are also in Korea and include ████████ *Id*. ¶¶ 14-15. SEC maintains design documents and source code for its ████████████ in Korea. *Id*. ¶¶ 16-17.

█████████████

### C.    Third-Party Google's Witnesses and Documents are Primarily in the NDCA

**Google Maps:**  Mullen accuses two features within Google Maps running on Samsung devices of infringement: (1) the Google Maps Location Sharing feature, and (2) the user interface for Google Maps directions.  Ex. B at 28, 31.  The Google employees with relevant knowledge about these features are summarized in the table below.  Declaration of ████████ (hereinafter, "Google Maps Decl.") ¶¶ 3, 6-7.

| Google Employee | Location | Title / Role | Accused Feature |
|---|---|---|---|
| ████████ | San Francisco, CA | Software Engineer | Location Sharing |
| ████████ | Mountain View, CA | Software Engineer | Location Sharing |
| ████████ | Mountain View, CA | Software Engineer | Location Sharing |
| ████████ | Mountain View, CA | Software Engineer | Location Sharing |
| ████████ | San Francisco, CA | Software Engineer | Location Sharing |
| ████████ | Mountain View, CA | Software Engineer | Location Sharing |
| ████████ | Mountain View, CA | Software Engineer | Location Sharing |
| ████████ | Seattle, WA | Software Engineer | Location Sharing |
| ████████ | Bellevue, WA | Product Manager | Location Sharing |
| ████████ | New York, NY | Software Engineer | Location Sharing |
| ████████ | New York, NY | Software Engineer | Location Sharing |
| ████████ | Mountain View, CA | Group Product Manager | Interface for Directions |
| ████████ | Mountain View, CA | Director, Product Management | Interface for Directions and Location Sharing |

Other engineers who work on the user interface for Google Maps directions are located in Seattle, Washington; Tokyo, Japan; and Sydney, Australia.  *Id.* ¶ 4.  There are no Google employees in Texas who have worked on the Location Sharing feature of Google Maps or who are on the Directions XP team that is responsible for the user interface for Google Maps directions. *Id.* ¶¶ 2-7.  Relevant technical documents and source code for Google Maps are maintained by the employees who work on the product; thus, most of the relevant documents and source code would be maintained primarily in the NDCA as well as Bellevue, Seattle, New York, Tokyo, and Sydney. *Id.* ¶ 7.



**Google Wear OS**:  As discussed, ███████████████████████████████ ██████████████████████████████████████████████ which Mullen accuses of infringement.  SEC Decl. ¶¶ 13-14; Ex. B at 4.  The Google employees responsible for Wear OS's accused features—including ████████████████████████████ ████████████████████████████████████████—are mostly located in the NDCA or London, UK, with some members located in Seattle or abroad in Canada.  Google Wear OS Decl. ¶¶ 4-7.  No Google employees in Texas work on the teams led or managed by ██████████████████ which are collectively responsible for the accused Wear OS features.  *Id*. ¶ 8. Google's technical documents and source code for the accused Wear OS features are maintained by the employees who work on that feature and so, such documents and source code would be primarily maintained in the NDCA and London.  *Id*. ¶ 9.

### D.     Third Party Prior Artists are Located in the NDCA and California

In preparing its forthcoming invalidity contentions, Samsung has identified the following prior art references, each of which has authors or inventors located in the NDCA and California. Ex. E, Samsung's Prior Art References; ██████████████████   Each of these references discloses the same general subject matter as eight of the asserted patents, relating to controlling access to location information among mobile device users.  This includes CellPoint "Finder!," a prior art product developed by CellPoint Systems AB and its subsidiary, NDCA-based CellPoint, Inc.  CellPoint "Finder!," was on sale or in public use no later than February 2000, before the priority date of the asserted patents.  The CellPoint "Finder!" system allows users to create a friends list and request the location of friends as determined by cell tower information.

| Reference | Author / Inventor | Location |
|---|---|---|
| CellPoint "Finder!" | ████████████████ | Placerville, CA<br>La Quinta, CA |
| U.S. Patent No. 7,366,522 | ████████████████ | San Jose, CA |

████████████████

| | | |
|---|---|---|
| U.S. Patent No. 6,133,853 | ████████████ | San Clemente, CA |
| U.S. Patent No. 6,415,224 | ██████████ | Torrance, CA |
| U.S. Patent No. 7,177,651 | ████████████ | San Diego, CA |
| U.S. Patent Pub. No. 2002/0137523 | ████████████ | San Jose, CA |

