IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| MULLEN INDUSTRIES LLC, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 2:24-cv-00049-JRG |
| | § | |
| SAMSUNG ELECTRONICS CO., LTD., and SAMSUNG ELECTRONICS AMERICA, INC., | § § § | |
| | § | |
| *Defendants*. | § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Defendants Samsung Electronics Co., Ltd. and Samsung Electronics America, Inc.'s (collectively, "Defendants") Partial Rule 12(b)(6) Motion to Dismiss Plaintiff Mullen Industries LLC's Complaint (Dkt. 1) (the "Partial Motion to Dismiss"). (Dkt. No. 13.) Having considered the Partial Motion to Dismiss and related briefing, the Court finds that it should be and hereby is **GRANTED**.

**I.   BACKGROUND**

Plaintiff Mullen Industries LLC ("Plaintiff") filed this lawsuit against Defendants on January 26, 2024, accusing Defendants of directly and indirectly infringing U.S. Patent Nos. 11,246,024; 11,234,117; 11,190,633; 11,122,418; 11,109,218; 11,096,039; 9,635,540 (the "'540 Patent"); 9,204,283 (the "'283 Patent"); and 8,374,575 (the "'575 Patent") (collectively, the "Asserted Patents"). (Dkt. No. 1.)

On May 22, 2024, Defendants filed the Partial Motion to Dismiss. (Dkt. No. 13.) Specifically, Defendants move to dismiss Plaintiff's Complaint under Rule 12(b)(6) for failure to state a claim for (1) direct infringement of the '540 Patent; (2) direct infringement of the '283

Patent; (3) direct infringement of the '575 Patent; and (4) indirect infringement of the '540, '283, and '575 Patents. (Dkt. No. 13.)

## II. LEGAL STANDARD

### A. 12(b)(6) Motion to Dismiss

Under the Federal Rules of Civil Procedure, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A Court can dismiss a complaint that fails to meet this standard. Fed. R. Civ. P. 12(b)(6). To survive dismissal at the pleading stage, a complaint must state enough facts such that the claim to relief is plausible on its face. *Thompson v. City of Waco*, 764 F.3d 500, 502 (5th Cir. 2014) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court accepts well-pleaded facts as true and views all facts in the light most favorable to the plaintiff, but the Court is not required to accept the plaintiff's legal conclusions as true. *Id.*

In the Fifth Circuit, motions to dismiss under Rule 12(b)(6) are viewed with disfavor and are rarely granted. *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009). In determining a motion to dismiss, "[t]he court may consider 'the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint.'" *Script Sec. Sols. L.L.C. v. Amazon.com, Inc.*, 170 F. Supp. 3d 928, 935 (E.D. Tex. 2016) (quoting *Lone Star Fund V (U.S.) L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010)). To be legally sufficient, the complaint must establish more than a "sheer possibility" that the plaintiff's claims are true. *Iqbal*, 556 U.S. at 678. The complaint must contain enough factual allegations to raise a reasonable expectation that discovery will reveal evidence of each element of the plaintiff's claim. *Lormand*, 565 F.3d at 255-57.

In the context of patent infringement, a complaint must place the alleged infringer on notice of what activity is being accused of infringement. *Lifetime Indus., Inc. v. Trim-Lok, Inc.*, 869 F.3d 1372, 1379 (Fed. Cir. 2017). However, the plaintiff is not required to prove its case at the pleading stage. *Id.*

### B. Direct Infringement

"[W]hoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor, infringes the patent." 35 U.S.C. § 271(a). For method claims, "[d]irect infringement under § 271(a) occurs where all steps of a claimed method are performed by or attributable to a single entity." *Akamai Techs., Inc. v. Limelight Networks, Inc.*, 797 F.3d 1020, 1022 (Fed. Cir. 2015) (en banc). The latter circumstance is often referred to as divided infringement. *See id.*

