**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| MULLEN INDUSTRIES LLC, | Case No. 2:24-cv-00049-JRG |
| *Plaintiff,* | |
| v. | **JURY TRIAL DEMANDED** |
| SAMSUNG ELECTRONICS CO., LTD., AND SAMSUNG ELECTRONICS AMERICA, INC., | |
| *Defendants.* | |

**PLAINTIFF MULLEN INDUSTRIES LLC'S
<u>OPENING CLAIM CONSTRUCTION BRIEF</u>**

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION .................................................................................................. 1

II.  APPLICABLE LEGAL PRINCIPLES ................................................................ 1

III. DISPUTED CLAIM TERMS ............................................................................... 1

    A.   Samsung's Argument That All Steps of the Method Claims Must Be Performed in Order is Wrong.................................................................... 1

        1.   '283, Claim 1 ................................................................................... 2

        2.   '575, Claim 30 ................................................................................. 5

    B.   Samsung's Argument Regarding Apparatus Claim "Steps" That Allegedly Must Be Performed In Order is Wrong ....................................... 6

        1.   '117, Claim 1 ................................................................................... 7

        2.   '117, Claim 15 ................................................................................. 9

        3.   '117, Claim 29 ............................................................................... 10

        4.   '117, Claim 42 ............................................................................... 12

        5.   '117, Claim 73 ............................................................................... 14

        6.   '024, Claim 1 ................................................................................. 15

        7.   '024, Claim 24 ............................................................................... 16

        8.   '024, Claim 45 ............................................................................... 18

    C.   "list of users" ('117, Claim 1; '024, Claim 1; '575, Claim 30) .......................... 19

    D.   "region-based" ('117, Claim 29; '039, Claim 1) ................................. 21

    E.   "distance-based" ('117, Claim 29; '039, Claim 1)............................... 23

    F.   "location information" ('283, Claim 1) ............................................... 24

    G.   "directional information" ('575, Claim 30) ........................................ 25

    H.   "said wireless telephonic device" is not indefinite ('218, Claim 11).................... 26

    I.   "said device includes motion sensing operable to distinguish between a plurality of different types of motion" ('633, Claim 1) ........................................ 27

IV.  CONCLUSION.................................................................................................... 30

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Altiris, Inc. v. Symantec Corp.*,
  318 F.3d 1363 (Fed. Cir. 2003).................................................................................... *passim*

*Ancora Techs., Inc. v. LG Elecs., Inc.*,
  No. 1-20-CV-00034-ADA, 2020 U.S. Dist. LEXIS 150002 (W.D. Tex. Aug.
  19, 2020) ...................................................................................................................4, 6

*Axcess Int'l, Inc. v. Amag Tech., Inc.*,
  No. 2:16-cv-01360-JRG-RSP, 2017 U.S. Dist. LEXIS 187212 (E.D. Tex.
  Nov. 10, 2017) .......................................................................................................3, 6, 8, 15

*C.R. Bard, Inc. v. United States Surgical Corp.*,
  388 F.3d 858 (Fed. Cir. 2004).................................................................................2, 10, 22, 25

*Energizer Holdings, Inc. v. Int'l Trade Comm'n*,
  435 F.3d 1366 (Fed. Cir. 2006)..............................................................................................26

*K-2 Corp. v. Salomon S.A.*,
  191 F.3d 1356 (Fed. Cir. 1999)..............................................................................................24

*Liebel-Flarsheim Co. v. Medrad, Inc.*,
  358 F.3d 898 (Fed. Cir. 2004)................................................................................................22

*mCom IP, LLC v. Woodforest Nat'l Bank*,
  No. 6:21-cv-989-ADA, 2022 U.S. Dist. LEXIS 79781 (W.D. Tex. May 3,
  2022) ......................................................................................................................................27

*Mformation Techs., Inc. v. Research in Motion Ltd.*,
  764 F.3d 1392 (Fed. Cir. 2014)................................................................................................4

*Nautilus, Inc. v. Biosig Instr., Inc.*,
  572 U.S. 898 (2014)................................................................................................................26

*Nobel Biocare Servs. AG v. Instradent USA, Inc.*,
  903 F.3d 1365 (Fed. Cir. 2018)................................................................................................4

*Paragon Solutions, LLC v. Timex Corp.*,
  566 F.3d 1075 (Fed. Cir. 2009)................................................................................................6

*Phillips v. AWH Corp.*,
  415 F.3d 1303 (Fed. Cir. 2005)........................................................................................ *passim*

*Renishaw PLC v. Marposs Societa' per Azioni*
    158 F.3d 1243 (Fed. Cir. 1998)..........................................................................................25

*Vitronics Corp. v. Conceptronic*,
    90 F.3d 1576 (Fed. Cir. 1996)............................................................................................2

**Other Authorities**

    L.R. 4-5(a)..........................................................................................................................1

## I.    INTRODUCTION

Plaintiff Mullen Industries LLC ("Plaintiff") respectfully submits it opening claim construction brief pursuant to the Court's Docket Control Order. Dkt. 85 at 4. For the reasons herein, the Court should adopt Plaintiff's claim constructions and reject Samsung's proposals.[1]

## II.    APPLICABLE LEGAL PRINCIPLES

The Court is intimately familiar with the legal principles of claim construction, including that commonly understood words carry their plain and ordinary meaning and need not be further construed. *E.g.*, *Phillips v. AWH Corp.,* 415 F.3d 1303, 1314 (Fed. Cir. 2005) ("In some cases, the ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges."). Additional relevant legal authority is cited in-line below.

## III.    DISPUTED CLAIM TERMS

### A.    Samsung's Argument That All Steps of the Method Claims Must Be Performed in Order is Wrong

It is well settled that "[u]nless the steps of a method actually recite an order, the steps are not ordinarily construed to require one." *Altiris, Inc. v. Symantec Corp.*, 318 F.3d 1363, 1369 (Fed. Cir. 2003) (citation omitted). It is generally apparent from the plain language of the claim whether any steps must be performed in a specific sequence. When the plain language shows that one step relies on the completion of another,  an order is required. Conversely, where a step does not depend on the results of another, no order is imposed. Here, the plain language shows that *some* claim elements, *but not all*, require a specific order of completion. *Infra*, § III (A)(1)(2).

Insisting on a blanket approach that requires performance of *all* steps in order, Samsung ignores this nuance. Samsung's approach must be rejected because it is contradicted by the intrinsic

---

[1] Pursuant to Patent L.R. 4-5(a), searchable PDF copies of the eight asserted patents are attached as Exs. 1-8. All references to exhibits are to the Declaration of Peter F. Snell submitted herewith.

record and excludes embodiments otherwise captured by the claims. *Vitronics Corp. v. Conceptronic*, 90 F.3d 1576, 1582 (Fed. Cir. 1996) ("[W]e look to the words of the claims themselves … to define the scope of the patented invention."); *C.R. Bard, Inc. v. United States Surgical Corp.*, 388 F.3d 858, 865 (Fed. Cir. 2004) (holding that a construction that excludes a preferred embodiment is "rarely, if ever, correct").

