IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| MULLEN INDUSTRIES LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 2:24-cv-00049-JRG |
| | § | |
| SAMSUNG ELECTRONICS CO., LTD. and SAMSUNG ELECTRONICS AMERICA, INC., | § § § | |
| | § | |
| Defendants. | § | |
| | § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is the Motion to Transfer Venue to the Northern District of California Under 28 U.S.C. § 1404(a) (the "Motion to Transfer") filed by Defendants Samsung Electronics Co., Ltd. ("SEC") and Samsung Electronics America, Inc. ("SEA") (collectively, "Defendants"). (Dkt. No. 37.) Having considered the Motion to Transfer and related briefing, the Court finds that it should be and hereby is **DENIED**. Also before the Court are Defendants' Opposed Motion for Hearing on Samsung's Motion to Transfer Venue to the Northern District of California Under 28 U.S.C. § 1404(a) (Dkt. 37) (Dkt. No. 76) (the "Hearing Request") and Motion to Stay Pending Resolution of Defendants' Motion to Transfer Venue (Dkt. 37) (Dkt. No. 78) (the "Motion to Stay"), which, in light of this Order, are **DENIED AS MOOT**.

I.  **BACKGROUND**

Plaintiff Mullen Industries LLC ("Plaintiff") filed this lawsuit against Defendants on January 26, 2024, accusing Defendants of directly and indirectly infringing nine United States

patents.[1] (Dkt. No. 1.) Specifically, Plaintiff alleges that (i) Defendant's mobile devices with Defendants' STF technology, (ii) Defendants' mobile devices with Google Maps technology, and (iii) Defendants' watches running Wear OS infringe certain of the asserted patents. (*See, e.g.*, Dkt. No. 54; *see also* Dkt. No. 37 at 1-2; Dkt. No. 3; Dkt. No. 57 at 3 n.3.)

Defendants filed the Motion to Transfer on July 19, 2024. (Dkt. No. 37.) In the Motion to Transfer, Defendants request that the Court transfer this case to the Northern District of California based on convenience under Section 1404(a). (*Id.* at 1.) Subsequently, in response to the parties' joint motion, the Court ordered venue discovery. (Dkt. Nos. 39, 40.)

## II.  LEGAL STANDARD

Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The first inquiry when analyzing a case's eligibility for § 1404(a) transfer is "whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*Volkswagen I*").

Once that threshold is met, courts analyze both public and private factors relating to the convenience of parties and witnesses as well as the interests of particular venues in hearing the case. *See Humble Oil & Ref. Co. v. Bell Marine Serv., Inc.*, 321 F.2d 53, 56 (5th Cir. 1963). "A motion to transfer venue pursuant to § 1404(a) should be granted if the movant demonstrates that the transferee venue is ***clearly more convenient*** taking into consideration" the public and private factors. *In re Radmax, Ltd.*, 720 F.3d 285, 288 (5th Cir. 2013) (emphasis added and cleaned up).

While a plaintiff's choice of venue is not an express factor in this analysis, the appropriate

---

[1] On December 3, 2024, Plaintiff filed the Second Amended Complaint, which withdrew one of the asserted patents. (*Compare* Dkt. No. 1 *with* Dkt. No. 54.)

deference afforded to the plaintiff's choice is reflected in a defendant's elevated burden of proof. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 314-15 (5th Cir. 2008) ("*Volkswagen II*"). Rather, the plaintiff's choice of venue contributes to the defendant's burden of proving that the transferee venue is "clearly more convenient" than the transferor venue. *Id.* at 315.

### III.  DISCUSSION

#### A.  The Motion to Transfer (Dkt. No. 37)

##### 1.  Defendants Have Not Shown that Plaintiff Could Have Brought this Case in the Northern District of California

As noted above, the first inquiry when analyzing a case's eligibility for § 1404(a) transfer is "whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed." *Volkswagen I*, 371 F.3d at 203. Only if this statutory requirement is met should the Court determine whether convenience warrants a transfer of the case. *See id.*; *Volkswagen II*, 545 F.3d at 312.

