IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| MULLEN INDUSTRIES LLC, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | No. 2:24-cv-00049-JRG |
| v. | § | |
| | § | |
| SAMSUNG ELECTRONICS CO., LTD., and | § | **JURY TRIAL DEMANDED** |
| SAMSUNG ELECTRONICS AMERICA, | § | |
| INC., | § | |
| | § | |
| *Defendants*. | § | |
| | § | |

**DEFENDANTS SAMSUNG ELECTRONICS CO., LTD., AND SAMSUNG
ELECTRONICS AMERICA, INC.'S
RESPONSIVE CLAIM CONSTRUCTION BRIEF[1]**

---

[1] This Court granted Defendants' unopposed motion to increase the page limit for this brief by 3 pages, from 30 pages to 33 pages. Dkt. 92. This brief is within the increased 33-page limit.

## TABLE OF CONTENTS

**Page**

I.    DISPUTES OVER ORDER OF CLAIMED STEPS ........................................ 1

    A.    '117 Patent, Claim 1 ................................................................... 1

    B.    '117 Patent, Claim 15 ................................................................. 3

        1.    Steps [d]-[f] and [g]-[h] must be performed in order ............................... 3

        2.    Steps [d]-[j] must be performed, not merely "completed," in order .......... 5

    C.    '117 Patent, Claim 29 ................................................................. 6

    D.    '117 Patent, Claim 42 ................................................................. 8

    E.    '024 Patent, Claim 1 ................................................................. 10

    F.    '024 Patent, Claim 24 ................................................................ 11

    G.    '024 Patent, Claim 45 ................................................................ 13

    H.    '283 Patent, Claim 1 ................................................................. 15

    I.    '575 Patent, Claim 30 ................................................................ 17

II.   DISPUTED CLAIM CONSTRUCTIONS .................................................. 18

    A.    "list of users" ('117, Cl. 1; '024, Cl. 1; '575, Cl. 30) ........................................ 18

    B.    "region-based" ('117, Cl. 29; '039, Cl. 1) ................................................ 20

        1.    The "region" or "geographical area" is user-specified ........................... 20

        2.    "region" is not defined by distance from a user ................................ 22

    C.    "distance-based" ('117, Cl. 29; '039, Cl. 1) ............................................. 22

        1.    "distances" must be user-specified ........................................... 23

        2.    "distances" must be measured from a second user's current location ........................................................................... 24

    D.    "location information" ('283, Cl. 1) ...................................................... 25

    E.    "directional information" ('575, Cl. 30) .................................................. 25

III.  DISPUTED INDEFINITENESS TERMS .................................................. 27

    A.    "said wireless telephonic device" ('218, Cl. 11) ......................................... 27

    B.    "said device includes motion sensing operable to distinguish between a plurality of different types of motion" ('633, Cl. 1) ..................................... 30

        1.    "the device includes motion sensing …" claims pure function .............. 30

        2.    Plaintiff's construction attempts to improperly import a structure ......... 32

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ajinomoto Co. v. ITC*,
    932 F.3d 1342 (Fed. Cir. 2019).............................................................................. 29

*Altiris, Inc. v. Symantec Corp.*,
    318 F.3d 1363 (Fed. Cir. 2003)................................................................... 1, 3, 4, 15

*Ancora Techs., Inc. v. LG Elecs. Inc.*,
    2020 WL 4825716 (W.D. Tex. Aug. 19, 2020) ......................................................... 5

*Apple Inc. v. MPH Techs. Oy*,
    28 F.4th 254 (Fed. Cir. 2022) ................................................................................. 19

*Bushnell Hawthorne, LLC v. Cisco Sys., Inc.*,
    813 F. App'x 522 (Fed. Cir. 2020) .......................................................................... 29

*CardWare Inc. v. Samsung Elecs. Co.*,
    No. 2023 WL 5434763 (E.D. Tex. Aug. 23, 2023) ............................................ 22, 29

*Droplets, Inc. v. eBay, Inc.*,
    No. 2:11-cv-401-JRG-RSP, 2014 WL 4217376 (E.D. Tex. 2014)........................... 19

*E-Pass v. 3COM Corp.*,
    473 F.3d 1213 (Fed. Cir. 2007)................................................................................. 1

*Greenberg v. Ethicon Endo-Surgery, Inc.*,
    91 F.3d 1580 (Fed. Cir. 1996)................................................................................ 32

*Halliburton Energy Servs., Inc. v. M-I LLC*,
    514 F.3d 1244 (Fed. Cir. 2008)......................................................................... 27, 30

*Hill-Rom Servs. v. Stryker Corp.*,
    755 F.3d 1367 (Fed. Cir. 2014)............................................................................... 33

*Hytera Commc'ns Co. v. Motorola Sols., Inc.*,
    841 F. App'x 210 (Fed. Cir. 2021) .................................................................. 1, 15, 18

*Kaneka Corp. v. Xiamen Kingdomway Grp. Co.*,
    790 F.3d 1298 (Fed. Cir. 2015)................................................................................. 5

*Mantech Env't Corp. v. Hudson Env't Servs., Inc.*,
    152 F.3d 1368 (Fed. Cir. 1998)................................................................................. 6

*MCOM IP, LLC v. Woodforest Nat'l Bank & Inetco Sys., Ltd.*,
    2022 WL 1394551 (W.D. Tex. May 3, 2022) .................................................... 29, 30

*Medtronic, Inc. v. Teleflex Life Scis. Ltd.*,
    2024 WL 1208642 (Fed. Cir. Mar. 21, 2024)...................................................... 5, 6, 18

*Mformation Techs., Inc. v. Rsch. in Motion Ltd.*,
    764 F.3d 1392 (Fed. Cir. 2014)................................................................................. 2

*Nautilus, Inc. v. Biosig Instruments, Inc.*,
    572 U.S. 898 (2014).............................................................................................. 32

*O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*,
    521 F.3d 1351 (Fed. Cir. 2008)......................................................................... 18, 20

**TABLE OF AUTHORITIES**
**(continued)**

**Page(s)**

*Oak Tech., Inc. v. ITC,*
    248 F.3d 1316 (Fed. Cir. 2001) ................................................................................ 14

*Parallel Networks, LLC v. Abercrombie & Fitch Co.,*
    704 F.3d 958 (Fed. Cir. 2013) .................................................................................. 24

*Playtex Prods., Inc. v. Procter & Gamble Co.,*
    400 F.3d 901 (Fed. Cir. 2005) .................................................................................. 32

*Ruckus Wireless, Inc. v. Innovative Wireless Solutions, LLC,*
    824 F.3d 999 (Fed. Cir. 2016) .................................................................................. 21

*Seachange Int'l, Inc. v. C-Cor, Inc.,*
    413 F.3d 1361 (Fed. Cir. 2005) ................................................................................ 28

*Wasica Fin. GmbH v. Cont'l Auto. Sys.,*
    853 F.3d 1272 (Fed. Cir. 2017) ................................................................................ 32

*Williamson v. Citrix Online, LLC,*
    792 F.3d 1339 (Fed. Circ. 2015) .............................................................................. 33

### TABLE OF EXHIBITS

| Ex. Number | Document |
|---|---|
| Plaintiff's Exhibits Filed With Plaintiff's Opening Brief (Dkt. 88) | |
| 1 (Dkt. 88-2) | U.S. Patent No. 9,204,283 ("'283") |
| 2 (Dkt. 88-3) | U.S. Patent No. 8,374,575 ("'575") |
| 3 (Dkt. 88-4) | U.S. Patent No. 11,234,117 ("'117") |
| 4 (Dkt. 88-5) | U.S. Patent No. 11,246,024 ("'024") |
| 5 (Dkt. 88-6) | U.S. Patent No. 11,096,039 ("'039") |
| 6 (Dkt. 88-7) | U.S. Patent No. 11,109,218 ("'218") |
| 7 (Dkt. 88-8) | U.S. Patent No. 11,190,633 ("'633") |
| 8 (Dkt. 88-9) | U.S. Patent No. 11,122,418 ("'418") |
| 9 (Dkt. 88-10) | The American Heritage Dictionary of the English Language (2000) ("region") |
| 10 (Dkt. 88-11) | Collins Concise Dictionary (2001) ("distinguish" and "region") |
| 11 (Dkt. 88-12) | Merriam-Webster's College Dictionary (2001) ("include") |
| 12 (Dkt. 88-13) | The American Heritage Dictionary of the English Language (2000) ("distinguish") |
| 13 (Dkt. 88-14) | Notice of Allowance for Application No. 14/172,884, dated July 20, 2021 |
| Defendants' Additional Exhibits Filed With This Brief | |
| A | Table listing of independent claims, including letter labels identifying each of the claim elements |
| B | '117 Patent File History, Reply to Office Action in Application No. 11/834,674, dated December 29, 2014 |
| C | '117 Patent File History, Reply to Office Action in Application No. 11/834,674, dated October 8, 2015 |
| D | Claim Construction Declaration of Dr. Benjamin B. Bederson, dated February 20, 2025 |
| E | '218 Patent File History, Supplemental Reply to Office Action in Application No. 11/841,734, dated November 29, 2019 |
| F | '218 Patent File History, Reply to Office Action in Application No. 11/841,734, dated October 1, 2020 |
| G | Institution Decision in *Inter Partes* Review No. IPR2024-01472 regarding the '633 Patent, dated March 31, 2025 |
| H | Patent Owner Preliminary Response in *Inter Partes* Review No. IPR2024-01472 regarding the '633 Patent, dated January 29, 2025 |

Defendants hereby submit their responsive claim construction brief, which addresses the terms in the following order: (1) disputes over order of steps in nine claims; (2) disputes over whether and how to construe five claim terms; and (3) disputes over indefiniteness for two terms.