### E.    Apple's Prior Transfer to the NDCA

In February 2022, Mullen asserted the same nine patents against Apple in the Western District of Texas ("WDTX").  *Mullen Indus. v. Apple Inc.*, No. 6:22-CV-00145-ADA, Dkt. 1 (W.D. Tex. 2022) ("*Mullen v. Apple*").  There, Apple was successful in its motion to transfer to the NDCA based on its arguments that the relevant Apple engineers and evidence were in the NDCA, while plaintiff had no connection to Texas.  *Id*., Dkt. 39; Ex. G, *Mullen v. Apple* Transfer Order (transferring case based on finding that the "willing witnesses" and "sources of proof" factors favored transfer because the accused products were developed in the NDCA and, accordingly, most of the relevant Apple employees were located there, despite the presence of two Apple engineers and some relevant technical documents in the WDTX). ██████████

█████████████████████████

██████████████████████████

█████████████████████████

█████████████████████████

█████████████

## II.    LEGAL STANDARD

Section 1404(a) requires the moving party to first show that the claims "might have been brought" in the proposed transferee district.  *In re Volkswagen of Am., Inc*., 545 F.3d 304, 312-13 (5th Cir. 2008).  Second, the movant must demonstrate that the "transferee venue is clearly more convenient" under private and public factors, which are: 1) the relative ease of access to sources of proof; 2) the availability of compulsory process to secure the attendance of witnesses; 3) the

cost of attendance for willing witnesses; 4) all other practical problems that make trial of a case easy, expeditious, and inexpensive; 5) the administrative difficulties flowing from court congestion; 6) the local interest in having localized interests decided at home; 7) the familiarity of the forum with the law that will govern the case; and 8) the avoidance of unnecessary problems of conflict of laws. *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004).

## III.   ARGUMENT

### A.     This Case Could Have Been Brought in the NDCA

A patent infringement case may be brought in "the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business." 28 U.S.C. § 1400(b). SEA has offices with over ███ regular full-time employees in the NDCA. SEA Decl. ¶ 12. SEC is a foreign corporation, so venue is proper in any district. *See* 28 U.S.C. § 1391(c)(3). Thus, this case could have been brought in the NDCA.

### B.     All Private Factors Favor Transfer

#### 1.   The Availability of Compulsory Processes Strongly Favors Transfer

Compulsory process strongly favors transfer because numerous relevant third-party witnesses reside in the NDCA or California. The subpoena power of a federal court extends to either within 100 miles from the court or "within the state where the person resides" if the person "would not incur substantial expense" to attend trial. Fed. R. Civ. P. 45(c)(1). "Transfer is favored when a transferee district has absolute subpoena power over a greater number of non-party witnesses." *Adaptix, Inc. v. HTC Corp.*, 937 F. Supp. 2d 867, 874 (E.D. Tex. 2013).

Here, at least fourteen relevant third-party witnesses are in the NDCA, with ***none*** in the EDTX. Central to this litigation are Google's engineers in the NDCA who are most knowledgeable about the design of the accused features of Google Maps and of Wear OS as provided to Samsung.

██████████████████

Eleven of those engineers and their teams are located in the NDCA—each of whom has information relevant to resolving Mullen's infringement allegations. *See supra*, § I.C. In addition, seven prior art witnesses with knowledge of relevant prior art reside in California. *Id*. § I.D. On the other hand, there are no relevant third-party Google witnesses located in Texas. Google Maps Decl. ¶ 4; Google Wear OS Decl. ¶ 8.

Additionally, the NDCA is also where ████████████████████████████ ████████████████████████████████████████████████, are both located. *Id*. § I.E. ████████████████████████████████████ ████████████████████████

Thus, the merits of non-infringement, invalidity, and damages will be affected by testimony and information from these third parties in California. This case is therefore analogous to *AGIS Software Development LLC v. Samsung Electronics Co.*, No. 2:19-cv-362-JRG (E.D. Tex.), which was transferred to the NDCA in part because third-party Google engineers for the accused software applications (including Google Maps) running on Samsung devices were located there. *In re Google LLC*, No. 2022-140, 2022 WL 1613192, at *1 (Fed. Cir. May 23, 2022).[3] Similarly, in *In re Samsung Electronics Co.*, the Federal Circuit ordered transfer to the NDCA because—like here—the accusations against Samsung were predicated on third-party Google applications running on Samsung devices, and the NDCA was where "over a dozen third-party individuals" reside, while "not a single witness[, including third parties,] has been identified as residing in or near the [transferor forum]." 2 F.4th 1371, 1379 (Fed. Cir. 2021). Likewise, this Court transferred

---

[3] Indeed, the Federal Circuit ordered transfer in *AGIS* even though other aspects of that case were less favorable to transfer than here, including that AGIS had maintained an office in Texas and the transferor district court had prior experience with the same patents, including during *Markman* proceedings. *In re Google*, 2022 WL 1613192, at *4-5.