An entity is responsible for others' performance of method steps, and thus may be liable under a divided infringement theory, in two circumstances: "(1) where that entity directs or controls others' performance, and (2) where the actors form a joint enterprise." *Id.* A strict principle-agent relationship, contractual relationship, or joint enterprise, however, is not required. *Id.* at 1023. Instead, the touchstone of divided infringement is "whether all method steps can be attributed to a single entity." *Id.*

To determine whether an entity directs or controls others' performance, courts look to general principles of vicarious liability. *Id.* An actor may be liable for infringement if they act through an agent or contract with another to perform one or more steps of a claimed method. *Id.* Similarly, an actor may be liable when they "condition[] participation in an activity or receipt of a benefit upon performance of a step or steps of a patented method and establish[] the manner or timing of that performance." *Id.*

3

To determine whether two or more actors form a joint enterprise, courts apply a four-pronged test:

>  (1) an agreement, express or implied, among the members of the group;
>
>  (2) a common purpose to be carried out by the group;
>
>  (3) a community of pecuniary interest in that purpose, among the members; and
>
>  (4) an equal right to a voice in the direction of the enterprise, which gives an equal right of control.

*Id.*

### III. DISCUSSION

#### A. Plaintiff Fails to Adequately Plead Direct Infringement of the '540 Patent

First, Defendants assert that Plaintiff fails to allege that Defendants perform all steps of the claimed method. (Dkt. No. 13 at 8.) Defendants argue that the '540 Patent requires at least three separate actors. (*Id.* (identifying the three actors as the (1) user of the "first wireless device," (2) user of the "second wireless device," and (3) server).) Defendants contend that despite the '540 Patent requiring multiple actors, Plaintiff fails to allege that Defendants control the users' or remote server's actions. (*Id.* at 8.) Next, Defendants argue that Plaintiff's testing-based infringement allegations fail because Plaintiff does not allege that Defendants operate, demonstrate, or test the accused Google Maps features. (*Id.* at 8.) Defendants also argue that Plaintiff does not allege that Defendants used or tested the accused Google Maps process in an infringing manner. (*Id.*) Finally, Defendants contend that Plaintiff does not plead "direction or control" or the existence of a joint enterprise to support a divided infringement theory. (*Id.* at 9.)

In response, Plaintiff argues that the Complaint pleads that Samsung's testing infringes the claimed methods of the '540 Patent. (Dkt. No. 23 at 3 (citing Dkt. No. 1 ¶ 156).) Plaintiff asserts that Samsung's marketing documents "show and instruct how to open and use Google Maps on

4

Samsung devices," confirming that Defendants test the accused process. (*Id.* at 4.) Further, Plaintiff argues that even if Defendants' servers do not perform the claimed methods, Defendants directly infringe "because such steps are attributable to Samsung, including via a joint enterprise." (*Id.* at 7.) Plaintiff contends that a joint enterprise exists between Samsung and Google regarding the Google application and the Android ecosystem loaded on Samsung devices. (*Id.*)

In their reply, Defendants argue that the Complaint does not allege "that Samsung tests Google Maps (let alone in the U.S.) or that Samsung controls the third-party Google Maps servers as part of any alleged testing." (Dkt. No. 26 at 1.) Defendants assert that even if Plaintiff alleged that Defendants tested the Google Maps application on Samsung devices, Plaintiff "could not plausibly allege that such testing would result in Samsung's performance of the '540 Patent's 'server' steps." (*Id.* at 2.) Defendants further contend that despite Plaintiff's inclusion in its opposition, Plaintiff did not plead a joint enterprise theory in the Complaint. (*Id.*)

Plaintiff asserts that Defendants infringe at least Claim 1 of the '540 Patent. (Dkt. No. 1 ¶ 156.) Claim 1 of the '540 Patent is a method claim. (Dkt. No. 1-6 at Claim 1.) The '540 Patent requires multiple actors—a fact that Plaintiff does not seem to dispute. Therefore, this is a case of divided infringement.