### 1.    '283, Claim 1

The plain language of Claim 1 of U.S. Patent No. 9,204,283 ("the '283 Patent") (Ex. 1) requires that *some*, but not all, steps[2] be completed in a specific order. *See* Dkt. 81-3 at 5. Specifically, the parties agree that:

- step [a] must complete before step [b] completes because step [b] refers to a selection of one of the plurality of users previously displayed in step [a] (i.e., step [a] ("displaying … a plurality of users"); step [b] ("receiving … a selection of one of said plurality of users");

- step [b] likewise must complete before step [d] completes because step [d] refers to a determination made regarding the one of the plurality of users selected in step [b] (i.e., step [b] ("receiving … a selection of one of said plurality of users"); step [d] ("determining whether to allow access of location information for … said selected one of said plurality of users"));

- step [d] must complete before step [e] completes because step [e] refers to transmitting the location information for which access is determined in step [d] (i.e., step [d] ("determining whether to allow access of location information for … said selected one of said plurality of users"); step [e] ("transmitting said location information …"));

- step [e] must complete before step [f] completes because step [f] refers to displaying

---

[2] All references to claim "steps" (e.g., [a], [b], [c], etc.) in this brief are to the labels added to the claims in Exhibit C to the Joint Claim Construction Chart and Prehearing Statement. Dkt. 81-03.

the location information transmitted in step [e] (i.e., step [e] ("transmitting said location information … to said first wireless telephonic device"); step [f] ("displaying said location information … on said first wireless device")); and

- step [c] must complete before step [d] completes because step [d] refers to using the login and password received in step [c] (i.e., step [c] ("receiving … an input in a form of a login and a second manual input in a form of a password"); step [d] ("identifying said user of said first wireless telephonic device from said plurality of users using said login and determining said password is associated with said login …."))).

Contrary to Samsung's argument, there is no requirement that step [c] must be performed after step [a] because nothing in the claim language imposes such a temporal requirement. *See* Dkt. 81-3 at 5. For example, nothing in the claim precludes the "receiving … an input in a form of a login and a second manual input in a form of a password" of step [c] from being performed before, or concurrently with step [a] ("displaying … a plurality of users"). That the claim language requires step [c] to be performed in regard to the same "first wireless telephonic device" identified in step [a] through the use of antecedent basis (i.e., "receiving on *said* first wireless telephonic device …") is insufficient to impose a required temporal order. *Altiris*, 318 F.3d at 1369; *see also Axcess Int'l, Inc. v. Amag Tech., Inc.*, No. 2:16-cv-01360-JRG-RSP, 2017 U.S. Dist. LEXIS 187212, *12-14 (E.D. Tex. Nov. 10, 2017) (finding that the claimed "recording" limitation did not possess a required order because it was not "temporally tied" to any other claim limitations notwithstanding that it used antecedent basis to refer to "*the* access door" identified in earlier claim limitations).

To illustrate, nothing in the claim precludes step [c] (receiving on the first wireless device an input in a form of a login and a password) from being performed before step [a] (displaying on the first wireless device a plurality of users). Samsung's proposed claim construction, however,

excludes this scenario and is thus incorrect. *E.g.*, *Ancora Techs., Inc. v. LG Elecs., Inc., No. 1-20-CV-00034-ADA, 2020 U.S. Dist. LEXIS 150002, at \*15 (W.D. Tex. Aug. 19, 2020)* ("This Court … finds no reason to impose all of the limitations on the claim steps that Defendants urge.")

The specification supports Plaintiff's construction that step [c] need not be performed after step [a]. *Mformation Techs., Inc. v. Research in Motion Ltd.*, 764 F.3d 1392, 1398 (Fed. Cir. 2014) (rejecting an order of steps where the specification did not directly or implicitly require such an order). In fact, the specification repeatedly refers to the receipt of an input in a form of a login and a password **without** requiring the same to occur after any other steps. For example, the specification describes that a person "may login on a friend's cell phone and determine the husband's location …." Ex. 1 at 3:5-7. In this embodiment, receipt of the person's login is the very first step performed, before performance of any other steps. *See also id*. at 3:26-30 (same). This alone precludes a finding that the receipt of the login and password of step [c] must occur after step [a] because such a finding would impermissibly exclude a preferred embodiment in the specification from the scope of the claim. *Nobel Biocare Servs. AG v. Instradent USA, Inc.*, 903 F.3d 1365, 1381 (Fed. Cir. 2018) ("there is a strong presumption against a claim construction that excludes a disclosed embodiment").

As another example, the specification discloses in connection with Figures 13 and 14 that "[d]isplay screen 1300 allows for a user to log into a locating device" and "[d]isplay screen 1400 may be used by a user to enter a password." *Id*. at 9:46-47, 9:64-67, Figures 13-14. Again, in these example embodiments, the specification permits login/password receipt *before* the completion of other steps. *Id*.

The specification further describes that "[d]atabase 1602 may, for example, be located in cell phone base station 1603 if database 1602 is utilized to assist in cell phone locating. Database

1602 may be utilized, for example, to store a history a of a device's locations, a user's list of assigned access rights to other users, a log of a user's call activity, a log of a location initiations, a user profile, login/password information, or any other sort of information." *Id*. at 10:53-60. Again, nothing in the specification requires a temporal order for the receipt of a login/password or precludes it from being the very first step performed. *Id*.

In view of the foregoing, the Court should reject Samsung's argument that step [c] must be performed after step [a].

### 2.    '575, Claim 30

The plain language of Claim 30 of U.S. Patent No. 8,374,575 ("the '575 Patent") (Ex. 2) teaches that the *only* temporal order is that step [a] must complete before step [c] because step [c] refers to transmitting the location of the first wireless telephone that was obtained in step [a] (i.e., step [a] ("obtaining a location of said first wireless telephone"); step [c] ("transmitting said location from said remote server to at least one of said users of said list of users")). *See* Dkt. 81-3 at 9.

Contrary to Samsung's argument, there is no further temporal order of steps in the claim. For example, there is no requirement in the claim for step [b] ("changing, at the direction of said first wireless telephone, a list of users on a remote server for a profile associated with said first wireless telephone that are allowed to access said location …") to complete before step [a] ("obtaining a location of said first wireless telephone"). *Id*. Logically, a user may wish to change the list of users who can view a location (e.g., family member(s)) before such location is obtained, so that once it is obtained it can be sent to only that list. The specification is clear on this point when it states that location access rights can be changed at "any time." *E.g.*, Ex. 2 at 5:15-16 ("A user may update, add, manipulate, or remove access at any time …."); *id*. at 3:24-26. Moreover, that step [b] uses antecedent basis to refer to "said" location referenced in step [a] is insufficient

to impose a required temporal order. *Altiris*, 318 F.3d at 1369; *Axcess Int'l, Inc. v. Amag Tech., Inc.*, 2017 U.S. Dist. LEXIS 187212, at *12-14.