Defendants broadly allege that this case could have been brought in the Northern District of California based on "SEA ha[ving] offices with over 200 regular full-time employees in the NDCA." (Dkt. No. 37 at 7 (citing SEA Decl. ¶ 12 (Dkt. No. 37-2 ¶ 12)).) Plaintiff, however, notes that Defendants do "not identify the address of such 'offices,' nor whether they are home offices of employees or offices that belong to a different entity, neither of which would be sufficient to establish that venue would have been proper as to SEA in NDCA." (Dkt. No. 47 at 3.) In response, Defendants point to "SEA's office list, produced and cited by Samsung, identifying SEA's 385,000 sq. ft. campus at 645 and 665 Clyde Ave., Mountain View, CA." (Dkt. No. 55 at 1 (citing Exs. R-S (Dkt. Nos. 55-5, 55-6)).) Plaintiff counters that Defendants seek to rely on new evidence in their reply. (Dkt. No. 57 at 1.) Plaintiff further counters that this new evidence "is not an 'office' list but

3

a 'Property Lease' report identifying SEA as 'Owner' of property in CA," but "there is no evidence that Defendant SEA operates a regular and established place of business there." (*Id.*)

The Court agrees that Defendants have failed to meet their burden to show that Plaintiff could have brought this case in the Northern District of California. To determine whether this case "might have been brought" in the Northern District of California, the Court must find either that each Defendant (1) resides in that District or (2) has "committed acts of infringement and has a regular and established place of business." 28 U.S.C. § 1400(b).

Defendants represent that neither SEA nor SEC are a California corporation. "SEC is a Korean corporation with its principal place of business in Suwon, Republic of Korea." (*Id.* at 2.) "SEA is a wholly-owned subsidiary of SEC and a New York corporation with its principal place of business in Ridgefield, New Jersey." (*Id.*) Defendants allege that "SEA has offices with over 200 regular full-time employees in the NDCA." (Dkt. No. 37 at 7.) To support this allegation, Defendants cite a declaration from Colm Malone, the Vice President of R&D Project Management at SEA. (*Id.* (citing Dkt. No. 37-2 ¶ 12).) However, Mr. Malone's declaration merely states that "SEA has several facilities throughout California, including the NDCA, and employs over 600 regular full-time employees in California as of June 30, 2024. This includes over 200 employees in Mountain View, California, as of June 30, 2024." (Dkt. No. 37-2 ¶ 12.) Defendants fail to support this allegation with evidence of these facilities' addresses or support that either Defendant operates a regular and established place of business at these unidentified facilities. Courts in this District have found similar broad allegations insufficient to establish this threshold issue. *E.g.*, *Ax Wireless LLC v. Dell Inc.*, No. 2:22-cv-0277-RWS-RSP, 2023 WL 7490047, at *2 (E.D. Tex. Nov. 12, 2023). While Defendants attempt to cure this deficiency in their reply by introducing new evidence (Dkt. No. 55 at 1), Defendants are prohibited from doing so. *Fundamental Innovation Sys. Int'l LLC v.*

4

*LG Elecs., Inc.*, No. 2:16-cv-01425-JRG-RSP, 2018 WL 279091, at *2 (E.D. Tex. Jan. 3, 2018) ("A defendant seeking transfer cannot provide a cursory statement regarding the threshold jurisdictional burden, then wait for a plaintiff to challenge that statement, and only then come forward with more."), *objs. overruled*, 2018 WL 837711 (E.D. Tex. Feb. 13, 2018), *pet. denied In re LG Elecs., Inc.*, No. 2018-134, 2018 U.S. App. LEXIS 39409 (Fed. Cir. Apr. 24, 2018).

Additionally, Defendants fail to allege that they have committed acts of infringement in the Northern District of California. "While the Court does not fault Defendants for not admitting that they infringe, the Court does find that Defendants' failure to allege in the Motion that they commit *alleged* acts of infringement in [the Northern District of California] is an independent basis for determining that this action could not have been brought in the [Northern District of California]." *Iarnach Techs. Ltd. v. Charter Commc'ns Inc., et al.*, No. 2:24-cv-00230-JRG, 2025 WL 509445, at *3 (E.D. Tex. Feb. 14, 2025).

Accordingly, the Court finds that Defendants have failed to carry their burden on the threshold issue to show that this case could have been brought in the Northern District of California. While in light of this the Court need not consider the private and public interest factors, the Court has done so in an abundance of cation, and in doing so also finds that Defendants have failed to demonstrate that the Northern District of California would be a "clearly more convenient forum," as explained below.

### 2. Private Interest Factors

The private factors include: (i) the relative ease of access to sources of proof; (ii) the availability of compulsory process to secure the attendance of witnesses; (iii) the cost of attendance for willing witnesses; and (iv) all other practical problems that make trial of a case easy, expeditious, and inexpensive. *Volkswagen I*, 371 F.3d at 203 (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1981)).