## I.    DISPUTES OVER ORDER OF CLAIMED STEPS

The parties dispute whether steps recited in nine claims of the '117, '024, '283, and '575 Patents must be performed in order.  *See* Ex. A (excerpts of the nine claims with letter labels for each step).  In deciding whether order of steps is required, courts "look to the claim language to determine if, as a matter of logic or grammar, they must be performed in the order written."  *Altiris, Inc. v. Symantec Corp.*, 318 F.3d 1363, 1369 (Fed. Cir. 2003).  As a secondary source, courts may "look to the rest of the specification to determine whether it directly or implicitly requires" an order.  *Id.* at 1370.  Where steps "refer to the completed results of the prior step," the steps must be performed in order.  *E-Pass v. 3COM Corp.*, 473 F.3d 1213, 1222 (Fed. Cir. 2007).  Steps generally require order where "each step … provides an antecedent basis for the steps that follow." *Hytera Commc'ns Co. v. Motorola Sols., Inc.*, 841 F. App'x 210, 218 (Fed. Cir. 2021).

While Plaintiff purports to rely on the "plain and ordinary meaning" for each of the disputes, its briefing wholly ignores and contradicts the claim language that dictates an order.  Dkt. 88 ("Br.") at 7-8.  Construction is required to resolve the parties' dispute over plain meaning.

### A.    '117 Patent, Claim 1

| Plaintiff's Proposal | Defendants' Proposal |
|---|---|
| Plain and ordinary meaning; no order required. | Steps [d]-[f] must be performed in order. |

The logic and grammar of Claim 1 compel that its three Steps [d], [e], and [f] must be performed in order.  Plaintiff's brief ignores the claim's logic and grammar and instead relies on specification passages that are irrelevant to the parties' dispute.

First, Step [d] must precede Step [e] because Step [e] relies on the result of Step [d].  Step

1

[d], "providing said location of said wireless telephone to a **remote server**," must be performed before Step [e], "instructing **said remote server** to change a list of users on **said remote server** … that are allowed to access said location by way of **said remote server** providing said location from **said remote server** to at least one of said users of said list of users."  Step [e] relies on antecedent basis in Step [d] for both "said remote server" and "said location."  Further, "said remote server" cannot allow other users to access "said location" as required in Step [e], before the "remote server" receives and, thus, actually has "said location," which happens in Step [d].

Second, Step [e] must precede Step [f] because Step [e] is about allowing access to "**said location [of said wireless telephone]** from said remote server" to another device user, while Step [f] provides "directional information … **between said location** and a second location associated with said" other device user.  The other device user must first be granted access to "said location" of the "wireless telephone" (in Step [e]) before it can then access and receive "directional information" to that "said location" (in Step [f]).  *See Mformation Techs., Inc. v. Rsch. in Motion Ltd.*, 764 F.3d 1392, 1400 (Fed. Cir. 2014) ("As a matter of logic, a mailbox must be established before the contents of said mailbox can be transmitted.").  Indeed, to reverse Steps [e] and [f], would mean sharing directional information to "said location" of a "wireless telephone" before the other device is allowed to access that "said location"  Such a reverse ordering is nonsensical and would undermine a critical aspect of the patents—i.e., to ensure access rights are granted for a location before sharing that location and directions.  *See* '117 at Fig. 17 (boxes 1703-1705, 1722).

Plaintiff argues that, individually, each of Steps [d] and [e] can happen at any time based on the specification.  Br. at 7-8.  But even if that is true, it is irrelevant to whether Step [e] can occur before Step [d], and Step [f] can happen before Step [e].  None of Plaintiff's specification citations describe Steps [d]-[f] performed in an order different from the order written in Claim 1. '117 at 5:14-16, 8:57-67, 9:12-14, 11:7-8; Figs. 9, 16.  In the absence of contrary disclosure in the

specification, the claim language controls and requires the recited order.  *Altiris*, 318 F.3d at 1369.

### B.     '117 Patent, Claim 15

| Plaintiff's Proposal | Defendants' Proposal |
|---|---|
| Plain and ordinary meaning; to the extent any order is required, the apparatus is capable of: [d] before [e]; [e] before [h]; [f] before [g]; [g] before [i]; [i] before [j]. | Steps [d]-[j] must be performed in order. |

For Claim 15, Plaintiff concedes that most of the claimed steps are performed in order, but it challenges whether Step [f] must follow Steps [d] and [e].  Plaintiff's challenge is contradicted by the logic and grammar in the claim.  And its proposal that the other steps need only be "completed" in order—but not "performed" in order—undoes, in effect, any ordering requirement and finds no basis in caselaw, the claims, or the specification.  Instead, each of steps [d] through [j] must be performed in order, such that each step must complete before the next step can begin.

### 1.     *Steps [d]-[f] and [g]-[h] must be performed in order*

The three Steps [d], [e], and [f] must be in order.  First, as Plaintiff acknowledges, Step [d] must precede Step [e] because Step [d] requires "displaying a plurality of users," and Step [e] "receiv[es] a first manual input in a form of a selection of one of *said plurality of users*."

Second, Step [e]—"receiving a *first manual input* in a form of a selection of one of said plurality of users"—must precede Step [f] because Step [f] recites "receiving an input in a form of a login and a *second manual input* in the form of a password."  The use of "*first* manual input" in Step [e] signals that it comes before the "*second* manual input" in Step [f].  And because Step [d] must precede Step [e] (as Plaintiff admits) and Step [e] must precede Step [f], it follows that Step [f] cannot precede Step [d], contrary to Plaintiff's position.  Br. at 10.

Plaintiff proposes that Step [e] need only be followed by Step [h], skipping Steps [f] and [g] in between.  But this ignores the claim language—by its terms, Step [g] relies on two sets of inputs received in prior steps:  a user "selection" (at Step [e]) and a "login" and "password" (at

Step [f]).  Step [g] relies on antecedent inputs from Step [e] by reciting "determining whether to allow access of location information for said one of said plurality of wireless telephones associated to **said selected one of said** plurality of users"—the "selection of one of said" users occurred in Step [e].  Step [g] also relies on antecedent inputs from Step [f] by reciting "providing **said login** and **said password** to a remote server"—the login and password were received in Step [f].

Plaintiff's reliance on the specification to argue that the login and password of Step [f] can be received at any time (Br. at 3-4) does not support that Step [f] can be performed out of order.  The cited specification passages do not describe the timing of Step [f] in relation to Steps [d], [e], [g], or [h].  *See* Br. at 4 (citing '117 at 3:5-7, 3:26-30, 9:46-47, 9:64-67, 10:53-60).  Figures 13 and 14, for example, describe logging into a device but do not describe the login process's relation to other steps of "displaying a plurality of users" or "receiving … a selection of one of said plurality of users."  The relationship and ordering between these steps and the login process of Step [f] can only be found in the claims, which dictate performance in order.  *Altiris*, 318 F.3d at 1369.

Additionally, while not addressed in Plaintiff's brief, Step [h] must follow Step [g] because it only makes sense to assign access rights in Step [h] after "determining whether said selected one of said plurality of users has provided access rights" in Step [g].  In fact, this claimed sequence is confirmed in Figure 17, which depicts how a determination is made about whether access rights have been previously provided in flowchart boxes 1703, 1722, and 1704, and then assigning access rights if no rights were previously assigned in box 1705.  '117 at Fig. 17, 12:13-15 ("If access rights do exist for the requesting device/user at step 1704 then step 1705 may be initiated and location information may be provided to the requestor").  The reverse order would be nonsensical and redundant, as it would mean assigning access rights (in Step [h]) and then immediately determining whether those access rights were previously assigned (in Step [g]).

### 2.     Steps [d]-[j] must be <u>performed</u>, not merely "completed," in order

Plaintiff urges that even if some steps must be in order, those steps need only be "completed" in order, such that two steps in order could occur in parallel, so long as an earlier-recited step finishes before a later-recited step finishes.  Br. at 2.  But Plaintiff cites no authority to support the notion of "completion" in order, which largely undoes any ordering requirement by permitting parallel performance.  In its P.R. 4-3 Statement, Plaintiff cited only one case finding "completion" in order:   an out-of-district, unpublished case, *Ancora Techs., Inc. v. LG Elecs. Inc.*, 2020 WL 4825716, at *5 (W.D. Tex. Aug. 19, 2020), which Plaintiff's brief cites only for other arguments.  Br. at 4.  But *Ancora* is inapposite and the only basis *Ancora* itself cited to support parallel performance was *Kaneka Corp. v. Xiamen Kingdomway Grp. Co.*, 790 F.3d 1298, 1301 (Fed. Cir. 2015).  *Kaneka* is distinguishable because there the court found that steps of an oxidation process could be performed concurrently only when the specification expressly "contemplate[d] continuous process steps" performed in parallel.  *Id.* at 1306.  Thus, the claims did not exclude a continuous process or one "in which every claim step is occurring simultaneously."  *Id*. at 1306.