██████████████

a case against Samsung to the NDCA when the infringement allegations were premised on Google Maps, just as here.  *See Porto Tech. Co. v. Samsung Elecs. Am., Inc.*, No. 2:15-cv-458-JRG-RSP, 2016 WL 937388, at *2 (E.D. Tex. Mar. 11, 2016).  Here, there are at least nineteen relevant third-party witnesses subject to the NDCA's subpoena power, while not even a single relevant third party is located in Texas.  This factor weighs heavily in favor of transfer.

### 2.  Access to Sources of Proof Favors Transfer

The sources of proof favors transfer because a substantial portion of relevant documentary evidence is with third-party Google in the NDCA.  "In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer," so "the place where the defendant's documents are kept weighs in favor of transfer to that location."  *In re Genentech Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009).  Where, as here, "third-party companies [] provide certain accused functionality for the accused products," then sources of proof from those third parties also matter.  *In re Google LLC*, 58 F.4th 1379, 1385 (Fed. Cir. 2023).  The electronic nature of documents does not render this factor irrelevant.  *In re Google*, 2022 WL 1613192, at *3 (citing *In re Juniper Networks, Inc.*, 14 F.4th 1313, 1321 (Fed. Cir. 2021)).  This is particularly true where the personnel who created the relevant documents, electronic or otherwise, are located in one jurisdiction but not the other.  *See, e.g., In re Apple Inc.*, No. 2022-128, 2022 WL 1196768, at *4 (Fed. Cir. Apr. 22, 2022).

In this case, the bulk of relevant evidence for deciding infringement will come from (1) third-party Google in the NDCA, which developed Google Maps and Wear OS; and (2) SEC in Korea, which developed the accused SmartThings Find application and ███████████████ ███████████████.

Technical documents and source code relating to Google Maps' accused Location Sharing feature are in Google's possession and were created and maintained by the Google employees who

are mostly located in the NDCA, in addition to the Seattle area and New York City.  *See supra* §

I.C.  Google's technical documents and source code related to its development of Wear OS's

notification and related infrastructure features were created and maintained by Google employees

mostly located in the NDCA.  *Id.*

As to Samsung's evidence in Korea, because Korea is outside of either this District or the

NDCA, the location of that evidence is neutral to the analysis.  *See In re Juniper*, 14 F.4th at 1321

("[The fact that some evidence is stored in places other than either the transferor or the transferee

forum does not weigh against transfer.").  Although defendant SEA has offices in Plano and likely

maintains certain financial and marketing documents there, that same fact has not prevented

transfer from this District to the NDCA in several past cases filed against SEA where, as here, a

substantial portion of relevant technical evidence is from Google and its employees in the NDCA.

*See, e.g.*, *In re Google*, 2022 WL 1613192, at *1; *In re Samsung*, 2 F.4th at 1379.  Further, the

seven prior artists discussed in Section I.D above are likely also to have evidence in California

relating to their prior work, including documents, source code, prototypes, or samples.  The likely

presence of such physical evidence in California favors transfer.  *See, e.g., In re Google*, 58 F.4th

at 1385 (determining this factor favors the NDCA when physical prototypes are located only

there).

By contrast, Mullen's documents are likely in Pennsylvania, not in Texas.  *See supra* § I.A.

Because most of the evidence relating to the events giving rise to this lawsuit are in the NDCA,

this factor favors transfer.

### 3.   Cost of Attendance for Willing Witnesses Favors Transfer

"The convenience of the witnesses[,] is probably the single most important factor in

transfer analysis."  *In re Genentech*, 566 F.3d at 1343.  "[T]he inquiry should focus on the cost

and inconvenience imposed on the witnesses by requiring them to travel to a distant forum and to

██████████████

be away from their homes and work for an extended period of time." *In re Google LLC*, No. 2021-170, 2021 WL 4427899, at *4 (Fed. Cir. Sept. 27, 2021).