For method claims, "[d]irect infringement under § 271(a) occurs where all steps of a claimed method are performed by or attributable to a single entity." *Akamai Techs.*, 797 F.3d at 1022. Plaintiff argues that all steps performed by the allegedly infringing process are attributable to Samsung. (Dkt. No. 23 at 5.) Therefore, to meet the pleading standard for divided infringement by the combined acts of multiple actors, the complaint must plead "facts sufficient to allow a reasonable inference that all steps of the claimed method are performed and either (1) one party exercises the requisite 'direction and control' over the other's performance or (2) the actors form

5

a joint enterprise such that performance of every step is attributable to the controlling party." *Lyda v. CBS Corp.*, 838 F.3d 1331, 1339 (Fed. Cir. 2017).

The Court finds that the Complaint does not plausibly plead a claim for divided infringement of the '540 Patent. The Complaint fails to allege that Defendants have the requisite "direction or control" over the other actors' performance. (Dkt. No. 1 ¶¶ 156-59.) The Complaint fails to allege the existence of a joint enterprise. (*Id.*) Recognizing its shortcomings, Plaintiff attempts to remedy this in its opposition by arguing the existence of a joint enterprise between Defendants and Google. (Dkt. No. 23 at 7-9.) In support of its new argument, Plaintiff attaches an article that includes the following language:

> Google paid $8 billion to make its apps default on Samsung phones
>
> . . .
>
> Google offered to pay Samsung $200 million over four years, so Samsung's Galaxy app store would become available within the Google Play Store rather than preinstalled on the device. The idea was later abandoned, and Google signed the current deal with Samsung that totals $8 billion over four years.

(Dkt. No. 23-5.) The Court finds this insufficient to plead a joint enterprise theory of direct infringement. At a minimum, Plaintiff's allegations, which are contained only in its opposition, fail to plead facts as to the fourth element, i.e., that Samsung and Google each have "an equal right to a voice in the direction of the enterprise, which gives an equal right of control." *See Akamai Techs.*, 797 F.3d at 1022. While Plaintiff claims it is plausible that discovery will reveal that Defendants and Google have equal right of control, Plaintiff has failed to set forth any facts to support that contention.

Regarding Plaintiff's testing-based infringement allegations, the Court finds that these allegations fall short of the pleading standard. Plaintiff's allegations that Defendants infringe the '540 Patent by testing the accused process is merely part of a boilerplate sentence of potentially

6

infringing actions. (Dkt. No. 1 ¶ 156 ("For example, on information and belief, Samsung has operated, demonstrated, and/or tested at least Samsung phones, tablets, and/or servers in the United States, which, in turn, has put into use the '540 Accused Processes that provide location-based services in a manner that infringes the '540 Patent.").) The Complaint exclusively focused its direct infringement allegations on a user's allegedly infringing activity, not on Defendants' testing or troubleshooting. (*See id.* ¶¶ 157-59.) Plaintiff attempts to remedy this shortcoming in its opposition by attaching Samsung marketing materials.[1] (Dkt. No. 23 at 4-5.) While the Court finds it plausible that Defendants may have tested the accused process or otherwise executed the allegedly infringing method during product troubleshooting, these factual allegations do not appear in the Complaint. Therefore, providing leave to amend the Complaint is appropriate.

Accordingly, the Court finds that Plaintiff has failed to plead sufficient facts to state a claim for direct infringement of the '540 Patent but gives Plaintiff leave to amend.

> **B.     Plaintiff Fails to Adequately Plead Direct Infringement of the '283 and '575 Patents[2]**

Defendants contend that the '283 and '575 Patents recite steps performed by multiple actors. (*Id.* at 9-10, 12 (identifying steps performed by "a user of the Samsung phone or tablet" and separate steps performed by a "remote server").) Defendants argue that Plaintiff fails to explain how a single entity performs all claimed method steps and, instead, relies on the actions of two distinct actors. (*Id.* at 10, 12.) Defendants assert that Plaintiff "makes no allegation that the server steps are controlled by the user, nor any allegations that the user steps are controlled by the server."