There is also no requirement that step [d] ("determining a second location associated with one of said plurality of wireless telephones") complete before step [a] ("obtaining a location of said first wireless telephone"). Use of the words "first" and "second" does not impose a sequential requirement. It is merely a naming convention in the claim intended to reflect that locations of two different wireless telephones are determined without regard to when such determinations are made. There is no claim requirement nor any technological reason that the location of one specific wireless telephone must be determined *before* the location of another. There is thus "no reason to impose all of the limitations on the claim steps that Defendants urge." *Ancora Techs.*, 2020 U.S. Dist. LEXIS 150002, at *15.

Accordingly, except for a requirement that step[a] must complete before step [c], the Court should find that Claim 30 of the '875 Patent does not require an order of steps.

## B.    Samsung's Argument Regarding Apparatus Claim "Steps" That Allegedly Must Be Performed In Order is Wrong

The asserted "apparatus claims cover what a device *is*, not what a device *does*." *Paragon Solutions, LLC v. Timex Corp.*, 566 F.3d 1075, 1091 (Fed. Cir. 2009). An apparatus thus need only store programming *capable of* functioning in accordance with the recited elements of the claim to fall within the claim scope, but actual execution of the programming by the apparatus's processor is not required. *See id*.

The claims of the '117 and '024 Patents recite an apparatus that possesses the capability to execute certain operations or programming instructions stored in memory. It is apparent from the plain language of the claims what operations or programming instructions, if any, the apparatus must be capable of performing in order. However, the Court should reject Samsung's argument

that *all* identified operations or programming instructions of these apparatus claims, which Samsung calls "steps,"[3] must be performed in order. No such order is required by the claims, and Samsung's proposed constructions are incorrect because they would unduly narrow the claims and exclude preferred embodiments.

### 1.    '117, Claim 1

Claim 1 of the U.S. Patent No. 11,234,117 (the "'117 Patent") (Ex. 3) does not require any order within which the claimed apparatus, i.e., a wireless telephone, must perform the recited operations or programming instructions. *See* Dkt. 81-3 at 1. For example, there is no requirement for programming step [d] ("providing said location of said wireless telephone to a remote server") to complete before programming step [e] ("instructing said remote server to change a list of users on said remote server for a profile associated with said wireless telephone that are allowed to access said location by way of said remote server providing said location from said remote server to at least one of said users of said list of users …"). Instead, the specification describes that a wireless telephone may provide its location to a remote server "periodically." *E.g.*, Ex. 3 at 5:14-16, Figure 2. This operation, an embodiment of programming step [d], can occur automatically in an asynchronous manner that is not temporally tied to changes that a user may choose to make to "a user's list of assigned access rights to other users"—rather the user can make such changes at any time, consistent with programming step [e]. *Id.* at 11:7-8, Figure 16; *see also id.* at 9:12-14 ("A user may give or modify access rights through display 900 to a user identifier in selectable user identifier listing 910."), Figure 9. There is no support in the intrinsic or extrinsic record to limit the claims in the manner Samsung proposes nor to exclude these expressly disclosed

---

[3] For consistency and ease of reference only, Plaintiff refers herein to the labeled elements of the '117 (Ex. 3) and '024 (Ex. 4) Patents as "steps" or "programming steps." *See* Dkt. 81-3 at 1-5.

embodiments. That steps [d] and [e] merely use antecedent basis to refer to "said" location referenced in element [b] (i.e., location determined by a positioning system) is insufficient to impose a required temporal order. *Altiris*, 318 F.3d at 1369; *Axcess Int'l, Inc. v. Amag Tech., Inc.*, 2017 U.S. Dist. LEXIS 187212, at *12-14.

As another example, there is no requirement for programming step [e] ("instructing said remote server to change a list of users on said remote server for a profile associated with said wireless telephone that are allowed to access said location by way of said remote server providing said location from said remote server to at least one of said users of said list of users …") to complete before programming step [f] ("receiving and displaying directional information to one of said plurality of wireless telephones, wherein said directional information is representative of directions between said location and a second location associated with said one of said plurality of wireless telephones"). Again, regarding programming step [e], a user may choose to make changes to a user's list of assigned access rights to other users at *any time*. *E.g.*, Ex. 3 at 9:12-14,11:7-8, Figure 9, Figure 16. This can be done in an asynchronous manner that is not temporally tied to when a user chooses to receive directional information representative of directions between the wireless telephone and another wireless telephone pursuant to programming step [f]. *Id.* at 8:57-67, Figure 7. For example, a user may navigate to a display screen that includes a "Directions" option to receive "directions to the requested user's location from the requesting user's location." *Id.* Further, nothing in Claim 1 of the '117 Patent prevents a user from obtaining directional information representative of directions to another wireless telephone pursuant to programming step (programming step [f]), and *thereafter* deciding to change the list of users who have location access rights (programming step [e]).

Accordingly, the Court should find that Claim 1 of the '117 Patent does not require an order

amongst programming steps.

### 2.     '117, Claim 15

The plain language of Claim 1 of the '117 Patent requires that *some*, but not all, programming steps must be capable of completing in order because one programming step relies on the result of another, implying that the apparatus' programming instructions must be capable of executing in a certain sequence. *See* Dkt. 81-3 at 1-2. There is no dispute and the parties agree that:

- programming step [d] must be capable of completing before programming step [e] completes because step [e] refers to a selection of one of the plurality of users displayed in step [d] (i.e., step [d] ("displaying a plurality of users …"); step [e] ("receiving a first manual input in a form of a selection of one of said plurality of users"));

- programming step [e] likewise must complete before programming step [h] completes because step [h] refers to assigning location access rights associated with the selection made in step [e] (i.e., step [e] ("receiving a first manual input in a form of a selection of one of said plurality of users"); step [h] ("assigning location access rights to said one of said plurality of wireless telephones associated with said selected one of said plurality of users for obtaining said location of said wireless telephone"));

- programming step [f] must complete before programming step [g] completes because step [g] refers to providing the login and password to a remote server that were received in step [f] (i.e., step [f] ("receiving an input in a form of a login and a second manual input in a form of a password"); step [g] ("providing said login and said password to a remote server …"));

- programming step [g] must complete before programming step [i] completes because step [i] refers to receiving location information after a determination in step [g] that access to such location information is permitted (i.e., step [g] ("… determining whether to allow access

9

of location information for said one of said plurality of wireless telephones associated to said selected one of said plurality of users …"); step [i] ("receiving said location information for said one of said plurality of wireless telephones from a server")); and

- programming step [i] must complete before programming step [j] completes because step [j] refers to displaying the location information that was received in step [i] (i.e., step [i] ("receiving said location information for said one of said plurality of wireless telephones from a server"); step [j] ("displaying said location information")).