### a. The Relative Ease of Access to Sources of Proof

For this factor to weigh in favor of transfer, the movant must demonstrate that transfer will result in more convenient access to sources of proof. *Remmers v. United States*, 2009 WL 3617597, at *4 (E.D. Tex. Oct. 28, 2009). Courts consider the distance that documents or other evidence must be transported from their existing location to the trial venue. *Uniloc USA, Inc. v. Activision Blizzard, Inc.*, 2014 WL 11609813, at *2 (E.D. Tex. July 16, 2014) (citing *Volkswagen II*, 545 F.3d at 316) (noting that this factor is still relevant even if documents are stored electronically). This factor turns on which party "most probably [has] the greater volume of documents relevant to the litigation and their presumed location in relation to the transferee and transferor venues." *Id.* The movant must identify sources of proof with enough specificity that a court can determine whether transfer will increase the convenience of the parties. *J2 Global Commc'ns, Inc. v. Proctus IP Sols., Inc.*, 2009 WL 440525, at *2 (E.D. Tex. Feb. 20, 2009).

Defendants argue that "the bulk of relevant evidence for deciding infringement will come from (1) third-party Google in the NDCA, which developed Google Maps and Wear OS; and (2) SEC in Korea, which developed the accused SmartThings Find application and adapted Wear OS software for Samsung watches." (Dkt. No. 37 at 9.) "As to [Defendants'] evidence in Korea, because Korea is outside of either this District or the NDCA, [Defendants contend that] the location of that evidence is neutral to the analysis." (*Id.* at 10.) Defendants argue that while "SEA has offices in Plano and likely maintains certain financial and marketing documents there, that same fact has not prevented transfer from this District to the NDCA in several past cases . . . ." (*Id.*) Defendants also argue that seven third-party prior art artists are in the Northern District of California or California generally. (*Id.*)

Plaintiff asserts that Defendants concede, and uncontroverted evidence establishes, that "SEA has offices in Plano and likely maintains certain financial and marketing documents there."

6

(Dkt. No. 47 at 4-5 (quoting Dkt. No. 37 at 10).) Plaintiff also asserts that Defendants concede that their evidence in Korea is neutral in the transfer analysis. (*Id.* (citing Dkt. No. 37 at 10).) Plaintiff contends that Defendants tested the accused STF technology in the Eastern District of Texas. (*Id.* at 5.) Plaintiff argues that the Court should afford less weight to the location of Google Maps source code because Google Maps is only one of the accused technologies. (*Id.* at 6.) Plaintiff also argues that "Wear OS software allegedly possessed by Google is not relevant" because Defendants admit that they load their "Korea-based adapted version of the Wear OS software onto the accused products." (*Id.* at 6 n.4.) Plaintiff further argues that Defendants' argument regarding potential prior art evidence is speculative. (*Id.* at 6.)

      The Court finds that this factor weighs slightly against transfer. Defendants identify relevant infringement documents with SEC in Korea and non-party Google in the Northern District of California. As this Court has stated and Defendants concede, "[a]s a foreign corporation with documents well outside the United States, the relative ease of access to its documents will not substantially change across different districts and is thus neutral." *AGIS Software Dev. LLC v. HTC Corp.*, No. 2:17-cv-00514-JRG, 2018 WL 4680557, at *7 (E.D. Tex. Sept. 28, 2018); *see also In re Planned Parenthood Fed'n Am., Inc.*, 52 F.4th 625, 630-31 (5th Cir. 2022) (finding that this factor weighs less strongly on the transfer analysis when "the vast majority of the evidence [is] electronic, and therefore equally accessible in either forum"). Thus, Defendants' documents in Korea are equally inconvenient and accessible for both this Court and the Northern District of California and are neutral in the transfer analysis.

      For non-party Google documents, while the Court agrees that these documents are much closer to the transferee district—either in or near the Northern District of California—the Court recognizes that non-party Google documents are only relevant to Plaintiff's infringement claims

7

against Defendants' mobile devices with Google Maps technology. Non-party Google documents are not relevant to Plaintiff's infringement claims against Defendants' mobile devices with Defendants' SFT technology and Defendants' watches running Wear OS software. While Defendants assert that "Wear OS is designed and developed by Google," Defendants admit that "SEC *adapts* [Wear OS] for use for [Defendants'] watch products" and the "source code for its *adapted version* of Wear OS [is] in Korea." (Dkt. No. 37 at 3 (emphasis added).) Thus, non-party Google documents in the Northern District of California are entitled to only minimal weight. *See, e.g.*, *Jawbone Innovations, LLC v. Samsung Elecs. Co.*, No. 2:21-cv-00186-JRG-RSP, 2022 WL 4004195, at *3 (E.D. Tex. Aug. 31, 2022) ("this is due only slight weight because Bixby is only one of a long list of features being accused in this case.").