By contrast, the Federal Circuit has repeatedly rejected parallel performance on similar facts as here.  *Medtronic, Inc. v. Teleflex Life Scis. Ltd.* rejected parallel performance of steps that recited: [a] "inserting the standard guide catheter"; [b] "positioning the standard guide catheter"; [c] "inserting a coaxial guide catheter"; [d] "inserting a substantially rigid portion"; [e] "advancing the flexible tip portion"; and [f] inserting and advancing an [interventional cardiology device] "beyond … the flexible tip portion."  2024 WL 1208642, at *5 (Fed. Cir. Mar. 21, 2024).  After the PTAB construed the claims to require order, Medtronic argued on appeal that steps [e] and [f] could be performed simultaneously.  *Id*. at *3.  The Federal Circuit disagreed, finding the antecedent basis that step [f] derived from step [e] supported an order of performance construction: "[W]hen the current step of a method claim refers to a previous step using the definite article 'the,'

5

the claim language indicates that the previous step occurs sequentially before the current step." *Id.*

Similarly, *Mantech Env't Corp. v. Hudson Env't Servs., Inc.* rejected parallel performance of steps for eliminating contamination of groundwater, reciting: (a) providing a well, (b) introducing acetic acid, via the well, into the groundwater of a contaminated region, (c) using an aqueous solution in said groundwater region for mixing with "said acidified groundwater," and (d) using a treating flow of hydrogen peroxide solution in said groundwater.  152 F.3d 1368, 1375-76 (Fed. Cir. 1998).  The Federal Circuit reasoned that each step relied on a result from a prior step and "nothing in the written description suggests" the steps could be parallel or out of order  *Id*.

Here, as in *Medtronic* and *Mantech*, Claim 15 requires the steps to be performed in order, not in parallel, because each step relies on the outcome of a prior step.  Step [d], "displaying a plurality of users," must finish before starting Step [e], "receiving a first manual input in a form of a selection of one of said plurality of users."  A user cannot make a selection of one of many users in Step [e] until ***after*** the potential selections are displayed in Step [d].  The specification confirms that the display of users must precede the selection of displayed users.  '117 at 6:43-56; Fig. 4.

In the same manner, each of Steps [f] through [i] refers to outcomes from the preceding step.  For example, Step [g] cannot "provid[e] said login and said password to a remote server" until that "login" and "password" have been "receiv[ed]" according to Step [f].  Step [h]'s assignment of access rights only makes sense after it's "determine[ed] whether" those access rights were previously assigned in Step [g].  And location information can only be transmitted and shared in Step [i], after access rights to that location were assigned and granted in Step [h].  Finally, "location information" must be "receiv[ed]" at Step [i] before it can be "display[ed]" in Step [j].

### C.    '117 Patent, Claim 29

| Plaintiff's Proposal | Defendants' Proposal |
|---|---|

| Plain and ordinary meaning; to the extent any order is required, the apparatus is capable of: [d] before [e]; [f] before [g]. | Steps [d]-[g] must be performed in order. |
|---|---|

The dispute for Claim 29 is limited to whether Step [f] must follow Steps [d] and [e]. Plaintiff again ignores the claim language, which requires those steps to be performed in order.

Step [f], reciting "selecting a location-based event," relies on the prior steps of "receiving user information" (at Step [d]) and "providing to the server location … associate[d] with said user information" (at Step [e]). Step [f] cannot be performed until the prior steps complete because the "location-based event" in Step [f] is "manually pre-selected from a list of three types of location-based events," and the claim recites that one type of "location-based event" is "distance-based." "Distance-based" events, as explained by the specification, are defined by the distance from a user's device, which corresponds to the "location of said wireless telephone" in Claim 29. *See* '117 at Fig. 11, 9:32-36 (describing that alerts can be triggered "if the requested user is in a specific city or the same city as the user of display 1100, is within a certain distance, or if a user located the user of display 1100"). Thus, because the "location-based event" relies on the "location of the wireless telephone," "said location" must be provided to the server (at Step [e]) before a location-based event (such as a "distance-based" event) can be selected at Step [f]. Indeed, it would be nonsensical to permit selection and notification of location-based events (at Step [f]) before the location of the user (i.e., the "location of said wireless telephone") is even determined at Step [e].

Plaintiff does not dispute Step [e] must follow Step [d] because "user information" must be received at Step [d] before receiving a location "in association with said user information" at Step [e]. Thus, because Step [f] follows Step [e] as detailed above, Step [f] also follows Step [d].

Plaintiff provides no basis for its argument that Step [f] can precede Step [d]. It again relies on inapposite specification sections stating that the login process can happen at any time, or Figures 11 and 13 that depict the user interfaces for selecting location-based events and logging in,

respectively.  Br. at 11-12.  But nowhere do these figures or sections describe a different sequence, where the selection of location-based events of Figure 11 occurs before or after the login step of Figure 13.  Because the specification does not describe or suggest a reverse order of the claimed steps, the claim language (that Plaintiff ignores) controls and compels Defendants' construction.

Last, Plaintiff's argument that Steps [d] and [f] must merely "complete" before Steps [e] and [g], respectively, lacks legal support.  *See* § III.B.  Further, "user information" must be received at Step [d] before a location "associat[ed] with ***said user information***" can be provided to a server at Step [e].  And Step [g], "receiving a location-based event notification corresponding to ***said selected location-based event*,**"cannot begin until "a location-based event" is selected at Step [f].

### D.    '117 Patent, Claim 42

| Plaintiff's Proposal | Defendants' Proposal |
|---|---|
| Plain and ordinary meaning; no order required. | Steps [d]-[g] must be performed in order. |

Defendants' proposal follows the claim language, which dictates that Steps [d]-[g] be performed in the recited order.  Plaintiff's proposal, by contrast, ignores the clear antecedent basis in Steps [e], [f], and [g], showing that each step cannot begin until completion of the prior step.

Step [e] must follow completion of Step [d] because Step [d] recites "requesting a location of ***a second wireless device***" from a remote server, while Step [e] recites "displaying on said wireless telephone an option to request location access rights from ***said second wireless device*** after … determin[ing] that said wireless telephone does not have location access rights for ***said second wireless device***."  Beyond the antecedent basis for "second wireless device," this claimed sequence makes logical sense: first, a user requests the location of another "second wireless device," and second, after it's determined that the user has no location access rights to obtain that location, the user requests location access rights.  Figure 17 (annotated below) confirms that the location request of Step [d] in box 1702 (red outlined) is a first step before location access rights

are checked and requested at Step [e] in boxes 1711, 1721, 1703 (green outlined).

Similarly, Step [f], "transmitting a request to said server that said location access rights be assigned for said wireless telephone by said second wireless device," cannot begin and only makes sense after the "wireless telephone" determines at Step [e] that it "does not have location access rights for said second wireless device." *See* Fig. 17 at boxes 1711, 1721-22 (outlined in green). Permitting the reverse order is nonsensical, as it would mean a device could "request … that said location access rights be assigned" (in Step [f]) ***before*** even being presented with "an option to request location access rights" (in Step [e]).



FIG. 17

While Plaintiff does not address Step [g], that step must follow Step [f] because Step [g] expressly "depend[s] upon" location access rights requested in Step [f]. Step [g] recites "receiving said location of said second wireless device from said server ***dependent upon*** *said access rights*," where "said access rights" were requested in the prior Step [f]. These steps correspond to Figure 17 above, where a request for location access rights in boxes 1703, 1721 (outlined in green) precedes obtaining the location "according to access rights," at box 1705 (outlined in blue).

Plaintiff's argument that Step [d] can happen periodically or any time (Br. at 12-13) based on the specification is irrelevant to Step [d]'s timing relative to Step [e] or later steps. None of the cited passages describe the next Step [e] of "displaying on said wireless telephone an option to request location access rights from said second wireless device…," let alone that Step [e] could precede Step [d]. *See* Br. at 12 (citing '117 at 3:13-17, 7:9-12, 11:19-21). Plaintiff also argues

that location rights can be determined according to Step [e] at any time.  Br. at 13, citing '117 at 5:20-21.  But it omits the specification's explanation that this determination must precede another user's location being provided, consistent with Claim 42's recitation of determining location access rights in Step [e] before then sharing a location in Step [g].  '117 at 5:21-26.

### E.    '024 Patent, Claim 1

| Plaintiff's Proposal | Defendants' Proposal |
|---|---|
| Plain and ordinary meaning; to the extent any order is required, the system is capable of: [b] and [e] before [f]. | Revised: Steps [b-f] must be performed in order, except Step [d] need not precede Step [e].[2] Original: Steps [b]-[f] must be performed in order |

The parties agree that Steps [b] and [e] precede Step [f].  The dispute is limited to whether: (1) Step [b] precedes Step [c], and (2) Step [c] precedes Step [d].  Because Steps [c] and [d] each relies on a result or element of the prior step, each must be performed after the prior step completes.