The NDCA is more convenient for Samsung's Korea-based witnesses with knowledge relevant to infringement. This includes Samsung engineers in Korea who developed the accused SmartThings Find application and ████████████████ *See supra* § I.B. The Fifth Circuit has held that California is "clearly more convenient" than Texas for employee-witnesses located in East Asia. *In re TikTok, Inc.*, 85 F.4th 352, 361 (5th Cir. 2023). The Federal Circuit has since applied *TikTok*, directing transfer in a case where it found that Samsung's employees in Korea weighed in favor of transfer to the NDCA, given the greater ease of travel there versus Texas. *In re Samsung Elecs. Co., Ltd.*, No. 2023-146, 2023 WL 8642711, at *2 (Fed. Cir. Dec. 14, 2023). The Federal Circuit's reasoning is supported here by a comparison of travel times, which shows it would take 11 hours, on one direct flight, to travel from Seoul, Korea to San Francisco in the NDCA versus 15 hours of flights and driving to travel from Seoul to Marshall, Texas. Ex. J, Flights from Seoul to San Francisco; Ex. K, Flights from Seoul to Dallas; Ex. L, drive time from Dallas to Marshall.

Further supporting transfer are the NDCA-based employees of STI which is a wholly-owned subsidiary of SEA located in Mountain View, CA. *Supra* § I.B. Allowing these California-based witnesses to "remain in their home state … significantly minimiz[es] the cost, time, and expense of travel to attend trial, which is the very purpose of § 1404(a)." *Realtime Data LLC v. Teradata Operations, Inc.*, No. 6:15-CV-463-RWS-JDL, 2016 WL 235183, at *5 (E.D. Tex. Jan. 20, 2016) (internal quotation marks omitted).

Although named defendant SEA has offices and employees in Texas, SEA's activities are focused on sales, marketing, and commercialization for Samsung devices; it has no employees in

the EDTX who work on the design and/or manufacturing of Google Maps (developed by Google),

Wear OS (developed by Google ████████████ or the SmartThings Find application

(developed by SEC).  SEA Decl. ¶ 9.  Any witnesses from SEA's Texas offices do not outweigh

the far greater number of technical witnesses traveling from the NDCA and Korea.  As such, the

Federal Circuit and this District have repeatedly directed transfer of other cases filed against SEA

where, as here, much of the technical information will come from third-party Google and its

witnesses in the NDCA.  *See, e.g.*, *In re Google*, 2022 WL 1613192, at *1; *In re Samsung*, 2 F.4th

at 1379; *Porto*, 2016 WL 937388, at *2; *Fujinomaki v. Google Inc.*, No. 2:15-cv-1381-JRG-RSP,

2016 WL 2807798, at *2 (E.D. Tex. May 13, 2016).  Similarly, in *Mullen v. Apple*, the WDTX

court found this factor favored transfer even though Apple had two engineers in WDTX, because

Apple had a far greater number of potentially relevant employee witnesses in the NDCA.  Ex. G

at 5-14.

For Mullen, transfer to the NDCA will either be more convenient or cause no additional

hardship.  Its likely main witness and the sole inventor, Jeffrey Mullen, is in Pennsylvania.  *Supra*

§ I.A.  Travel time from Pittsburgh to the NDCA is 5.5 hours, versus 6 hours traveling to the

EDTX.  Ex. M, Flights from Pittsburgh to San Francisco; Ex. N, Flights from Pittsburgh to Dallas;

Ex. L.  This factor therefore favors transfer.

### 4.    Other Practical Problems is Neutral

This case is in its early stages, so transfer would not prejudice Mullen.  The *Markman*

hearing on May 15, 2025 is still 10 months away, and fact discovery closes two weeks after that.

Dkt. 30 at 3.  Trial is scheduled for November 3, 2025, 16 months from now.  *Id.* at 1.  This District

has granted transfer under similar facts where the case remained "in its early stages" in discovery

and there was "no improper delay" by either party.  *See, e.g.*, *Auto. Body Parts Ass'n v. Ford Glob.*

*Techs., LLC*, No. 4:13-CV-705, 2015 WL 123852, at *6 (E.D. Tex. Jan. 7, 2015).

███████

### C.     The Public Interest Factors Favor Transfer to the NDCA

#### 1.     The NDCA Has a Strong Local Interest

The locus of events giving rise to Mullen's suit occurred in the NDCA, where Google designed, developed, and maintains the accused features of Google Maps and Wear OS.  Google Maps Decl. ¶¶ 2-8.  In addition, SEA's subsidiary, STI, which develops the SmartThings platform, is based in the NDCA, where it currently has ██ employees.  SEC Decl. ¶ 8.  Indeed, in transferring Mullen's case against Apple from the WDTX to the NDCA, the WDTX court cited Apple's development activities in the NDCA as weighing this factor towards transfer.  Ex. G at 24-25.