---

[1] The Court acknowledges that the Complaint cites an article about how Samsung tests its smartphones. (Dkt. No. 1 ¶ 156 n.49.) However, Plaintiff's cited evidence of testing pre-dates the issuance of the '540 Patent. (*Compare id.* (article posted February 20, 2017) *with* Dkt. No. 1-6 ('540 Patent issued April 25, 2017).) Therefore, this "is not competent evidence of infringement" to survive a motion to dismiss. *De La Vega v. Microsoft Corp.*, 2020 WL 3528411, at *5 (W.D. Tex. Feb. 11, 2020) ("It is axiomatic that a defendant cannot infringe a patent prior to its issuance.").
[2] Defendants' arguments concerning the '283 and '575 Patents are similar. (*See* Dkt. No. 13 at 9-13.) Plaintiff's opposition combines its arguments concerning the '283 and '575 Patents into one section. (See Dkt. No. 23 at 5-7.) Therefore, the Court addresses the allegations concerning the '283 and '575 Patents together.

(*Id.*) Defendants also argue that Plaintiff's testing-based infringement allegations lack sufficient support. (*Id.*) Defendants contend that Plaintiff "does not allege that Samsung operates and controls a 'remote server system' that provides the claims functionality, nor how Samsung's testing or demonstration performs these method steps as claimed by the patent." (*Id.* at 10, 13.) Defendants further argue that Plaintiff's divided infringement allegations are insufficient because Plaintiff does not identify any joint infringer, plead any facts to show "direction or control," or plead facts alleging a joint enterprise. (*Id.* at 11, 13.)

In response, Plaintiff argues that under the *Akamai* "conditioned benefit" test, Plaintiff adequately pled direct infringement. (Dkt. No. 23 at 5-6.) Plaintiff asserts that the Complaint alleges that "Samsung provides both server-side and end-user device software for the Samsung SmartThings technology." (*Id.* at 6.) Plaintiff argues that the Complaint plausibly establishes that Defendants direct or control each device's performance, whether a user-device or remote server, by conditioning participation in Defendants' SmartThings technology. (*Id.*) Plaintiff further argues that Defendants establish "the manner and timing of such performance through [Defendants'] authorship of and control over the software's corresponding computer program code." (*Id.*)

In their reply, Defendants argue that Plaintiff still fails to allege how Defendants "direct or control" their users to perform the claimed method steps. (Dkt. No. 26 at 4.) Defendants argue that in addition to not identifying the purported "benefit," Plaintiff fails to show how SmartThings technology meets either element of the *Akamai* "conditioned benefit" test. (*Id.*) Defendants further assert that Plaintiff's testing-based infringement allegations are boilerplate and say nothing about the SmartThings technology or Defendants' alleged testing in the United States. (*Id.* at 5.)

Plaintiff asserts that Defendants infringe method claims of the '283 and '575 Patents. (Dkt. No. 1 ¶¶ 173, 193; Dkt. No. 1-7 (the '283 Patent); Dkt. No. 1-8 (the '575 Patent).) Both the '283

8

and '575 Patents require multiple actors—a fact that Plaintiff does not seem to dispute. Therefore, this is a case of divided infringement.

The Court finds that Plaintiff fails to state a claim for divided infringement under the *Akamai* "conditioned benefit" test for direction and control.[3] As noted above, a defendant may be directly liable for infringing a claimed method where a third party carries out all steps of the claimed method to obtain a benefit conditioned by the defendant, and the defendant controls the manner or timing of that performance. *Akamai Techs.*, 797 F.3d at 1023.