However, Samsung is wrong that any additional programming operational order is required. For example, nothing in the claim precludes the "receiving … a login and … a password" of programming step [f] from executing before, or concurrent with, programming step [d] ("displaying a plurality of users") or programming step [e] ("receiving … a selection of one of said plurality of users"). Rather, for similar reasons discussed *supra* at Section III.A.1, such a requirement would impermissibly exclude from the claim scope the embodiments that do not impose such a restriction, and for which the receipt of a user's login and password can be the *first* action executed by the processor before the display of users or the receipt of a user's selection of such users from the display. *C.R. Bard*, 388 F.3d at 865 (holding that a construction that excludes a preferred embodiment is "rarely, if ever, correct").

Accordingly, except for the following agreed order of programming steps, the Court should reject Samsung's argument that the programming steps of Claim 15 of the '117 Patent must be capable of executing in order: [d] before [e]; [e] before [h]; [f] before [g]; [g] before [i]; [i] before [j]. *See* Dkt. 81-3 at 1-2; Dkt. 81-2 at 2.

### 3. '117, Claim 29

The plain language of Claim 29 of the '117 Patent requires that *some*, but not all, programming steps must be capable of completing in order because one programming step relies

on the result of another, and thus, the apparatus' programming instructions must be capable of executing in a certain sequence. *See* Dkt. 81-3 at 2. Specifically, there is no dispute that:

- programming step [d] must complete before programming step [e] completes because step [e] refers to providing a location for recording in association with user information that was received in step [d] (i.e., step [d] ("receiving user information comprising a manually entered login associated with a user of said wireless telephone and a manually entered password associated with said login"); step [e] ("providing said location for recording on a remote system in association with said user information")); and

- programming step [f] must complete before programming step [g] completes because step [g] refers to receiving a location-based event notification corresponding to the location-based event selected in programming step [f] (i.e., step [f] ("selecting a location-based event that is based, at least in part, on a location of a second wireless telephone, wherein said location-based event is operable to be manually pre-selected from a list of at least three types of location-based events"); step [g] ("receiving a location-based event notification corresponding to said selected location-based event as a result of, at least in part, location access rights of said wireless telephone from said second wireless telephone")).

However, contrary to Samsung's argument, no other order of programming operations is required. For example, nothing in the claim precludes the "selecting a location-based event" of programming step [f] from executing before programming step [d] ("receiving user information comprising a manually entered login"). The specification's embodiments also do not impose a temporal requirement that would preclude selecting a location-based event (*see, e.g.*, Ex. 3 at 9:29-30 ("Display screen 1100 allows for a user to set up alerts depending on the location of specific users."), Figure 11) before entering login information (*see, e.g., id.* at 9:60-62 ("Display screen

1300 allows for a user to log into a locating device"), Figure 13). In other words, a user could access the features set forth in the display screens of Figures 11 and 13 in either order.

Accordingly, except for the following agreed order of programming steps, the Court should reject Samsung's argument that the programming steps of Claim 29 of the '117 Patent must be capable of executing in order: [d] before [e]; [f] before [g]. *See* Dkt. 81-3 at 2; Dkt. 81-2 at 3.

### 4.    '117, Claim 42

Claim 42 of the '117 Patent does not require any order within which the claimed apparatus, i.e., a wireless telephone, must perform the recited operations or programming instructions. *See* Dkt. 81-3 at 2-3.

For example, there is no requirement for programming step [d] ("requesting a location of a second wireless device from a server located remotely from said wireless telephone and said second wireless device") to complete before programming step [e] ("displaying on said wireless telephone an option to request location access rights from said second wireless device after it is determined that said wireless telephone does not have location access rights for said second wireless device"). Indeed, the specification describes that a wireless telephone may request location information for devices "periodically." *E.g.*, Ex. 3 at 11:19-21, Figure 6. This operation, an embodiment of programming step [d], can occur automatically in an asynchronous manner that is not temporally tied to when the wireless telephone may display an option to request location access rights for receipt from another wireless device as referenced in programming step [e]. *Id.* at 3:13-17 ("[A] user may request location access rights from a different user. For example, a user may be provided with a request location screen on his cell phone and that user … may enter in the cell phone number of the cell phone whose location is desired."); *see also id.* at Figure 4, 7:9-12 ("identifier list 410 may be configured, for example, to contain only those users in which the user of cell phone 300 … has locate access rights").  Thus, a wireless telephone may display an option

to allow the user to request location access rights from another wireless device when the wireless telephone determines (via referencing the list it maintains in connection with Figure 4) that such other wireless device has not yet provided location access rights. Nothing in the intrinsic record precludes such display from occurring *before*, *after*, or *concurrently* with the wireless telephone periodically requesting a location of the wireless device.

As another example, there is no requirement for programming step [e] ("displaying on said wireless telephone an option to request location access rights from said second wireless device after it is determined that said wireless telephone does not have location access rights for said second wireless device") to complete before programming step [f] ("transmitting a request to said server that said location access rights be assigned for said wireless telephone by said second wireless device"). For example, nothing in the intrinsic record limits what can trigger the wireless telephone to transmit a request to a server for location access rights in embodiments of programming step [f]. To illustrate, in one embodiment emblematic of programming step [f], the wireless telephone transmits a request for location access rights, which may, or may not, be granted. Prior to or after such programming operation, the wireless telephone may display an option to request location access rights from the wireless device when it is determined that the wireless telephone does not have location access rights for such other wireless device, as referenced in programming step [e]. There is no specific order for these programming steps because whether or not the wireless telephone has location access rights for another device changes dynamically over time. *E.g., id*. at 5:20-21 ("A user may update, add, manipulate, or remove access at any time ….").

There is likewise no required order for programming step [g] ("receiving said location of said second wireless device from said server dependent upon said access rights") relative to any

other programming steps. Like requesting location information referenced in programming step [d], the specification discloses embodiments wherein the wireless telephone receives location information "periodically," which can occur automatically in an asynchronous manner that is not temporally tied to any other programming steps. *E.g., id*. at 11:19-21, Figure 6.

Accordingly, the Court should find that Claim 42 of the '117 Patent does not require an order of steps.

### 5.    '117, Claim 73

Claim 73 of the '117 Patent does not require any order within which the claimed apparatus, i.e., a wireless telephone, must perform the recited operations. *See* Dkt. 81-3 at 3.

For example, there is no requirement for programming step [d] ("providing said location to a remote system, wherein said location is operable of being requested by a second wireless device outside of a call for communication between said wireless telephone and said second wireless device") to complete before programming step [e] ("providing a permission for said second wireless device to access location information about said location, said permission operable of being stored in said remote system"). Again, the specification describes that a wireless telephone may provide its location to a remote server "periodically." *E.g.*, Ex. 3 at 5:14-16, Figure 2. This operation, an embodiment of programming step [d], can occur automatically in an asynchronous manner that is not temporally tied to changes that a user may make to their "list of assigned access rights to other users," which the user can impart at any time, consistent with programming step [e]. *Id*. at 11:7-8, Figure 16; *see also id*. at 9:12-14 ("A user may give or modify access rights through display 900 to a user identifier in selectable user identifier listing 910."), Figure 9. There is no support in the intrinsic or extrinsic record to exclude these embodiments. That both of steps [d] and [e] merely use antecedent basis to refer to "said" location referenced in element [b] (i.e., location determined by a positioning system) is insufficient to impose a required temporal order.