Plaintiff conversely identifies sources of proof located in this District. These documents include Defendants' damages-related documents concerning marketing, valuation, financials, and consumer insights and value drivers of the accused products. Neither Plaintiff nor Defendants identify the quantity of relevant documents stored in either location. On the limited record before it, the Court is not in the position to decide which type of documents are more relevant based on little more than attorney argument. *Cardware Inc. v. Samsung Elecs. Co.*, No. 2:22-cv-00141-JRG-RSP, 2023 WL 2871052, at *2 (E.D. Tex. Apr. 8, 2023) (finding this factor neutral where "the record establishes that evidence related to design and development is located in the NDCA whereas evidence related to damages is located in the EDTX").

Defendants attempt to rely on seven prior artists that "are likely also to have evidence in California relating to their prior work, including documents, source code, prototypes, or samples." (Dkt. No. 37 at 5-6, 10.) However, Defendants provide no evidence that these individuals have information regarding the alleged prior art or where such information is stored. Further, it is unclear

8

whether Defendants have charted any of these alleged pieces of prior art in their invalidity contentions such that they are relevant to Defendants' invalidity defenses. While Defendants are not required "to show that the potential witness has more than relevant and material information at this point in the litigation," *In re Genentech, Inc.*, 566 F.3d 1338, 1343 (Fed. Cir. 2009), Defendants must still show that these purported pieces of prior art are relevant. *Cf. In re Hulu, LLC*, No. 2021-142, 2021 WL 3278194, at *3 (Fed. Cir. Aug. 2, 2021) (finding that the district court abused its discretion in affording identified prior art witnesses zero weight where the "proposed prior art witnesses directly related to prior art that was specifically mentioned in the asserted patents themselves, heightening their potential relevance.").

On balance, the Court finds that this factor weighs slightly against transfer.

### b. The Availability of the Compulsory Process to Secure the Attendance of Witnesses

The second private interest factor instructs the Court to consider the availability of compulsory process to secure the attendance of witnesses, particularly non-party witnesses whose attendance may need to be secured by a court order. *See Volkswagen II*, 545 F.3d at 315-16. This factor favors transfer where "non-party witnesses . . . are outside the Eastern District's subpoena power" and "a proper venue that does enjoy absolute subpoena power for both depositions and trial" is available. *Id.* at 316 (cleaned up). Federal district courts have the absolute power to compel attendance of a trial, hearing, or deposition "within 100 miles of where the person resides, is employed, or regularly transacts business in person." Fed. R. Civ. P. 45(c)(1)(A). "[T]he availability of compulsory process receives less weight when it has not been alleged or shown that any witness would be unwilling to testify." *Planned Parenthood*, 52 F.4th at 630-31 (cleaned up).

Defendants argue that this factor "strongly favors transfer because numerous relevant third-party witnesses reside in the NDCA or California." (Dkt. No. 37 at 7.) Defendants assert that "at

9

least fourteen relevant third-party witnesses are in the NDCA." (*Id.*) Defendants argue that eleven non-party Google engineers are the "most knowledgeable about the design of the accused features of Google Maps and of Wear OS as provided to" Defendants. (*Id.* at 7-8.) Defendants argue that "seven prior art witnesses with knowledge of relevant prior art reside in California." (*Id.* at 8.) Defendants also argue that individuals knowledgeable about Plaintiff's third-party license are in the Northern District of California. (*Id.*)