Step [b] must precede Step [c] because the "*location* of a ***first wireless telephone***" must first be "obtain[ed]" at Step [b] before "a list of users for a profile associated with ***said first wireless telephone*** that are allowed to access ***said location***" can be changed at Step [c].  The "location" of a "first wireless telephone" must first be determined in Step [b] before other devices' rights to access that "said location" are granted at Step [c].  It is nonsensical to adjust access rights for a "location" that has not even been determined and therefore does not even exist.

Plaintiff does not address Steps [c]-[d], but Step [c] must complete before Step [d] can begin because Step [c] recites "changing … a list of users … that are allowed to access said location," while Step [d] then "transmit[s] said location to at least one of ***said users of said list of users***."  In other words, Step [c] is about giving access rights to a "location" to a "list of users" while Step [d] is about then sending "said location" to at least one of those users in the list who

---

[2] In the interest of minimizing disputes, Samsung no longer contends that Step [d] must precede Step [e].  But Step [e] must be performed after Step [b] because Step [e] relies on Step [b] for antecedent basis with respect to "said plurality of wireless telephones."

were given access in the prior Step [c]. Thus, until Step [c] is complete and access rights are given, users in the list cannot even access "said location" in Step [d]. Providing location access at Step [d], without first providing the requisite access rights at Step [c], would defy the only disclosed embodiments, where location access rights must be granted to other devices before location data is shared with them. *See* '024 at Fig. 17 (boxes 1703-1705, 1722).

Plaintiff's argument that Steps [b] and [c] can be performed at any time is the same as its flawed argument for Claim 42 of the '117 Patent. *See supra* § III.D; Br. at 15-16. As explained, none of the cited passages describe a reverse ordering with Step [c] before Step [b], or Step [d] before Step [c]. *See id*. And Plaintiff omits a passage explaining that location access rights must be provided (at Step [c]) before a location is shared or transmitted (at Step [d]). '024 at 5:21-26.

Finally, contrary to Plaintiff's argument (Br. at 15), Steps [b] and [e] must complete before Step [f] can begin. "[D]irectional information … representative of directions between ***said second location*** and ***said location***" cannot be provided at Step [f] until after those two input locations ("second location" and "location") are determined at Steps [e] and [b], respectively.

### F.    '024 Patent, Claim 24

| Plaintiff's Proposal | Defendants' Proposal |
|---|---|
| Plain and ordinary meaning; to the extent any order is required, the system is capable of: [c] before [d]. | Steps [b]-[f] must be performed in order. |

The parties agree that Steps [c] and [d] are performed in order. Plaintiff's brief challenges only whether Step [b] must precede each of Steps [c] and [d].

First, Step [c] follows Step [b] because of antecedent basis: Step [b] recites "receiving from ***a first wireless telephone*** a selection of one of a plurality of users," and Step [c] recites "receiving from ***said first wireless telephone*** information indicative of a login and a password." Further, Claim 24 recites the same process as '117 Patent, Claim 15, which expressly requires that

a user select another user as a "first manual input," before entering a login and password as a "second manual input." *See supra* § III.B.

Second, Step [d] must follow after Step [b] because Step [d] relies on the outcome of Step [b], namely a user selection. Step [d] derives antecedent basis from Step [b] by reciting "determining whether to allow access of location information … associated to ***said selected one of said*** plurality of users"—the "selection of one of said" users occurred in Step [b]. Step [d] thus cannot even begin until the "selection" of one user in Step [b] completes.

For similar reasons, Step [d] cannot begin until after Step [c] finishes. Step [d], which recites "identifying said user …. using … login and password" cannot begin until the "login" and "password" are received at the conclusion of Step [c].

Plaintiff's brief does not explain its disagreement with the order of other pairs of Steps [d]-[e] and Steps [e]-[f]. Addressing them here, Step [d] must be before Step [e] because the system must "identify[] said user of said first wireless telephone using … said login and password" at Step [d], before it can "determine[e] whether said user … has assigned location access rights to said one of said plurality of wireless telephones," at Step [e]. The specification confirms this sequence, where a user must be identified by login/password before access to that user's location can be shared with other users. *See* '024 at 10:17-20 ("By including a login/password scheme a user can be identified by a remote facility (e.g., a remote database) so that the user's location can be recorded/updated by multiple devices."). And Step [e] must complete before Step [f] begins because Step [f] relies on location access rights determined at Step [e] before "transmitting … said location information" that is the subject of those access rights at Step [f]. This follows the patent's Figure 17 flowchart, in which location access rights must first be determined (e.g., at boxes 1703, 1721) before location data is provided (at box 1706).

Plaintiff's argument against any order of steps, aside from Steps [c] and [d], relies on

specification disclosures that individual steps, such as login and changing location access rights, can happen at any time. Br. at 17-18. As explained above, none of these disclosures describe the timing of Steps [c], [e], or [d] in relation to each other or a reverse order. *See supra* § III.B.

### G. '024 Patent, Claim 45

| Plaintiff's Proposal | Defendants' Proposal |
|---|---|
| Plain and ordinary meaning; to the extent any order is required, the system is capable of: [c] before [d]. | Steps [b]-[e] must be performed in order, while steps [f] and [g] can be in any order as between each other, but both must occur after steps [b]-[e]. |

The parties agree that Steps [c] and [d] are performed in order, and Plaintiff only explains its disagreement with (1) Step [b] preceding Step [c], and (2) Step [c] preceding Step [e]. Br. at 18-19. Each of these pairs of steps are addressed in turn below.

First, Step [b] must complete before Step [c] begins because Step [b] recites the threshold step of "request[ing] … a location of said first wireless device" and Step [c] "determine[s] that said second wireless device does not have location access rights." It would be wasteful and unnecessary to determine access rights to a location before such location has even been requested. The specification confirms this understanding. Figure 2 shows that a first "[s]tep 202 initiates when a user requests the location of another user's cell phone," and then "[s]tep 206 evaluates if the user initiating the location request has the rights to access the location." '024 at 4:54-57. Plaintiff counters with specification disclosures explaining how locations can be requested periodically or access rights can be changed at any time. Br. at 18-19. But these disclosures just describe Step [b] alone, not whether a reverse order with Step [b] after Step [c] is possible.

Second, Step [e], a second device "receiving … an assignment of said location access rights" cannot logically begin until the second device determines that it lacks location access rights to begin with, in prior Step [c]. Plaintiff's contrary proposal, allowing a reversal of steps [e] and [c], is nonsensical because it would mean the second device "receiving … said location access

13

rights" first in Step [e], and then, later determining that the second device "does not have location access rights" in Step [c].  Plaintiff's proposal is also contrary to the specification, which confirms the existence of access rights are determined first, before sending/granting those access rights.  *See* '024 at 12:30-40 ("[S]tep 1711 asks the requester if the requester would like to request access rights. … Step 1722 follows and if access rights were given then step 1705 may be initiated.").

While not addressed in Plaintiff's brief, Steps [f] and [g] must also follow Step [e].  Step [f], storing "said location access rights," and Step [g], providing the location "to said second wireless device dependent upon said location access rights," cannot begin until after "an assignment of said location access rights" is received at Step [e].  The specification confirms this order by describing assignment of access rights at box 1722, followed by sharing of location information at box 1706.  '024 at Fig. 17.  Plaintiff's proposal contradicts the claims and specification by allowing a location to be shared (at Step [g]) and access rights to that location to be stored (at Step [f]) before those access rights even exist and have been received (at Step [e]).

Finally, Plaintiff's argument that Step [c] can be performed in parallel to Step [d] defies the claim language.  Step [d] expressly recites that it ***cannot begin*** until "***after***" Step [c] is completed:  Step [c] recites "determining that said wireless device does not have said location access rights" and Step [d] recites that it occurs "***after*** determining that said second wireless device does not have said location access rights … ."  Addressing similar claim language in *Oak Tech., Inc. v. ITC*, where the claim recited "a cyclic redundancy checker for detecting errors in said assembled data ***after*** correction of said data by said correction circuitry," the Federal Circuit held that sequential ordering was required because "[t]he sequential limitation is imposed by the claim language itself, and the written description simply confirms this understanding."  248 F.3d 1316, 1328-29 (Fed. Cir. 2001).  The specification here also confirms that Step [d] starts after Step [c] finishes.  In Figure 17, "Step 1712 informs the requester that the requester does not have access

14

rights to obtain the location of a user/device" (i.e., Step [c]) and "Step 1711 may follow and provide an opportunity for the requester to obtain the access rights" (i.e., Step [d]). '024 at 12:30-34.