Conversely, the EDTX has little, if any local interest in this case.  Mullen does not employ personnel in the EDTX and its business activities occur in Pennsylvania, where the sole inventor is located.

Finally, while SEA has an office in this District, SEA did not develop the accused technologies and does not have access to relevant design documents or relevant source code.  SEA Decl. ¶¶ 8-11.  Thus, SEA's "general presence in [this] district does not give that district a special interest in the case."  *In re Google LLC*, No. 2021-171, 2021 WL 4592280, at *5 (Fed. Cir. Oct. 6, 2021) (directing transfer to the NDCA). This factor weighs in favor of transfer.

#### 2.     The Remaining Public Interest Factors are Neutral

The court congestion factor is entitled to little weight here.  There is no urgent need for disposition of this matter because Mullen does not allege that it manufactures or sells products that practice the asserted patents.  Ex. O, Mullen's Infringement Contentions Cover Pleading (omitting any disclosure under P.R. 3-1(f) that Mullen practices the alleged invention); *see In re Google*, 58 F.4th at 1383 (holding that "it was a clear abuse of discretion to accord this factor any weight," where plaintiff "is not engaged in product competition in the marketplace and is not threatened in the market").  Further, the Federal Circuit has long regarded the court congestion factor as "the

most speculative." *In re Genentech*, 566 F.3d at 1347.  Thus, while this District may have a shorter median time to trial than the NDCA, this should not weigh against transfer.  *See In re Clarke*, 94 F.4th 502, 510 (5th Cir. 2024) (recognizing such statistics are not "particularly relevant" in assessing court congestion).  This factor is neutral.

The last two factors also are neutral, as both the NDCA and this District are well versed in patent law and there is no prospect for any conflict of laws.

## IV.     CONCLUSION

For the foregoing reasons, this action should be transferred to the NDCA.

DATED: July 19, 2024

Respectfully submitted,


*/s/ Melissa R. Smith*
Darin W. Snyder
dsnyder@omm.com
Luann Simmons
lsimmons@omm.com
Mark Liang (pro hac vice)
mliang@omm.com
Bill Trac
btrac@omm.com
**O'MELVENY & MYERS LLP**
Two Embarcadero Center, 28th Floor
San Francisco, CA 94111
Telephone: (415) 984-8700

Xin-Yi Zhou (Tex. #24127916)
vzhou@omm.com
Stacy Yae (pro hac vice)
syae@omm.com
Paige Hardy (pro hac vice)
phardy@omm.com
**O'MELVENY & MYERS LLP**
400 South Hope Street, 18th Floor
Los Angeles, CA 90071
Telephone: (213) 430-6000

Marc Pensabene (pro hac vice)
mpensabene@omm.com
**O'MELVENY & MYERS LLP**
1301 Avenue of the Americas, 17th Floor
New York, NY 10019
Telephone: (212) 326-2000

Cason G. Cole (Tex. #24109741)
ccole@omm.com
**O'MELVENY & MYERS LLP**
2801 North Harwood Street, Suite 1600
Dallas, TX 75201-2692
Telephone: (972) 360-1900

Kyla Butler (pro hac vice)
kbutler@omm.com
**O'MELVENY & MYERS LLP**
1625 Eye Street, NW

- 15 -

Washington, DC 20006
Telephone: (202) 383-5300

G. Blake Thompson (Tex. #24042033)
Blake@TheMannFirm.com
**MANN | TINDEL | THOMPSON**
112 E. Line Street, Suite 304
Tyler, Texas 75702
Telephone: (903) 657-8540

Melissa R. Smith (Tex. # 24001351)
melissa@gillamsmithlaw.com
**GILLAM & SMITH LLP**
303 S. Washington Ave.
Marshall, Texas 75670
Telephone: (903) 934-8450

*Attorneys for Defendants Samsung Electronics Co., Ltd., and Samsung Electronics America, Inc.*

**CERTIFICATE OF CONFERENCE**

Pursuant to Local Rule CV-7(h), counsel for Defendants met and conferred with counsel for Plaintiff by email on July 10, 2024 and telephonically on July 18, 2024, and counsel for Plaintiff indicated that Plaintiff is opposed to the motion.

*/s/ Melissa R. Smith*
Melissa R. Smith

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that, on July 19, 2024, the foregoing document was filed electronically with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel registered as Filing Users.

*/s/ Melissa R. Smith*
Melissa R. Smith

*/s/ Melissa R. Smith*
Melissa R. Smith