Here, Plaintiff asserts that Defendants control their users' performance of the claimed method steps through the provision of software. (Dkt. No. 23 at 6.) The Federal Circuit has established that software is instructions, not a set of actions. *E.g.*, *Ricoh Co., Ltd. v. Quanta Compt. Inc.*, 550 F.3d 1325, 1335 (Fed. Cir. 2008) ("[S]oftware is not itself a sequence of actions, but rather it is a set of instructions that directs hardware to perform a sequence of actions."); *Fantasy Sports Props., Inc. v. SportsLine.com, Inc.*, 287 F.3d 1108, 1118 (Fed. Cir. 2002) ("Software is a set of instructions, known as code, that directs a computer to perform specified functions or operations."). The Federal Circuit has further stated that "mere guidance or instruction is insufficient" to establish the Akamai "conditioned benefit" test. *Eli Lilly & Co. v. Teva Parenteral Medicines, Inc.*, 845 F.3d 1357, 1367 (Fed. Cir. 2017); *Travel Sentry, Inc. v. Tropp*, 877 F.3d 1370, 1379 (Fed. Cir. 2017). Further, Plaintiff does not allege or provide factual support to show that Defendants impose any "conditions." Plaintiff does not identify any purported benefit. Plaintiff makes no allegations that Defendants instruct their users to use the SmartThings technology in an infringing way. Therefore, the Court finds that Plaintiff fails to state a claim for direct infringement based on allegations of direction and control through the provision of infringing software.

---

[3] The Complaint does not plead nor does Plaintiff argue the existence of a joint enterprise as a basis for direct infringement of the '283 and '575 Patents.

9

Next, regarding Plaintiff's testing-based infringement allegations, the Court finds that these allegations fall short of the pleading standard. Consistent with the Court's finding above for the '540 Patent, Plaintiff's allegations that Defendants infringe the '283 and '575 Patents by testing the accused processes are merely part of boilerplate sentences of potentially infringing actions. (Dkt. No. 1 ¶¶ 173, 193.) The Complaint exclusively focused its direct infringement allegations on a user's allegedly infringing activity, not on Defendants' testing or troubleshooting. (*See id.* ¶¶ 174-179, 195-200.) The only evidence in the Complaint to support Plaintiff's testing-based infringement allegations is a third-party article. (Dkt. No. 1 ¶¶ 173, 193.) However, this article does not support Plaintiff's allegations that Defendants test the allegedly infringing processes. While the Court finds it plausible that Defendants may have tested the accused process or otherwise executed the allegedly infringing method during product troubleshooting, these factual allegations do not appear in the Complaint. Therefore, providing leave to amend the Complaint is appropriate.

Accordingly, the Court finds that Plaintiff has failed to sufficiently plead direct infringement of the '283 and '575 Patents but gives Plaintiff leave to amend.

### C.    Plaintiff Fails to Adequately Plead Indirect Infringement of the '540, '283, and '575 Patents

Where a plaintiff has not adequately pled an underlying act of direct infringement, the court must dismiss theories of indirect infringement. *Limelight Networks, Inc. v. Akamai Techs., Inc.*, 572 U.S. 915, 921 & n.3 (2014) (explaining that "inducement liability may arise if, but only if, there is direct infringement," and declining to distinguish contributory infringement and inducement "for these purposes" because they "spring from common stock" (cleaned up)). "It is axiomatic that there can be no inducement or contributory infringement without an underlying act of direct infringement." *Nalco Co. v. Chem-Mod, LLC*, 883 F.3d 1337, 1355 (Fed. Cir. 2018)

(citation and internal quotation marks omitted). Since the Court found that Plaintiff has failed to sufficiently plead direct infringement of the '540, '283, and '575 Patents, Plaintiff's indirect infringement claims also fail.

Accordingly, the Court finds that Plaintiff has failed to sufficiently plead indirect infringement of the '540, '283, and '575 Patents.

### IV.   CONCLUSION

Defendants' Partial Motion to Dismiss (Dkt. No. 13) is **GRANTED** for the reasons stated herein. The Court **DISMISSES WITHOUT PREJUDICE** Plaintiff's claims of direct and indirect infringement for the '540, '283, and '575 Patents. Further, the Court **ORDERS** that Plaintiff is given leave to amend its Complaint to address its pleading shortcomings as discussed above. Any such amended complaint, filed for such purpose, must be filed within 14 days from the date of this Order.

**So Ordered this**

**Nov 21, 2024**

_____
RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE

11