*Altiris*, 318 F.3d at 1369; *Axcess Int'l, Inc. v. Amag Tech., Inc.*, 2017 U.S. Dist. LEXIS 187212, at
*12-14.

Accordingly, the Court should find that Claim 73 of the '117 Patent does not require an
order amongst programming steps.

### 6.    '024, Claim 1

The plain language of Claim 1 of U.S. Patent No. 11,246,024 (the "'024 Patent") (Ex. 4)
requires that *some* programming steps must be capable of completing in order because one
programming step relies on the result of another, and thus, the apparatus' programming must be
capable of executing in a certain sequence. *See* Dkt. 81-3 at 3-4. Specifically, the parties agree that:

- programming step [b] must be capable of completing before programming step [f]
completes because step [f] refers to providing directional information representative of directions
involving the location obtained in step [b] (i.e., step [b] ("obtaining a location of a first wireless
telephone"); step [f] ("providing directional information to said one of said plurality of wireless
telephones, wherein said directional information is representative of directions between said
second location and said location")); and

- programming step [e] must be capable of completing before programming step [f]
completes because step [f] refers to providing directional information representative of directions
involving the second location obtained in step [e] (i.e., step [e] ("determining a second location
associated with one of said plurality of wireless telephones"); step [f] ("providing directional
information to said one of said plurality of wireless telephones, wherein said directional
information is representative of directions between said second location and said location")).

However, contrary to Samsung's argument, no other order of programming operations is
required. For example, nothing in the claim precludes the claimed system from "changing, at the

direction of said first wireless telephone, a list of users for a profile associated with said first wireless telephone that are allowed to access said location …" per programming step [c] before executing programming step [b] ("obtaining a location of a first wireless telephone"). The specification indeed discloses that a user may choose to make changes to "a user's list of assigned access rights to other users" at any time, which means that a server system may impart such changes on the server at any time. Ex. 4 at 11:7-8, Figure 16; *see also id.* at 9:12-14 ("A user may give or modify access rights through display 900 to a user identifier in selectable user identifier listing 910."), Figure 9.

As another example, nothing precludes the claimed system from "obtaining a location of a first wireless telephone" per programming step [b] and "changing, at the direction of said first wireless telephone, a list of users for a profile associated with said first wireless telephone that are allowed to access said location …" per programming step [c] before executing programming step [e] ("determining a second location associated with one of said plurality of wireless telephones"). The specification describes that the server system may determine the location of any wireless telephone "periodically" or according to any other schedule, without being tied to any other events. *E.g. id.*, at 5:14-16, Figure 2.

Accordingly, except for the following agreed order of programming steps, the Court should reject Samsung's argument that the programming steps of Claim 1 of the '024 Patent must be capable of executing in order: [b] before [f]; and [e] before [f]. *See* Dkt. 81-3 at 3-4; Dkt. 81-2 at 5.

### 7.    '024, Claim 24

The plain language of Claim 24 of the '024 Patent requires that *some*, but not all, programming steps must be capable of completing in order because one programming step relies on the result of another programming step, and thus, the apparatus' programming must be capable of executing in a certain sequence. *See* Dkt. 81-3 at 4. Specifically, the parties agree that:

- programming step [c] must be capable of completing before programming step [d] completes because step [d] refers to using information indicative of a login and password received in step [c] (i.e., step [c] ("receiving from said first wireless telephone information indicative of a login and a password"); step [d] ("… identifying said user of said first wireless telephone using said information indicative of said login and password and determining whether said selected one of said plurality of users has provided access rights for said location information to said user of said first wireless telephone")).

Samsung is wrong, however, that any further order of programming steps is required. For example, nothing in the claim precludes the claimed system from "receiving from said first wireless telephone information indicative of a login and a password" per programming step [c] before executing programming step [b] ("receiving from a first wireless telephone over said communications network a selection of one of a plurality of users …"). Indeed, the specification discloses an embodiment wherein receipt of a user's login information is the *very first step* performed, before performance of any other steps. *E.g.*, Ex. 4 at 3:6-7 (describing that a user "may login on a friend's cell phone and determine the husband's location"); *id.* at 3:27-31 (same).

As another example, nothing in the claim precludes the claimed system from "determining whether to allow access of location information for said one of said plurality of wireless telephones associated to said selected one of said plurality of users, wherein said determining includes identifying said user of said first wireless telephone using said information indicative of said login and password and determining whether said selected one of said plurality of users has provided access rights for said location information to said user of said first wireless telephone" per programming step [d] before executing programming step [b] ("receiving from a first wireless telephone over said communications network a selection of one of a plurality of users …"). There

17

is no required order for these programming steps because whether a user of a wireless telephone selects another user, and whether such other user grants, or revokes, location access rights for the wireless telephone can be asynchronous events and such location access rights may change dynamically over time. *E.g., id.* at 5:20-21 ("A user may update, add, manipulate, or remove access at any time ….").

Accordingly, except for the following agreed order of programming steps, the Court should reject Samsung's argument that the programming steps of Claim 24 of the '024 Patent must be capable of executing in order: [c] before [d]. *See* Dkt. 81-3 at 4; Dkt. 81-2 at 6.

### 8.    '024, Claim 45

The parties agree that the plain language of Claim 45 of the '024 Patent requires that programming step [c] must be capable of completing before programming step [d] completes because step [d] expressly refers to being performed "after" step [c] completes (i.e., step [c] ("determining that said second wireless device does not have location access rights for said first wireless device"); step [d] ("*after* determining that said second wireless device does not have said location access rights for said first wireless device, receiving a request from said second wireless device that said location access rights be assigned for said second wireless device by said first wireless device"))[4]. *See* Dkt. 81-3 at 5.

Contrary to Samsung's argument, no other order of programming operations is required. For example, nothing in the claim precludes the claimed system from "determining that said second wireless device does not have location access rights for said first wireless device" per programming step [c] before executing programming step [b] ("receiving a request for a location of said first wireless device from said second wireless device"). The specification describes that a

---

[4] All emphases in this brief are added except where noted otherwise.

wireless device may request location information for devices "periodically," and thus, the server system may receive such requests periodically. *E.g.*, Ex. 4 at 11:19-21, Figure 6. This operation, an embodiment of programming step [b], can occur automatically in an asynchronous manner that is not temporally tied to when the system determines whether the wireless device has location access rights from another wireless device. In addition, because "[a] user may update, add, manipulate, or remove access at any time …" (*id*. at 5:20-21), the server system may correspondingly determine *at any time* whether a wireless device does, or does not, have location access rights for another device at any time in response to such changes imparted by the user.