Plaintiff responds that "[a]t least three unwilling witnesses in this District possess relevant knowledge regarding the development of Samsung's IoT platform for its SmartThings application, which includes Samsung's STF technology." (Dkt. No. 47 at 7-8.) Plaintiff argues that the non-party Google witnesses Defendants identify are not "unwilling witnesses" because "(i) they 'voluntarily provided a declaration in support of Samsung's Motion to Transfer', (ii) 'Samsung does not deny that [the third party] has indemnity obligations to Samsung' and (iii) Google has 'been coordinating with Samsung . . . on . . . *inter parte* review . . . petitions.'" (*Id.* at 8-9 (quoting *Demaray LLC v. Samsung Elecs. Co., Ltd.*, No. 6:20-cv-00636 (ADA), 2021 U.S. Dist. LEXIS 222472, *12).) Plaintiff asserts that "it is inconceivable that all 14 Google witnesses will testify" and Defendants do not allege "that any of them possesses unique knowledge." (*Id.* at 9.) Plaintiff also argues that "once source code is obtained from Google in discovery, there will be no need for any Google witness to testify at trial." (*Id.*) Regarding the purported prior art witness, Plaintiff responds that "their relevance is purely speculative . . . ." (*Id.*) Plaintiff further argues that Plaintiff's third-party license speaks for itself, and live testimony is not required. (*Id.*)

The Fifth Circuit has instructed that "the availability of compulsory process [factor] receives less weight when it has not been alleged or shown that any witness would be unwilling to testify." *Planned Parenthood*, 52 F.4th at 630-31 (cleaned up); *see also In re TikTok, Inc.*, 85 F.4th

10

352, 360 (5th Cir. 2023). Defendants have neither shown nor alleged that any non-party witness would be unwilling to testify in this case. Further, Defendants do not identify a single witness who they expect to testify at trial. *See R2 Sols. LLC v. Databricks Inc.*, No. 4:23-cv-01147, 2024 WL 4932719, at *4 (E.D. Tex. Dec. 2, 2024) (finds this face neutral where "neither party asserts that any non-party witness is unwilling to attend trial."). On the record before it, the Court has no way of knowing whether any of these witnesses may be sought for trial testimony, let alone whether any such witnesses would be unwilling and require compulsory process. This should end the inquiry for this factor here, and the Court could find that this factor weighs against transfer. However, even assuming that Defendants' identified witnesses are unwilling to testify at trial, this factor does not weigh in favor or transfer.

Concerning the non-party Google witnesses, the Court does not find them to be unwilling witnesses in this case. Simply because a witness is not a party to the case does not make them an unwilling witness that the Court will consider under the compulsory process factor. Plaintiff points out, and Defendants fail to rebut, that the non-party Google witnesses voluntarily provided declarations in support of Defendants' Motion to Transfer, Google likely owes indemnity to Samsung, and Defendants and Google are co-petitioners in *inter partes* review petitions against the asserted patents.[2] Thus, the Court will consider the non-party Google witnesses under the willing witness factor of the transfer analysis.

The other potential "unwilling" witnesses that Defendants identify are prior art artists who are purportedly in California and individuals knowledgeable of Plaintiff's third-party license. Concerning the prior art artists, as discussed above, Defendants provide no more than mere

---

[2] In their Reply, Defendants assert that Plaintiff made a "flawed legal argument[]" that Defendants "must show Google witnesses to be unwilling." (Dkt. No. 55 at 3-4.) While Defendants are correct that there is a presumption that non-party witnesses are unwilling, Defendants fail to appreciate the Fifth Circuit's instructions in *Planned Parenthood* as Plaintiff identified. (Dkt. No. 47 at 8-9 (citing *Planned Parenthood*, 52 F.4th at 630-31).)

speculation regarding these individuals. Defendants provide no evidence that these individuals have information regarding the alleged prior art, and it is unclear whether Defendants have charted any of these alleged pieces of prior art in their invalidity contentions. While Defendants are not required "to show that the potential witness has more than relevant and material information at this point in the litigation," *In re Genentech, Inc.*, 566 F.3d 1338, 1343 (Fed. Cir. 2009), Defendants must show that these purported pieces of prior art are at least relevant. Concerning the individuals knowledgeable of Plaintiff's third-party license, while the Court does not see the relevance or necessity of such testimony, the Court recognizes that the transferee forum would be more convenient for these individuals.

The Court does not find Plaintiff's argument that Defendants are likely only to call a few non-party Google witnesses persuasive. The Federal Circuit has "rejected the . . . categorical assumption that defendants are likely to call few if any of the proposed party witnesses or prior-art witnesses that are identified for purposes of supporting transfer motions." *In re Juniper Networks, Inc.*, 14 F.4th 1313, 1319 (Fed. Cir. 2021) (collecting cases). Concerning Plaintiff's identification of three unwilling witnesses who have knowledge "regarding the development of Samsung's IoT platform for its SmartThings application," the Court does not find this argument persuasive. Plaintiff does not accuse Defendants' IoT platform of infringement. Thus, individuals with knowledge of Defendants' IoT platform are not relevant to the transfer analysis. Additionally, as with Defendants, Plaintiff does not allege that it intends to call any of these witnesses at trial. The Fifth Circuit has stated that it "cannot say that the district court committed a clear abuse of discretion in holding that this factor is neutral when petitioners have failed to identify any unwilling non-party witness." *TikTok*, 85 F.4th at 361.