### H.    '283 Patent, Claim 1

| Plaintiff's Proposal | Defendants' Proposal |
|---|---|
| Plain and ordinary meaning; to the extent any order is required: [a] before [b]; [b] before [d]; [d] before [e]; [e] before [f]; [c] before [d].  No other order required. | Steps [a]-[f] must be performed in order, except [b] and [c] can be in either order as between each other, but both must occur after steps [a] and before [d]. |

Plaintiff concedes that five of the six steps must be performed in order.  The only dispute is the relative order between Steps [a] and [c]: Defendants contend that [c] must follow [a], whereas Plaintiff argues that [c] can precede [a].  Defendants' construction is supported by the claim language and specification; Plaintiff's position contradicts the logic and grammar of the claim.

First, Defendants' construction is supported by the claim language.  Step [c]'s recitation of "said first wireless telephonic device" receives its antecedent basis from Step [a], which demonstrates that Step [c] follows Steps [a].  Moreover, Plaintiff's admission that Steps [a]-[b] and [c]-[f] must be performed in sequence demonstrates that it would not make sense to "allow that one step to be performed out of order." *Hytera*, 841 F. App'x at 218.

Second, logic dictates that Steps [b] and [c] must occur between Steps [a] and [d]. *Altiris*, 318 F.3d at 1369.  Step [a] provides user-selectable options to a user, including displaying "a plurality of [other] users" whose locations are stored on a server.  Step [d] then determines whether the requesting user has the right to access another user's location based on the requester's inputs.  Steps [b] and [c] provide the requester's "[first/second] manual input[s]" used in the "determining" Step [d], including the selection of another user (Step [b]) and the requester's login/password (Step [c]).  Logically, the two user input steps should occur after the device has displayed options to the user and before the device determines whether the user's selection is permissible.

Third, Defendants' construction is consistent with the specification. The only explicit description of the claimed sequence confirms Defendants' construction: "Thus, a requesting user only has to contact the remote database [i.e., Steps [a] and [b], which involves displaying a list of other users whose locations are available on a server (*see id*. at 4:58-61) and then selecting one of these other users], have his/her identity recognized [i.e., Step [c]], have his/her access rights for the requested user location determined [i.e., Step [d]], and, if the requesting user has the correct access rights, be provided with the requested user's location [i.e., Step [e]]." '283 at 5:17–21.

Fourth, Defendants' construction is also consistent with the patent figures. Each of the flow diagrams in Figures 2 and 17 show the user making a request (e.g., Fig. 2 step 202 or Fig. 17 step 1702) *before* the system checks the user's access right to the requested information (e.g., Fig. 2 step 206 or Fig. 17 step 1703). This step of checking access—which necessarily includes inputting the user's login/password (*id*. at 2:63–3:1)—follows the user making a request to the server. In contrast, Plaintiff's construction would place the step of inputting the user's login/password (Step [c]) before displaying options to the user (Step [a]), and before the user making a selection (Step [b]). This is inconsistent with the embodiments shown in the figures.

Plaintiff's construction lacks intrinsic support and is refuted by its own citations. Contrary to its assertion (Br. at 4), the specification at 3:5-7 does not require Step [c] to occur before Step [a]. At best, this sentence suggests that the login process precedes the step of determining access rights. But neither party disputes that Step [c] must occur before Step [d]. Similarly, the specification at 3:26-30, 9:46-47, 9:64-67 and Figures 13-14 do not implicate the sequence of steps claimed by Claim 1; they only describe the utility of login and password information. None of Plaintiff's cited passages suggests that a user should enter his or her login/password *before* the location access options are even displayed.

## I.     '575 Patent, Claim 30

| Plaintiff's Proposal | Defendants' Proposal |
|---|---|
| Plain and ordinary meaning; to the extent any order is required: [a] before [c]. No other order required. | <u>Revised</u>: Steps [a]-[e] must be performed in order, except Step [c] need not precede Step [d].[3]<br><u>Original</u>: Steps [a]-[e] must be performed in order |

Defendants contend that all steps must be in order; Plaintiff argues that only two steps should be in order. Defendants' position is supported by the claim language and intrinsic evidence.

First, the claim language supports Defendants' construction. Step [a] obtains and defines the antecedent basis for "a location" of the "first wireless telephone." Step [b] necessarily follows Step [a] because it sets the access right to "said location" obtained in Step [a], and relies on the antecedent basis defined in Step [a]. Logically, Step [b] must follow Step [a] because one cannot "chang[e]" the access rights to data on a server if the server has not yet received that data. Thus, the server must first obtain data for "a location" (Step [a]) before "changing" the access rights to "said location" (Step [b]). Likewise, Step [c] logically follows [a] and [b] because the server must have the data and then set the appropriate access rights before transmitting the data. Moreover, Step [c] relies on Step [b]'s antecedent basis for "said remote server." The step of setting access rights (Step [b]) would be useless if the data is already transmitted to other users (Step [c]). Finally, Step [e] must follow Steps [c] and [d]; it would be impossible to provide direction between the first and second locations without having both locations.

The specification further confirms Defendants' construction. Figure 17 shows that location request step 1702 precedes the process for requesting and setting access rights 1721–1722 to the location data, which in turn precedes the transmission of location data 1705. *See* '575 at 11:33–37, 11:62–64, 12:9–21. This confirms that one must first obtain location data before setting access

---

[3] In the interest of minimizing disputes, Samsung no longer contends that Step [c] must precede Step [d]. But Step [d] must be performed after Step [b] because Step [d] relies on Step [b] for antecedent basis with respect to "said plurality of wireless telephones."

rights to that data and must set access rights before transmitting the data.

Plaintiff's arguments and citations to the specification are readily distinguishable. First, Plaintiff's argument that Step [d] can precede Step [a] (Br. at 6) ignores that "each step of the method provides an antecedent basis for the steps that follow." *Hytera*, 841 F. App'x at 218. Second, as discussed above for Claim 1 of the '117 Patent, Plaintiff's reliance on *Ancora* is misplaced. Rather, as is similar here, "when the current step of a method claim refers to a previous step using the definite article 'the,' the claim language indicates that the previous step occurs sequentially before the current step." *Medtronic*, 2024 WL 1208642, at *5.

## II.   DISPUTED CLAIM CONSTRUCTIONS

### A.   "list of users" ('117, Cl. 1; '024, Cl. 1; '575, Cl. 30)

| Plaintiff's Proposal | Defendants' Proposal |
|---|---|
| Plain and ordinary meaning | "series of two or more other users" |

The parties' dispute is over the numerosity of a "list of users": whether it requires two or more other users (as Defendants propose) or whether it could be just a single user or even zero users (as Plaintiff argues). The claim language, the applicant's prosecution statements, and the specification all confirm that a "list of users" refers to two or more other users.

While Plaintiff proposes plain meaning and no construction, its brief's arguments suggest an interpretation that runs contrary to the term's ordinary, plural meaning and other the intrinsic evidence. Thus, contrary to Plaintiff's contention that the term requires no construction, the Court should construe "list of users" because the parties have a fundamental dispute over the numerosity of "list of users" that is unresolved by the plain and ordinary meaning. *See O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1361 (Fed. Cir. 2008). The Court should thus construe this term to avoid letting the jury determine its numerosity. *Id.* at 1362.

On the merits, the claim term "list of users" itself uses the plural word "user*s*," which

means that there is more than one user. *See Apple Inc. v. MPH Techs. Oy*, 28 F.4th 254, 261-262 (Fed. Cir. 2022) ("In accordance with common English usage, we presume a plural term refers to two or more items."). Defendants have also proposed that the "list" refer to "two or more **other** users" because the surrounding claim language reflects that the "list of users" are users **other** than the user of the "first wireless telephone" that makes changes to the list of users. *E.g.*, '024, Cl. 1 ("changing, at the direction of said first wireless telephone, a **list of users**.").

Plaintiff's position that "list of users" could encompass a list of one or zero contradicts its own statements during prosecution. To distinguish prior art that covered "friend alerts for individual names," Plaintiff argued that "[a]n individual name is not a list." Ex. B, '117 FH, 12/29/2014 Applicant remarks at 12. Plaintiff later confirmed its position when, in responding to the Examiner's statement that "[a]n individual name is a list, it's a list of one," Plaintiff argued that "[t]he Examiner's argument is incorrect. **A list is not one. A list is a series of more than one**. There is no list of one – only one." Ex. C, '117 FH, 10/8/2015 Applicant remarks at 13. By arguing that "[t]here is no list of one – only one," Plaintiff unambiguously disclaimed a "list of one" from the meaning of a "list of users." *See Droplets, Inc. v. eBay, Inc.*, No. 2:11-cv-401-JRG-RSP, 2014 WL 4217376, at *26-27 (E.D. Tex. 2014) (finding disclaimer of bookmarks and URLs from the claimed "interactive link" term in view of statement during prosecution history that "[m]anual URL address inputs, bookmarks ... are *not the same as an interactive link*").

Further, every example of the "list of users" in the patent specification shows two or more users. For instance, Figure 9 to the right shows a list of seven users for whom "[a] user may give or modify access rights." '117 at 9:12-14.

Plaintiff's arguments are without merit. First, it argues that when "list of users" is first populated, the list started out empty or with only one user.