Further, nothing in the claim precludes the claimed system from "receiving from said first wireless device an assignment of said location access rights for said first wireless device to said second wireless device" per programming step [e] before executing programming step [c] ("determining that said second wireless device does not have location access rights for said first wireless device"). Again, "[a] user may update, add, manipulate, or remove access at any time …." *Id*. at 5:20-21. This means that in one embodiment the server could execute programming step [e] in response to a wireless device receiving location access rights, and thereafter execute programming step [c] after such location access rights have been revoked.

Accordingly, except for the following agreed order of programming steps, the Court should reject Samsung's argument that the programming steps of Claim 45 of the '024 Patent must be capable of executing in order: [c] before [d]. *See* Dkt. 81-3 at 5; Dkt. 81-2 at 6.

**C.    "list of users" ('117, Claim 1; '024, Claim 1; '575, Claim 30)**

The term "list of users" should be given its plain and ordinary meaning as it is composed of lay person terms that do not require construction. *Phillips,* 415 F.3d at 1314. There is no justification for Samsung's attempt to rewrite this claim term to require a "series of two or more other users." Dkt. 81-2 at 13.

Turning first to the claim language, the claims recite "instructing said remote server to change a ***list of users*** on said remote server for a profile associated with said wireless telephone that are allowed to access said location, wherein each user of said list of users is representative of one of a plurality of wireless telephones." Ex. 3, Claim 1. Claim 1 of the '024 Patent and Claim 30 of the '575 Patent recite similar claim language.[5] Nothing in the claims requires the claimed "list of users" to always, and necessarily, include a "series of two or more other users" like Samsung argues. Indeed, this limits the claims to a single embodiment of the specification, which is improper. *Phillips,* 415 F.3d at 1320 (describing "reading a limitation from the written description into the claims" as "one of the cardinal sins of patent law") (internal quotation marks omitted). Rather, what is required is the capability for multiple users to be grouped or connected together (*i.e.*, a list), irrespective of whether a user of a wireless telephone necessarily or always populates that list with *multiple* users. Indeed, until the wireless telephone user initially populates the list with the name(s) of other user(s), the list may be an empty list.

The specification supports Plaintiff's proposed construction. It describes that "[u]sers may be added, individually or in groups, to a ***list of users*** with location access rights to a specific user by that specific user. A specific user may, at any time, modify, delete, or add users allowed to access his or her location." Ex. 3 at 3:23-27. This confirms that in one embodiment the claimed "list" can be built by adding each user "individually" to the list (e.g., list can start as an empty list and be grown to include one, two, or more users).

The specification further discloses that "[p]ersons skilled in the art will appreciate that identifier ***list*** 410 may be configured, for example, to contain only those users in which the user of

---

[5] The '117 (Ex. 3), '024 (Ex. 4), and '575 (Ex. 2) Patents have substantially identical patent specifications. Thus, all citations to the specification for this claim term are to the '117 Patent.

cell phone 300 (FIG. 3) has locate access rights to or any user stored in cell phone 300." *Id.* at 7:9-12. This, too, confirms that a "list" is not necessarily populated with any specific number of items (much less the "two or more" Samsung argues) because whether the list is populated at all can depend on what actions, if any, a user takes.

Accordingly, the Court should adopt Plaintiff's proposed construction of this term.

**D.    "region-based" ('117, Claim 29; '039, Claim 1)**

The Court should reject Samsung's proposed construction, which improperly seeks to import embodiments from the specification into the claims. *E.g., Phillips,* 415 F.3d at 1323 ("[W]e have repeatedly warned against confining the claims to those embodiments" disclosed in that patent's specification). The claims recite a location-based event that is "region-based," which is clear and understandable on its face. Nothing supports Samsung's proposal to limit these claim terms to the specification's examples of region-based event notifications that are based on a "geographic" area, such as a city or state. Nor is Samsung justified in its attempt to add the requirement that the purported geographic area must be "user-specified," which at a minimum confuses, rather than clarifies, this term.

Turning first to the claim language, the claims recite that a location-based event is "region-based" at least in part, which is clear and understandable on its face so no construction is necessary. Contrary to Samsung's proposed construction, nothing in the claims requires that such region-based event must be based on a "geographic" area that is "user-specified." Ex. 3 at Claim 29; U.S. Patent No. 11,096,039 (the "'039 Patent") (Ex. 5) at Claim 1.[6] For example, by way of claim differentiation, dependent claims refer to a "geographic region" or "geographic area," but the independent claims do not. Ex. 5 at Claims 10-12; Ex. 3 at Claims 8, 22. Likewise, a dependent

---

[6] The '117 (Ex. 3), and '039 (Ex. 5) Patents have substantially identical patent specifications. Thus, all citations to the specification for this claim term are to the '117 Patent.

claim recites that "programming is further capable of specifying said region," which demonstrates that Samsung's proposal to limit Claim 1 to a "user-specified" region is incorrect, or at a minimum, imparts ambiguity instead of clarifying any issues in dispute. Ex. 3 at Claim 35. *See Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 910 (Fed. Cir. 2004) ("As this court has frequently stated, the presence of a dependent claim that adds a particular limitation raises a presumption that the limitation in question is not found in the independent claim.").

Turning next to the specification, it too confirms that Samsung's proposed construction is incorrect. The specification describes ***examples*** of region-based events that are based on whether a user is within a country, state, or city ("geographic" areas), but it is well-settled law that such examples cannot be read into the claims. *E.g.*, Ex. 3 at Abstract ("Other levels of location information that can be granted include, ***for example***, proximities, states, and countries."), 9:22-24 ("Possible location access rights may be, ***for example***, by country, state, city, exact location, or any other scope of location."), 9:27-36 (describing that Figure 11 shows "***[e]xamples*** of alerts" including an alert when an individual enters a given city); *Phillips,* 415 F.3d at 1320. Moreover, the specification expressly discloses locating a user within a shopping mall. Ex. 3 at 7:46-50. Samsung's proposed construction is thus further incorrect to the extent it would purport to exclude regions corresponding to another area (e.g., receiving an event notification when an individual enters or leaves a mall, work, school building, or a sports arena). All of such "regions" and "region-based" events are within the plain and ordinary meaning of the claims, and there was no lexicography or prosecution history disclaimer that would limit the meaning of the claims to something less than the full scope of their plain and ordinary meaning as well as the embodiments disclosed. *C.R. Bard*, 388 F.3d at 865.

Extrinsic evidence, including dictionary definitions, also support Plaintiff's construction.

*E.g.*, Ex. 9 at MIL_063645 ("Region: … a large, usually continuous segment of a surface or space; area … an area of interest or activity"); Ex. 10 at MIL_063656 ("Region: … any large, indefinite, and continuous part of a surface or space … a realm or sphere of activity or interest").

Accordingly, the Court should accord this claim term its plain and ordinary meaning and reject Samsung's proposed construction.

### E.     "distance-based" ('117, Claim 29; '039, Claim 1)

As with the term "region-based" addressed *supra*, the meaning of a "distance-based" location-based event is clear and understandable on its face and no construction is required. The Court should reject Samsung's proposed construction of this term, which improperly seeks to import limitations into the claims. There is no support for Samsung's proposal to rewrite this term to require a "user-specified" distance, nor that the event must be based on a "current location."