12

Defendants seek transfer based on convenience—a request for which *Defendants* bear the burden—yet Defendants fail to provide the Court with sufficient evidence to conclude that their proposed forum would be any more convenient than this District under this factor. Accordingly, the Court finds that this factor is neutral.

### c. The Cost of Attendance for Willing Witnesses

The third private interest factor considers the cost of attendance for willing witnesses. When analyzing this factor, all parties and witnesses must be considered. *Volkswagen I*, 371 F.3d at 204. The Federal Circuit has described this factor as being the most important. *Genentech*, 566 F.3d at 1343. The Fifth Circuit has established a so-called "100-mile rule": when the distance between the transferor and proposed transferee venues exceeds 100 miles, "the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." *Volkswagen I*, 371 F.3d at 201; *Genentech*, 566 F.3d at 1343.

Defendants argue that witnesses with relevant knowledge of the design and development of the accused products reside in or around the Northern District of California or in Korea. (Dkt. No. 37 at 10-12.) Plaintiff argues that witnesses with knowledge of marketing, financials, damages, and testing—specifically, Defendants' employees—reside in this District. (Dkt. No. 47 at 10-11.) Plaintiff also identifies nine of Defendants' employees in this District "with relevant knowledge regarding Samsung's development of its IoT platform." (*Id.* at 11-12.)

As an initial matter, this factor concerns willing witnesses "*for trial*." *TikTok*, 85 F.4th at 361 (emphasis added). While both parties identify witnesses with potentially relevant knowledge, neither party states that they will be witnesses *for trial*. The Court could find, based on the parties' failure to identify willing witnesses for trial, that this factor is neutral in the transfer analysis. However, to be fulsome, the Court will address the parties' identified witnesses under this factor and assume—though it is not required—that the parties intend to call these witnesses at trial.

13

Regarding Defendants' Korean witnesses, the Federal Circuit and Fifth Circuit have found that traveling from Asia to California "would greatly reduce the time and inconvenience of travel" as opposed to traveling from Asia to Texas. *In re Samsung Elecs. Co., Ltd.*, No. 2023-146, 2023 WL 8642711, at *2 (Fed. Cir. Dec. 14, 2023); *TikTok*, 85 F.4th at 361. Similarly, the Northern District of California is clearly more convenient for Defendants' infringement witnesses who live in or around the Northern District of California. However, weighing against transfer are Defendants' employees that Plaintiff identifies as relevant to damages in this District.[3]

Additionally, the Court considers the non-party Google witnesses under this factor since the Court found that Defendants failed to meet their burden to establish that these witnesses would be unwilling to testify at trial. (*Supra* Section III.A.2.b.) Defendants identified thirteen non-party Google witnesses as relevant to the design and development of Google Maps who are in or around the Northern District of California. (Dkt. No. 37 at 4.) Defendants identified two non-party Google witnesses in or around the Northern District of California or one non-party Google witness in the United Kingdom as relevant to the design and development of Google Wear OS. (*Id.* at 5.) As discussed above, the Court does not find Google Wear OS relevant here because, as Defendants admit, "Samsung watches use an ***adapted version*** of Google's Wear OS software for generating notifications of calls and other events, which Mullen accuses of infringement." (*Id.* (emphasis added).) Regarding the individuals with knowledge relevant to Google Maps, the Court finds that these individuals only slightly favor transfer because Google Maps is only one of the accused features in this case. *See, e.g., Jawbone*, 2022 WL 4004195, at *3 ("this is due only slight weight because Bixby is only one of a long list of features being accused in this case.").

---

[3] While Plaintiff identifies nine of Defendants' employees in this District with relevant knowledge of Defendants' IoT platform, as discussed above, the Court does not find these witnesses relevant to the transfer analysis. (*See supra* Section III.A.2.b.)

14

Accordingly, the Court finds that this factor slightly favors transfer.