FIG. 9    900

Br. at 20.  But this situation bears no relation to the claims, which assume the "list of users" has already been created, and the user is now changing the existing list of users.  *E.g.*, '024, Cl. 1 ("changing, at the direction of said first wireless telephone, a ***list of users***").  Second, Plaintiff's contention that the specification describes adding users "individually" to the list is irrelevant.  Br. at 20 (citing '117 at 3:23-27).  The ability to change the list of users by adding or removing one user at a time does not negate that the claimed "list of users" as a whole has two or more users.

B.    **"region-based" ('117, Cl. 29; '039, Cl. 1)**

| Plaintiff's Proposal | Defendants' Proposal |
|---|---|
| Plain and ordinary meaning | "based on a wireless [telephone ('117, Cl. 29) / device ('039, Cl. 1)] entering or leaving a user-specified geographic area" |

The '117 and '039 Patents' claims recite a user of a device "selecting" and "receiving" a "location-based event" notification, of which there are multiple types including: (1) a "region-based" event and (2) a "distance-based" event.  '117, Claim 29.  These terms have different meanings because the claims recite the terms as two different "types of . . . events."  This section addresses the term "region-based," and the next section covers the term "distance-based."

The parties have two disputes.  First, the parties disagree about whether the "region" or "geographic area" that is the subject of the event must be specified by a user (i.e., "user-specified") as opposed to by a device's programming.  The claim language and specification confirm that the "region" is user-specified.  Second, the parties dispute the scope of the term "region."  Although the parties agree that "regions" are not limited to a prescriptive list of areas (e.g., cities or states), the parties disagree about whether a "region" can be specified by a distance from a user.

Claim construction is needed because the plain meaning of "region-based" cannot resolve the parties' two disputes regarding the scope of the term.  *See O2 Micro*, 521 F.3d at 1361.

*1.    The "region" or "geographical area" is user-specified*

The claim language and specification both demonstrate that the applicable "regions" for a

"region-based" event must be user-specified or selected. Claim 29 of the '117 Patent explicitly recites a user "**selecting** a location-based event … wherein said location-based event is operable to **be manually pre-selected from a list** of at least three types of location-based event … wherein a first one of said at least three types of location-based events is, at least in part, **region-based**." The claim's use of the phrases "selecting a location-based event" and "manually pre-selected from a list" signals that the user must affirmatively select, and thereby "specify," the region-based event.

The specification confirms that regions are selected by a user. In Figure 11, the user can select a region-based event for when Susan Pracht "Enters New York City." Thus, the region of "New York City" is user-specified. There is no contrary embodiment for a "region" that is not "selected" by a user, such as a default region or region selected autonomously by the user's device. Because, consistent with the claims, the only relevant embodiment both require a user-specified region, the court should adopt Defendants' construction. *See Ruckus Wireless, Inc. v. Innovative Wireless Sols., LLC*, 824 F.3d 999, 1003-04 (Fed. Cir. 2016) (limiting "communication path" to wired communications (and to exclude wireless communications) because "every embodiment described in the specification utilizes a telephone wire").



Plaintiff's only response is that dependent Claim 35 recites "programming … capable of specifying said region," and Plaintiff argues this means the device's "programming," rather than the device's user, specifies the region. Br. at 21-22. This is a red herring. A POSITA would have understood that while the device's software "programming" may specify the region, it only does so in response to a user input (i.e., user selecting a region). The device's "programming" does not autonomously specify a region without user input. Indeed, the '117 Patent's claims recite many steps performed by the "programming," such as receiving a "login" or "password" (in Claim

29) or "instruct[ing]" a "remote system" to permit access for either "indefinite" or "specific" periods of time (in Claims 32-33). These "programming" steps are all in response to user input, such as entering a login or password, or the length of access. The same is true of the claimed step of "selecting a location-based event"; the "programming" does this "selecting" in response to the user's selection of whether the "event" is "region-based" and the applicable "region."

### 2.    *"region" is not defined by distance from a user*

The parties agree that a "region" is not limited to the specific types of regions described in the specification; but the term is not limitless, as Plaintiff suggests. In particular, a "region" (for a "region-based" event) cannot mean the same thing as "distance" (for a "distance-based" event) such that a user can specify a "region" by specifying a "distance" from a given point. *See, e.g.,* '117 at Fig. 11 (showing different options for distance- and region-based events). Where "different words … appear in the same claim," they "are presumed to have different meanings." *CardWare Inc. v. Samsung Elecs. Co.*, No. 2023 WL 5434763, at *13 (E.D. Tex. Aug. 23, 2023). Thus, "region-based" and "distance-based," which appear together in the same claims, are presumed to have different meanings. *E.g.*, '117 at Claim 29 ("wherein a first one of said at least three types of location-based events is…***region-based***, and a second one of said at least three types of location-based events is… ***distance-based***"). To distinguish the two kinds of events, "region" should be construed to mean a "geographic area" to distinguish distance-based events.

### C.    "distance-based" ('117, Cl. 29; '039, Cl. 1)

| Plaintiff's Proposal | Defendants' Proposal |
| --- | --- |
| Plain and ordinary meaning | "based on a wireless [telephone / device] being within a user-specified distance of another wireless [telephone / device]'s current location" |

The parties have two disputes about the term "distance-based." First, the parties disagree about whether the "distance" that is the subject of the "distance-based" event notifications must be "user-specified." The claim language and specification all confirm that "distance-based" events

are defined by distances specified by the user. Second, the parties disagree about the correct reference point for measuring the "distance." The specification explains that distances are measured from another user device's "current location," rather than any arbitrary point or address.

### 1.    *"distances" must be user-specified*

Plaintiff's position that a "distance" does not need to be "user-specified" contradicts the intrinsic evidence. Claim 29 of the '117 Patent, for example, explicitly recites "***selecting*** a location-based event … wherein said location-based event is operable to ***be manually pre-selected from a list*** of at least three types of location-based event … a second one of said at least three types of location-based events is, at least in part, ***distance-based***." The claims thus require that the user "select" the distance-based event.

The specification elaborates by showing that "distance-based" events are selected or specified based on a distance. In Figure 11 (annotated), the user has the option to select an alert for when another user, Susan Pracht, "Is Within 1 Mile." By selecting this event, the user specifies the distance (i.e., "1 Mile") of the distance-based event.



FIG. 11

Figure 11 is the only embodiment showing how a "distance-based" event is created and it's through user selection. By contrast, the specification never describes default distances or other distances determined autonomously by a device, without user input. Further, a default or device-selected distance would not make sense from a user's perspective. For example, if the default distance were 1 mile, it may result in alerts that are not useful for users who require more precision, such as users meeting at a restaurant. Accordingly, the specification requires users to select the desired distance to trigger a "distance-based" event. '117 at 9:27-36, 8:57-9:2; Figs. 7, 11.

23

### 2.    *"distances" must be measured from a second user's current location*

Plaintiff argues that "distance" is not necessarily measured with respect to another user's current location, and implies that it could be measured with respect to any reference point or location. Br. at 23. Plaintiff's interpretation is incorrect. Every example of a "distance-based" event in the specification measures distance based on the current location of another device. *See, e.g.*, '117 at Fig. 11 (measuring distance from location of another user Susan Pracht's device).

Defendants' interpretation also aligns with the purpose of distance-based events. *See Parallel Networks, LLC v. Abercrombie & Fitch Co.*, 704 F.3d 958, 967-68 (Fed. Cir. 2013) (construing a term to "facilitate[] the invention's key goal"). The specification explains how distance-based events facilitate interactions and meetings between users who come within a certain distance or proximity of each other. *See* '117 at 5:64-6:15 ("[A] unique dating/matching service could be embodied. … When a user comes within a certain distance of a user (determined by comparing locations of a user) … the user may be alerted of the proximity of a matching user" and "request[] access to a form of communication."). In fact, Plaintiff's only specification citation is to this "matching service" embodiment that measures distance between two users. *See* Br. at 23.

Plaintiff disputes any limitation on the reference point from which the "distance" is measured, meaning it could be any point, area, or address. This unbounded interpretation renders "distance-based" and "region-based" events indistinguishable. As explained above, "region-based" and "distance-based" are two distinct "types of … events" presumed to have different meanings. Yet, under Plaintiff's construction, both distance and region-based events can be triggered when a user comes within some distance of an address. To illustrate, under Plaintiff's interpretation, it is unclear whether Figure 11's event "Enters New York City" is a region-based or distance-based event. To preserve the distinction between the two terms, "distance-based" must be construed such that the "distance" is measured from the current location of another user.

### D.    "location information" ('283, Cl. 1)

| Plaintiff's Proposal | Defendants' Proposal |
|---|---|
| Plain and ordinary meaning, which is "information relating to a location of a user's device" | Revised: Information indicating geographic position, including the name of a location<br>Original: Plain and ordinary meaning, "geographic position" |

Defendants construe the term based on its plain meaning.  Plaintiff, on the other hand, repeats the term's words and add new words to alter claim scope.

Defendants' construction reflects the term's plain meaning in view of the patent specification and claim language.  The specification uses "location information" to describe geographic position, such as "proximities, states, and countries" or "the city, state, or country." '283 at Abstract, 4:62-5:6, 7:21-40, 11:64-12:4.  Moreover, the specification and dependent claims describe using "positioning satellites" to determine "location information," confirming that the term refers to geographic position.  *Id.* at 4:24-29, 4:34-37; Claims 7, 9, and 15.  Plaintiff's criticism of Defendants' construction relies on a strawman argument.  The name of a location— whether a city, a national monument, or a mall—is a type of geographic position.