Turning first to the claim language, it recites a location-based event that is "distance-based" at least in part, which is clear and understandable on its face and no construction is required. Contrary to Samsung's proposed construction, nothing in the claims requires that such region-based event must be "user-specified" nor based on a "current location." Ex. 3 at Claim 29; Ex. 5 at Claim 1.

Turning next to the specification, it confirms that Samsung's proposed construction is incorrect. The specification describes examples of distance-based alerts, including that "[w]hen a user comes within a certain distance of a user (determined by comparing locations of a user) … the user may be alerted of the proximity of a matching user." Ex. 3 at 6:6-10. Notably, in this embodiment, there is no requirement that the distance must be user-specified. There is also no narrowing limitation in the specification requiring that the "distance-based" event must be based on "current location" like Samsung argues, which, at a minimum confuses rather than clarifies the claim because it is unclear what Samsung will contend is within its definition of "current."

23

The Court should thus accord this term its plain and ordinary meaning and reject Samsung's proposed construction.

**F.    "location information" ('283, Claim 1)**

The Court should construe this term according to its plain and ordinary meaning, which is "information relating to a location of a user's device." The Court should reject Samsung's proposed construction, which impermissibly seeks to limit this term to a "geographic position."

The claim language recites "determining whether to allow access to ***location information*** for said one of said plurality of wireless telephonic devices." Ex. 1 at Claim 1. That is, the claim recites that the location information is for a user's wireless telephonic device but does not further limit what the "location information" is. The claim does not state, for example, that the location information is limited to a "geographic position" like Samsung argues. Samsung's construction essentially asks this court to rewrite the claim, but "[c]ourts do not rewrite claims; instead, [courts] give effect to the terms chosen by the patentee" which Plaintiff's construction accomplishes. *K-2 Corp. v. Salomon S.A.*, 191 F.3d 1356, 1364 (Fed. Cir. 1999).

The specification likewise supports Plaintiff's proposed construction. It describes that the location information can be a variety of information relating to a location of a user's device, and not necessarily a "geographic position." For example, the specification describes that in some embodiments "location information" can include *any of*: (i) "the country, state, city, exact location, or any combination thereof" where a user's is located; (ii) "the address of a mall" where a user's device is located; and (iii) "the name of the mall" where a user's device is located. Ex. 1 at 7:21-40; *id*. at Figure 6. Plainly, the "name of the mall" ***is*** "information relating to a location of a user's device" but it is ***not*** a "geographic position" as Samsung would rewrite this claim. The specification does not even use the phrase "geographic position," much less limit the claim term "location information" to a "geographic position." On this basis alone, Samsung's construction

should be rejected. *Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1250 (Fed. Cir. 1998) ("[t]he construction that stays true to the claim language and *most naturally aligns with the patent's description* of the invention will be, in the end, the correct construction"). The Court should adopt Plaintiff's proposed construction of this term.

G.    **"directional information" ('575, Claim 30)**

The Court should construe this term according to its plain and ordinary meaning, which is "information relating to directions." The Court should reject Samsung's proposed construction, because it impermissibly seeks to limit this term to "orientation or route of movement relative to a reference point" without support from the intrinsic record. In addition to Samsung's construction impermissibly reading out embodiments expressly disclosed in the specification, it also injects ambiguity because the terms "orientation" or "reference point" appear nowhere in the patent. *C.R. Bard,* 388 F.3d at 865 (holding that a construction that excludes a preferred embodiment is "rarely, if ever, correct").

The claim language recites "providing **directional information** to said one of said plurality of wireless telephones, wherein said **directional information** is representative of directions between said location and said second location." Ex. 2 at Claim 30. The claim recites that the directional information is representative of directions between two locations but does not otherwise limit or further define this term. The claim does not state, for example, that the directional information is limited to "orientation or route of movement relative to a reference point" like Samsung argues.

The specification also supports Plaintiff's proposed construction. It describes that the directional information can be a variety of information relating to directions. For example, in some embodiments "directional information" can include *any of*: (i) "a digital compass 632 so that the user of cell phone 300 … knows what direction he or she is facing in"; (ii) "[d]irectional arrow

633 … to indicate where the requested user's location is relative to the location and direction of cell phone 300"; (iii) "a map"; (iv) "the shortest path between the location as well as information about the surrounding area (e.g., area names, store names, etc.)." Ex. 1 at 7:41-50, 7:67-8:6; *id*. at Figure 6. As another example, "directional information" can include an option to obtain "Directions" displayed to a user. *Id*. at Figure 7 ("Directions") and 8:44-54. Samsung's proposed construction impermissibly excludes the specification's embodiments. For example, a displayed option to obtain "Directions" is directional information within the scope of the '575 Patent but it is not itself "orientation or route of movement relative to a reference point" according to Samsung's impermissibly narrow construction.

Accordingly, the Court should adopt Plaintiff's proposed construction and reject Samsung's proposed construction of this term.

### H.    "said wireless telephonic device" is not indefinite ('218, Claim 11)

The claim term "said wireless telephonic device" in Claim 11 of U.S. Patent No. 11,109,218 ("the '218 Patent") (Ex. 6) refers back to "a wireless device" recited earlier in the claim. Samsung, for its part, argues incorrectly that this claim must be held indefinite because this term allegedly lacks perfect antecedent basis. Contrary to Samsung's argument, however, express antecedent basis is not required. *Energizer Holdings, Inc. v. Int'l Trade Comm'n*, 435 F.3d 1366, 1371 (Fed. Cir. 2006) ("an antecedent basis can be present by implication"). In any event, Samsung cannot meet its high burden of establishing with clear and convincing evidence that the claims are indefinite for failing to "inform those skilled in the art about the scope of the invention with reasonable certainty." *Nautilus, Inc. v. Biosig Instr., Inc.*, 572 U.S. 898, 910 (2014).

Claim 11 of the '218 Patent recites as follows:

> 11. A system comprising:
> a wireless device operable to provide a display screen after a request from **said wireless telephonic device** for access to a first location of a first wireless

26

device, wherein said display screen includes a map from the perspective of said wireless device, said display screen includes indicia on said map representative of said first location, said display screen includes indicia on said map representative of a second user according to a second location obtained from a second wireless device, and said display screen includes a distance from said wireless telephonic device to said first location, said display screen includes a compass, said display screen includes an address of said first location, and said display screen includes a travel time based on at least the first location and the location of said wireless telephonic device.

Ex. 6 at Claim 11.

Read in context, the term "said wireless telephonic device" refers back to the "wireless device" recited earlier in the claim. Indeed, there is no ambiguity because there is *no other device* recited earlier in the claim. In similar circumstances, courts have held that the claim is not indefinite—the Court should reach the same conclusion here. *See e.g.*, *mCom IP, LLC v. Woodforest Nat'l Bank*, No. 6:21-cv-989-ADA, 2022 U.S. Dist. LEXIS 79781, at *14 (W.D. Tex. May 3, 2022) (holding that the claim term "said active session" was not demonstrated to be indefinite because "despite the lack of explicit antecedent basis for the term … [the claim] has a reasonably ascertainably meaning … in context") (citation omitted).