#### d. Other Practical Problems

The fourth factor considers "all other practical problems that make trial of a case easy, expeditious and inexpensive." *Volkswagen I*, 545 F.3d at 315. Defendants argue that "[t]his case is in its early stages, so transfer would not prejudice" Plaintiff. (Dkt. No. 37 at 12.) Plaintiff argues that "this factor weighs against transfer because, to Plaintiff's prejudice, there will be no obligation for a NDCA court to adopt the current schedule nor to prevent Samsung from attempting to redo its contentions." (Dkt. No. 47 at 13.)

The Court finds that this factor is neutral in the transfer analysis.

### 3. Public Interest Factors

The public factors include: (i) the administrative difficulties flowing from court congestion; (ii) the local interest in having localized interests decided at home; (iii) the familiarity of the forum with the law that will govern the case; and (iv) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law. *Volkswagen I*, 371 F.3d at 203 (citing *Piper Aircraft*, 454 U.S. at 241 n.6).

#### a. Court Congestion

"To the extent that court congestion is relevant, the speed with which a case can come to trial and be resolved may be a factor." *Genentech*, 566 F.3d at 1347. This factor is the most speculative, and this factor alone should not outweigh other factors. *Id.*

Defendants argue that this factor is neutral because "[t]here is no urgent need for disposition of this matter" since Plaintiff is a non-practicing entity. (Dkt. No. 37 at 13-14.) Defendants also contend that "while this District may have a shorter median time to trial than the NDCA, this should not weigh against transfer." (*Id.* at 14.) Plaintiff responds that the median time

15

to trial in this District is shorter than in the Northern District of California, and this District is less congested. (Dkt. No. 47 at 14.)

The Court finds that this factor is neutral in the transfer analysis. Here, the parties agree that this District has a significantly faster median time-to-trial than the Northern District of California. In fact, the difference in the median time-to-trial in this District and the Northern District of California is measured in *years*. While this factor is far from dispositive standing alone, the differences in time to trial should not be unduly discounted. The Fifth Circuit recognizes that "the district court is better placed" to evaluate "docket efficiency." *Planned Parenthood*, 52 F.4th at 631. The case is timely proceeding to trial before this District. *Id.* (finding that this factor normally counsels against transfer when a "case appears to be timely proceeding to trial before the" transferor venue).

Nevertheless, this Court recognizes that the Federal Circuit has instructed that courts should not assign weight against transfer where the plaintiff "is not engaged in product competition in the marketplace and is not threatened in the market in a way that, in other patent cases, might add urgency to case resolution." *In re Google LLC*, 58 F.4th 1379, 1383 (Fed. Cir. 2023). As this Court has stated, "[w]hile this Court finds it perplexing to consider the marketplace status of the parties in assessing this *public* interest factor related to court congestion, it is bound by the Federal Circuit's decision in *[In re Google]* to afford this factor no weight based on time-to-trial differences." *Emerging Auto. LLC v. Kia Corp.*, No. 2:23-cv-00434-JRG, 2024 WL 3170398, at *13 (E.D. Tex. June 25, 2024). Here, Plaintiff does not compete with Defendants in the marketplace. Based on those circumstances and the Federal Circuit's guidance, the Court finds it should not assign weight against transfer.

Accordingly, the Court finds this factor neutral in the transfer analysis.

### b. Local Interest

This factor analyzes the "factual connection" that a case has with the transferee and transferor venues. *Volkswagen I*, 371 F.3d at 206. This factor considers the relationship between the dispute and the community from which the jury pool will be drawn, as "jury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation." *Id.* Local interests that could apply to any judicial district or division in the United States are disregarded in favor of particularized local interests. *In re TS Tech USA Corp.*, 551 F.3d 1315, 1321 (Fed. Cir. 2008); *Volkswagen II*, 545 F.3d at 318.

The parties argue that their preferred forum has a stronger local interest based on previously asserted arguments. Defendants argue that the Northern District of California has a strong local interest because some of the accused products were designed and developed there. (Dkt. No. 37 at 13.) Plaintiff responds that Defendants have more than a mere "general presence" in this District based on Defendants' "EDTX-based evidence and employees who work on aspects of the accused products." (Dkt. No. 47 at 13-14.) Plaintiff also responds that Defendants' "reliance on non-party Google is also overstated and cannot override EDTX's local interest in this case resulting from Samsung's ties to this District." (*Id.* at 14.)