Despite identifying this term for construction, Plaintiff's construction fails to define what "location information" means, but instead adds new words to the term—"***information*** relating to a ***location*** of a user's device."  Plaintiff attempts to broaden the claim to include not just a device's location, but other information that could be ***related*** to obtaining a device's location, such as displaying a menu option for obtaining a device's location.  But the specification never uses "location information" to describe ancillary information that does not indicate geographic position.

### E.    "directional information" ('575, Cl. 30)

| Plaintiff's Proposal | Defendants' Proposal |
|---|---|
| Plain and ordinary meaning, which is "information relating to directions" | Revised: Information indicating orientation or route of movement relative to a reference point<br>Original: Plain and ordinary meaning, which is "orientation or route of movement relative to a reference point" |

The parties disagree whether the term refers to information indicating directions (Defendants' position) or further includes user interface displays that merely *relate* to *obtaining* directions (Plaintiff's position). Defendants' construction reflects the proper scope of the term whereas Plaintiff attempts to expand claim scope in a manner contradictory to the claim language.

Defendants' construction reflects the term's plain meaning in view of the specification. The specification explains that "directional information" may include information from "a digital compass 632" that provides the orientation of a user with respect to a reference point, such as the user's cell phone. '575 at 7:41-50. It also explains that the term may encompass "the distance between [two] locations" and "the shortest path between" them. *Id.* at 7:62-8:15. Accordingly, the plain meaning of the term is "orientation or route of movement relative to a reference point."

Plaintiff does not dispute that "directional information" encompasses at least "orientation or route of movement relative to a reference point" but argues that the term encompasses other information *relating* to *obtaining* directions, such as the user interface display of a user-selectable option to obtain directions. *See* Br. at 25-26 (citing '575 at 8:44-54 and Fig. 7). This is improper. The '575 Patent never describes a menu option as "directional information," but uses different language—such as "option list"—to describe options for requesting "directions to the requested user's location from the requesting user's location." '575 at 8:44-54. The patent never equates "directional information" with a menu option for requesting directions. *See id.*

Plaintiff's position that a menu option is "directional information" also contradicts the surrounding claim language. Claim 30 of the '575 Patent specifies that "directional information" must be "representative of directions between said location and said second location." Plaintiff's example of "a displayed option to obtain 'Directions'" (Br. at 26) is not representative of directions between two locations and thus could not be correctly within the scope of this term.

## III.    DISPUTED INDEFINITENESS TERMS

### A.    "said wireless telephonic device" ('218, Cl. 11)

| Plaintiff's Proposal | Defendants' Proposal |
|---|---|
| "said wireless telephonic device" refers to "a wireless device" recited earlier in the claim | Indefinite |

Claim 11 is indefinite because there is no antecedent basis for the phrase "said wireless telephonic device." *Halliburton Energy Servs., Inc. v. M-I LLC*, 514 F.3d 1244, 1249 (Fed. Cir. 2008) (a claim is "indefinite if a term does not have proper antecedent basis"). Claim 11 recites at least three other different devices—"a wireless device," "a first wireless device," and "a second wireless device"—any of which could give antecedent basis to "said wireless telephonic device." Claim 11 is reproduced in relevant part below, with each "device" highlighted in a different color:

> a wireless device operable to provide a display screen after a request from said wireless telephonic device for access to a first location of a first wireless device,
>
> wherein said display screen includes a map from the perspective of said wireless device, …
>
>> said display screen includes indicia on said map representative of a second user according to a second location obtained from a second wireless device, and
>>
>> said display screen includes a distance from said wireless telephonic device to said first location, …
>>
>> said display screen includes a travel time based on at least the first location and the location of said wireless telephonic device.

Plaintiff agrees with Defendants that "a wireless device," "a first wireless device," and "a second wireless device" are three distinct devices. Dkt. 81-1. And it concedes that "said telephonic device" does not refer to either the "first wireless device" or "second wireless device." Br. at 26. Plaintiff instead argues that "said wireless telephonic device" refers to "a wireless device," merely because "a wireless device" appears earlier in the claim. *Id.*

Plaintiff's reasoning is as wrong, as it is perfunctory. Claim 11 distinguishes between "said

27

wireless telephonic device" and "a wireless device" throughout, referring to "wireless device" and "said wireless device" twice, and then "said wireless telephonic device" three times. Ex. D (Bederson Decl.) ¶ 49. This repeated use of different phrases to refer to the two devices signifies that they are different. *See Seachange Int'l, Inc. v. C-Cor, Inc.*, 413 F.3d 1361, 1368 (Fed. Cir. 2005) (holding different terms presumptively have different meanings).

The distinction between "wireless telephonic device" and "wireless device" is reinforced by Claim 11's recitation of "a ***wireless device*** operable to <u>provide</u> a display screen after a request <u>from</u> ***said wireless telephonic device*** for access to a first location of a first wireless device." A single device would not "provide" a display in response to a request "from" itself (i.e., the same device). Ex. D ¶ 49. Rather, this language means that "said wireless telephonic device" issues a request and this request results in a separate, subsequent action of providing a "display screen" on another device, i.e., the "wireless device." *Id*.

The specification does not clarify what is meant by the "wireless telephonic device" because it never uses that phrase. The prosecution history also fails to clarify, while contradicting Plaintiff's position that the "said wireless telephonic device" refers to the "wireless device." As originally filed, Claim 11 had no antecedent basis problem; it recited "a wireless telephonic device" followed by "said wireless telephonic device," along with a "first wireless device" and "second wireless device." Ex. E (11/29/2019 Suppl. Reply to Office Action) at 3-4. But Plaintiff amended the claim to remove the antecedent basis for "said wireless telephonic device," intentionally replacing "a wireless telephonic device" with "a wireless device." *Id*. Nearly a year later, Plaintiff amended the claim again to recite that the map on the claimed display screen is "from the perspective of said ***wireless device***." Ex. F (10/1/2020 Reply to Office Action) at 3.

Thus, Plaintiff twice amended the claims to add a recitation of a "wireless device," while leaving unchanged the multiple recitations of "said wireless telephonic device." *See id*. These

two amendments—both adding "wireless device" while not removing or changing the original recitations of "wireless telephonic device"—demonstrate that the "wireless device" was intended to be separate and distinct from "said wireless telephonic device." *See Ajinomoto Co. v. ITC*, 932 F.3d 1342, 1351 (Fed. Cir. 2019) ("Just as when different words are used in separate claims, they are presumed to have different meanings…when a word is changed during prosecution, the change tends to suggest that the new word differs in meaning in some way from the original word.").

These facts are analogous to those in *CardWare*, where this Court found the term "the payment information" indefinite because it was unclear whether it found antecedent basis in (1) "the user provided payment information" or (2) "a static device account number payment information." 2023 WL 5434763, at *10. This Court concluded that because "the claim contains no omnibus recitation of 'payment information' … the presence of multiple instances of other 'payment information' renders the claim not reasonably clear." *Id*. Here, Claim 11 is even more ambiguous because it contains no prior recitation of "wireless telephonic device."

The facts here are also comparable to *Bushnell*, where the claim recited three types of IP addresses but none provided antecedent basis for "said different IP address." *Bushnell Hawthorne, LLC v. Cisco Sys., Inc.*, 813 F. App'x 522, 526-27 (Fed. Cir. 2020). The court found "said different IP address" indefinite because each type of IP address was presumed to be different, and a POSITA "could not, with reasonable certainty, discern the meaning of [said different IP address]." *Id*. Similarly, in Claim 11, "[t]he lack of antecedent basis [for 'said wireless telephonic device'] signals a potential indefiniteness problem" and the broader context of the claims "only compounds the problem." *Id*. With multiple possibilities, a POSITA "is left to wonder which of the different [wireless devices] is 'said' different one." *Id.*; Ex. D ¶¶ 44-58.

By contrast, Plaintiff's sole cited case, *MCOM IP, LLC v. Woodforest Nat'l Bank & Inetco Sys., Ltd.*, 2022 WL 1394551, at *5 (W.D. Tex. May 3, 2022), is inapposite. Br. at 27. The court

in *MCOM* found that, despite lacking antecedent basis, "said active session" was not indefinite because of extensive context about its meaning found in the remainder of the claim, the dependent claims, and the specification. *Id.* at *5-7. Here, however: the remainder of Claim 11 adds confusion, not clarity, by referring to multiple other "devices"; the specification does not even use the term "wireless telephonic device"; and the file history refutes Plaintiff's contention that "said wireless telephonic device" refers back to "a wireless device." The lack of antecedent basis for "said wireless telephonic device" thus renders Claim 11 indefinite.