This is not a close call. The Court should reject Samsung's argument that Claim 11 of the '218 Patent is indefinite.

## I.    "said device includes motion sensing operable to distinguish between a plurality of different types of motion" ('633, Claim 1)

Claim 1 of U.S. Patent No. 11,190,633 (the "'633 Patent") (Ex. 7) recites that "said device includes motion sensing operable to distinguish between a plurality of different types of motion." Ex. 7 at Claim 1. This requires that the watch device itself contain motion sensing capability that is operable to do what the claim language states—distinguish between different motion types.

<u>First</u>, the meaning of "includes" in this claim term is well understood in the English language. Laypersons and skilled artisans alike know that the word means to comprise or contain

as part of a whole. Ex. 11 at 587 ("to take in or comprise as part of a whole"; "to contain between or within"). The '633 Patent intrinsic record is consistent and does not require a different interpretation. Turning to the claim language, Claims 1-39 recite "includes" twice, both times in Claim 1—"said device *includes* a battery, said device *includes* motion sensing operable to distinguish between a plurality of different types of motion." Ex. 7 at 6:60-62. This language uses "includes" according to its plain and ordinary meaning.

The specification also uses "includes" and its derivatives consistently with their plain and ordinary meaning. *Id*., 1:57-61, 3:8-11, 3:51-56, 3:61-65, 4:2-7, 4:19-22, 4:36-64, 5:10-39, 5:40-61, 5:62-6:17. Importantly, the '633 Patent discloses that:

> ***Control circuitry*** to determine when a cellular phone vibration occurs ***may be*** ***included*** and may be located ***in either autonomous device 350 or notification*** ***device 330***. Such control circuitry may, for example, be able to distinguish ambient motion (e.g., the soft-motion of somebody walking or a single hard-motion of a purse hitting a counter-top) from a vibrating cell-phone motion (e.g., a high-frequency, hard, repetitious motion).

Ex. 7 at 5:16-23. The '633 Patent thus describes two different embodiments for "including" motion sensing capability (*i.e.*, control circuitry), either by including such control circuitry (i) *in* device 350 or (ii) *in* device 330. Device 330 is the device that provides notifications to a user (*e.g.*, Ex. 7, 5:52-57), and device 350 can be a separate sensor (*e.g.*, *id*., 5:11-12).

In Claim 1, the inventor expressly chose to locate the motion sensing capability in the ***same*** device that provides the notification signals to a user (like the specification describes with respect to device 330), and not a separate device like device 350 that may simply be a sensor. Ex. 7 at Claim 1 (claiming that "***said device*** includes motion sensing operable to distinguish between a plurality of different types of motion" and "***said device*** is operable to provide first user-perceivable notification signals … and second user-perceivable notification signals"). Construing Claim 1 consistently with the inventor's decision such that the "motion sensing operable to" is located in

the *same* claimed "device" that provides the notification signals to a user is supported by the intrinsic evidence, including the plain language of the claim. Such a construction properly reflects that Claim 1 is directed to one of the embodiments described in the '633 Patent, which is consistent with *Phillips*. *Phillips*, 415 F.3d at 1313 ("[T]he person of ordinary skill in the art is deemed to read the claim term not only in the context of the particular claim in which [it] appears, but in the context of the entire patent, including the specification."). The Court should thus construe "said device *includes* motion sensing operable to distinguish between a plurality of different types of motion" to require that the device itself (*i.e.*, the same device that provides the notification signals to a user) includes control circuitry that contains the motion-sensing capability.

Second, the portion of the claim language requiring that the device that includes motion sensing is "*operable to distinguish between* a plurality of different types of motion" should likewise be given its plain and ordinary meaning, which is that the device's control circuitry is configured to distinguish between different types of motion. What it means to "distinguish between" is well understood in the English language. Laypersons and skilled artisans alike know that the word "distinguish" means "to make, show, or recognize a difference." Ex. 10 at MIL_063654; *see also* Ex. 12 at 525 ("[t]o perceive as being different or distinct"). The '633 Patent intrinsic record is consistent and does not require a different interpretation. Indeed, turning to the specification, the '633 Patent discloses that:

> Control circuitry . . . may be located in . . . notification device 330. ***Such control circuitry may, for example, be able to distinguish ambient motion (e.g., the soft-motion of somebody walking or a single hard-motion of a purse hitting a counter-top) from a vibrating cell-phone motion (e.g., a high-frequency, hard, repetitious motion).***

Ex. 7 at 5:16-23; *see also* Ex. 13, File History of U.S. Patent Appln. No. US 14/172,884, 7/20/21 Notice of Allowance and Notice of Allowability (referring to "control circuitry" in the Examiner's Reasons for Allowance). The '633 Patent thus describes that a device is operable to distinguish

between different types of motion when its control circuitry is configured to recognize or show a difference between two different types of motion. This claim term is thus directed to specific capability within control circuitry of the claimed device for distinguishing between different types of motion and is not met by a device that merely receives motion sensing data for multiple types of motion without inclusion of control circuity that is configured to do what the claim requires, which is to recognize or show a difference between different types of motion.

Plaintiff thus submits that the Court should construe "said device includes motion sensing *operable to distinguish between a plurality of different types of motion*" to require that the device includes control circuitry that is configured to recognize or show a difference between different types of motion.

## IV.    CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests the Court to adopt Plaintiff's proposed constructions for each of the disputed claim terms, and to reject Samsung's proposed constructions and arguments as to alleged indefiniteness.

Dated: March 20, 2025

Respectfully submitted,

/s/ Peter F. Snell
Stafford Davis
State Bar No. 24054605
sdavis@stafforddavisfirm.com
Catherine Bartles
State Bar No. 24104849
cbartles@stafforddavisfirm.com
THE STAFFORD DAVIS FIRM, PC
815 South Broadway Avenue
Tyler, Texas 75701
Tel: 903-593-7000
Fax: 903-705-7369

Peter F. Snell
Admitted in this Court
NY Bar No. 4474136
pfsnell@mintz.com
Brad M. Scheller (*pro hac vice*)
bmscheller@mintz.com
Paul S. St. Marie (*pro hac vice*)
psstmarie@mintz.com
MINTZ LEVIN COHN FERRIS
GLOVSKY AND POPEO, P.C.
919 Third Avenue
New York, NY 10022
(212) 935-3000

*Attorneys for Plaintiff*
*Mullen Industries LLC*

## CERTIFICATE OF SERVICE

I certify that, on March 20, 2025, I electronically filed the foregoing with the Clerk of Court for the Eastern District of Texas using the ECF System which will send notification to the registered participants of the ECF System as listed on the Court's Notice of Electronic Filing.

/s/ *Peter F. Snell*
Peter F. Snell