Defendants admit that SEA maintains an office in this District. In fact, SEA advertised that its office in this district "is home to [SEA's] second biggest employee population in the U.S. across multiple divisions . . . ." (Dkt. No. 47-3.) Defendants admit that as of October 2024, SEA has 604 employees in this District—out of 998 identified employees—that work in different business units relevant to the accused products. (Dkt. No. 47-2 at 8-12.) Defendants also do not dispute that Defendants have tested at least one of the accused functionalities in this District. Defendants have not presented evidence that any ***party*** maintains a significant presence in the Northern District of California. Defendants emphasize that non-parties such as Google and SEA's subsidiary STI have

17

a presence in the Northern District of California. However, non-parties "are irrelevant when determining whether localized interests weigh in favor of transfer" and, thus, absent other evidence, the Northern District of California does not have a stronger local interest in this case than the Eastern District of Texas. *See Astute Tech., LLC v. Learners Digest Int'l LLC*, No. 2:12-CV-00689-WCB, 2014 WL 12596468, at *10 (E.D. Tex. Apr. 28, 2014) (Bryson, J., sitting by designation) ("While LDI argues that the Western District of Wisconsin has an interest in determining if technology employed by one of its resident corporations, Sonic Foundry, infringes a valid patent, that interest, affecting only a third party that is a stranger to the lawsuit, is not of sufficient magnitude to be an important consideration in the transfer decision.").

Accordingly, the Court finds that this factor weighs against transfer.

### c. Familiarity of the Forum with Law and Conflict of Law

The parties agree that the third and fourth public interest factors are neutral in the transfer analysis. (Dkt. No. 37 at 13-14; Dkt. No. 47 at 14.) Therefore, the Court finds these factors neutral.

### 4. Balancing the Factors[4]

Given the foregoing factors, the Court must determine whether the Northern District of California is "clearly more convenient" than the Eastern District of Texas. The Fifth Circuit has been careful to emphasize that district courts should not merely engage in a "raw counting" exercise that tallies up the factors favoring transfer and the factors militating against transfer. *In re Radmax*, 720 F.3d 285, 290 n.8 ("We do not suggest—nor has this court held—that a raw counting of the factors in each side, weighing each the same and deciding transfer only on the resulting 'score,' is the proper methodology."). Instead, the Court must make factual determinations to ascertain the degree of actual convenience, if any, and whether such rises to the level of "clearly

---

[4] In its opposition, Plaintiff also argued that Defendant's 30(b)(6) venue deponent was unprepared. (Dkt. No. 47 at 14-15.) The Court finds that it does not need to address this argument in ruling on the Motion to Transfer.

more convenient." *See id.* Where the present and proposed forums are both roughly similar in terms of convenience, courts should not conclude that the proposed transferee forum is "clearly more convenient." *Volkswagen II*, 545 F.3d at 315. While this Court does not hold that "clearly more convenient" is equal to "clear and convincing," a movant must show materially more than a mere preponderance of convenience, lest the standard have no real or practical meaning. *See id.* When carefully applying the convenience factors and the related factual arguments in each unique case, courts should be careful not to lose sight of the plaintiff's choice of forum and its historical significance in our jurisprudence. *Id.* ("[W]hen the transferee venue is not clearly more convenient than the venue chosen by the plaintiff, the plaintiff's choice should be respected.").

Having found one factor weighs slightly against transfer, one factor weighs slightly in favor of transfer, one factor weighs against transfer, and the remaining factors weigh neutrally, the Court concludes that the Northern District of California is not a "clearly more convenient" forum for this case. Accordingly, considering the weight of the specific factors and the facts of this case, the Court finds that Defendants' Motion to Transfer (Dkt. No. 37) should be denied.

### B. The Motion to Stay (Dkt. No. 78)

In the Motion to Stay, Defendants request that the Court stay the above-captioned case pending resolution of Defendants' Motion to Transfer. (Dkt. No. 78.) As stated above, the Court finds that the Motion to Transfer should be denied. As the Court has ruled on the Motion to Transfer, the Court finds that the Motion to Stay should be denied as moot.

## IV. CONCLUSION

For the foregoing reasons, the Court finds that the Motion to Transfer (Dkt. No. 37) should be and hereby is **DENIED**. The Court holds that the Motion to Stay (Dkt. No. 78) is **DENIED AS MOOT**. The Court further holds that the Hearing Request (Dkt. No. 76) is **DENIED AS MOOT**.

**So ORDERED and SIGNED this 25th day of March, 2025.**

```
_____
RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE
```