**B.**    **"said device includes motion sensing operable to distinguish between a plurality of different types of motion" ('633, Cl. 1)**

| Plaintiff's Proposal | Defendants' Proposal |
|---|---|
| Plain and ordinary meaning, which is "the device includes control circuitry configured to recognize or show a difference between different types of motion" | Indefinite |

This term is indefinite for pure functional claiming. Plaintiff concedes that the term recites a function—a "motion sensing capability" (Br. at 27-29)—but attempts to salvage the claim by replacing its functional language with an inapplicable structure from the specification.

### 1.    *"the device includes motion sensing …" claims pure function*

"[A] claim limitation … defined in purely functional terms" is indefinite when it fails "to provide a clear-cut indication of the scope of subject matter embraced by the claim." *Halliburton*, 514 F.3d at 1255. In *Halliburton*, the Federal Circuit found "fragile gel" to be indefinite because the term is defined "by what it does rather than what it is," and the patent fails to provide sufficient context to define its scope. *Id.* Here, the "motion sensing" term is indefinite for the same reason.

First, "the device includes motion sensing operable to …" recites only function: the term defines the limitation only by what it does—sensing motion—rather than what it is. *See* Ex. D ¶¶ 68, 70. Using purely functional language, the claim term attempts to capture anything that performs the claimed function. Despite receiving Defendants' expert declaration weeks before its

Opening Brief, Plaintiff provides no rebuttal to Defendants' expert testimony. To the contrary, Plaintiff acknowledges the functional nature of this claim term by repeatedly describing the term as requiring a "motion sensing **capability**." Br. at 27-29.

Second, the specification fails to provide sufficient context to define the scope of the functional limitation. Plaintiff admits that "[i]n Claim 1, the inventor expressly chose to locate the motion sensing capability in the **same** device that provides the notification signals to a user ...." Ex. H (IPR2024-01472, POPR) at 11. But the specification does not anywhere describe the same device sensing motion and providing notifications. *See* Ex. D ¶¶ 71-72. The '633 Patent addresses the problem that a cell phone user may not have the phone in close proximity to perceive its ringing or vibration. *See* '633 at 1:18-38. The patent describes attaching to the phone an "autonomous notification sensing device 350." *Id.* at 4:39-44, 4:49-67. This sensing device attached to the phone includes sensors, such as "vibration sensor 352," "light sensor 353," and "sound sensor 354," to detect an incoming call. *Id.* at 5:10-39, Fig. 3. And the "autonomous device 350" communicates with a "remote notification device 230" (also numbered 330) to be worn by the user for notifying the user of an incoming call. *Id.* at 4:13-16. In one embodiment, the "notification device 330" is in the form of a "watch." *Id.*; Fig. 2.



FIG. 3

Stated more simply, the crux of the alleged invention is to have separate sensing and notification devices—a sensing device affixed directly on a phone and a notification device (e.g., watch) worn by the user—such that the user may be notified of a call even if the phone is too far for the user to perceive its ringing or vibration. *Id.*, 4:16-64; Figs. 2-3. The '633 Patent does not describe any "watch"—or any other "notification device" 230/330—as performing motion sensing. *See* Ex. D ¶ 71. Rather, including motion sensing in a "notification device" is contrary

to the goal of the alleged invention because the patent's objective is to affix the sensing device directly on the phone to ensure detection of a call even when the phone is away from the user. '633 at 4:36-48; Fig. 3.  The patent does not provide any reason or purpose to include "motion sensing" in the "notification device 330," such as a watch.  *See* Ex. D ¶ 72.  And it does not provide any guidance or example of how a watch would perform "motion sensing" for detecting an incoming call on the cellular phone.  *Id.*  Thus, a POSITA could not determine what "motion sensing" to include in a "watch" as required by Claim 1.  *Id.*  Accordingly, this functional term is indefinite because it "fail[s] to inform, with reasonable certainty, those skilled in the art about the scope of the invention."  *Nautilus, Inc. v. Biosig Instruments, Inc*., 572 U.S. 898, 898 (2014).

### 2.    *Plaintiff's construction attempts to improperly import a structure*

Drafting a claim limitation using "purely functional language" is impermissible unless the limitation is in "means-plus-function" form.  *Greenberg v. Ethicon Endo-Surgery, Inc.*, 91 F.3d 1580, 1582 (Fed. Cir. 1996) (explaining history of 35 U.S.C. § 112, ¶ 6).  Neither party contends that the "motion sensing" term is governed by § 112, ¶ 6.  Nevertheless, Plaintiff attempts to replace the "motion sensing" function with a "control circuitry" structure from the specification. This proposed construction violates basic rules of claim construction and lacks factual support.

First, Plaintiff's construction is legally wrong because it "import[s] a limitation from [the] written description."  *Playtex Prods., Inc. v. Procter & Gamble Co*., 400 F.3d 901, 906 (Fed. Cir. 2005).  Claim 1 does not recite "control circuitry" and the specification describes it as an optional component.  '633 at 5:16-17.  Moreover, dependent Claims 8 and 9 each requires the device to further comprise "control circuitry," confirming that independent Claim 1 does not recite this limitation.  *See Wasica Fin. GmbH v. Cont'l Auto. Sys*., 853 F.3d 1272, 1288 (Fed. Cir. 2017) (construction that renders claim language "void, meaningless, or superfluous" is "highly disfavored").  The PTAB has already rejected Plaintiff's construction by finding that "claim 1 does

not recite 'control circuitry' and we find no basis for reading 'control circuitry' into claim 1." Ex. G (IPR2024-01472, Inst. Dec.) at 22-23. In effect, Plaintiff treats the term as a means-plus-function limitation by mapping the claimed function to some structure from the specification. But § 112, ¶ 6 applies only when the claim recites a "nonce word" as a placeholder for structure. *Williamson v. Citrix Online, LLC*, 792 F.3d 1339, 1350 (Fed. Circ. 2015). Here, the claim term contains no placeholder and neither party contends that the term is governed by § 112, ¶ 6.

Second, Plaintiff's construction is factually wrong because "control circuitry" cannot perform the function of *sensing* motion. The unrebutted expert testimony from Defendants' expert explains that "[a] POSITA would have understood that 'control circuitry' cannot perform the function of 'motion sensing.'" Ex. D ¶ 73. Plaintiff relies on the specification stating that "control circuity" may "be able to *distinguish* ambient motion … from a vibrating cell-phone motion." Br. at 29 (citing '633 at 5:16-23). But *distinguishing* two types of motion is not the same as *sensing* motion. Indeed, the patent differentiates between sensors—always as part of the "autonomous device 350"—and "control circuitry" used to control the sensors. '633 at 5:10-26; Fig. 4. The "control circuitry" cannot sense motion, but must instead rely on another component for that function. *Id*. at 2:37-45 (teaching that "a sensor may be attached (e.g., by velcroed) to a cellular phone" and that the "vibrational sensor may be coupled to control circuitry"); Ex. D ¶ 73.

Claims "cannot be rewritten … to save their validity." *Hill-Rom Servs. v. Stryker Corp*., 755 F.3d 1367, 1374 (Fed. Cir. 2014). Plaintiff attempts to do exactly this by replacing the purely functional phrase "motion sensing" with "control circuitry," thereby removing any requirement for the claimed "watch" to *sense* motion. But Plaintiff already admitted to the PTAB that the claim "language requires that the watch device itself contain motion sensing capability." Ex. H at 8. Because a POSITA could not ascertain the proper scope of the functional term "said device includes motion sensing …" in view of the specification, the term is indefinite.

33

DATED: April 10, 2025                    <u>*/s/ Mark Liang*</u>

Melissa Smith
melissa@gillamsmithlaw.com
**GILLAM & SMITH LLP**
303 S. Washington Ave.
Marshall, Texas 75670
Telephone: (903) 934-8450

G. Blake Thompson (Tex. #24042033)
Blake@TheMannFirm.com
**MANN | TINDEL | THOMPSON**
112 E. Line Street, Suite 304
Tyler, Texas 75702
Telephone: (903) 657-8540

Darin W. Snyder
dsnyder@omm.com
Luann Simmons
lsimmons@omm.com
Mark Liang *(pro hac vice)*
mliang@omm.com
Bill Trac
btrac@omm.com
**O'MELVENY & MYERS LLP**
Two Embarcadero Center, 28th Floor
San Francisco, CA 94111
Telephone: (415) 984-8700

Xin-Yi Zhou (Tex. #24127916)
vzhou@omm.com
Paige Hardy *(pro hac vice)*
phardy@omm.com
**O'MELVENY & MYERS LLP**
400 South Hope Street, 18th Floor
Los Angeles, CA 90071
Telephone: (213) 430-6000

Marc Pensabene *(pro hac vice)*
mpensabene@omm.com
**O'MELVENY & MYERS LLP**
1301 Avenue of the Americas, 17th Fl.
New York, NY 10019
Telephone: (212) 326-2000

Cason G. Cole (Tex. #24109741)
ccole@omm.com
**O'MELVENY & MYERS LLP**
2801 North Harwood Street, Suite 1600
Dallas, TX 75201-2692
Telephone: (972) 360-1900


*Attorneys for Defendants Samsung
Electronics, Ltd., and Samsung Electronics
America, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that all counsel of record who have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on April 10, 2025.

*/s/ Melissa R. Smith*
Melissa R. Smith
