**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| MULLEN INDUSTRIES LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | NO. 2:24-cv-0049-JRG |
| | § | |
| SAMSUNG ELECTRONICS CO., LTD., and SAMSUNG ELECTRONICS AMERICA, INC., | § § | |
| | § | |
| Defendants. | § | |

**CLAIM CONSTRUCTION ORDER**

In this patent case, Mullen Industries LLC alleged infringement by Samsung Electronics Co., Ltd., and Samsung Electronics America, Inc., (together, "Samsung") of claims from eight patents. Recently, however, the parties have resolved their disputes regarding five of those patents. *See* Joint Notice Regarding Dismissed Asserted Claims, Dkt. No. 139. Mullen still asserts U.S. Patents 11,109,218, 11,122,418, and 11,234,117.

Only the '218 Patent and '117 Patent are at issue for claim construction. These patents, which are related, concern systems and methods for locating mobile devices. *See* '218 Patent at 1:18–20 ("[T]his invention relates to systems and methods for remotely determining a device's location."); '117 Patent at 1:18–20 (same). The parties have 8 remaining disputes about claim scope, most of which relate to the '117 Patent. Having considered the parties' briefing, along with arguments made at a June 17, 2025 hearing, the Court resolves those disputes as follows.

## I. BACKGROUND

U.S. Patents 11,109,218 and 11,234,117, which are related,[1] concern "systems and methods for allowing a user of a cellular phone to locate the position of a different user's cellular phone based upon requestor-assigned access rights." '218 Patent at 1:39–43. Using a Global Positioning System (GPS), the phone "receive[s] GPS signals from satellites and determine[s] its location based on the time it takes the GPS signals to reach the [phone]." *Id.* at 1:22–25.

Despite that GPS systems have already been integrated into phones, "the location of a device that is determined by these GPS signals are only minimally utilized." *Id.* at 1:29–31. The patents resolve this issue by providing additional location data to an authorized requestor, such as a map of the requested user's cellular phone that changes in real time, coordinates of the located cellular phone, directions to the cellular phone from the requestor's phone, and information about the located user's position, such as whether the user is near landmarks or businesses. *Id.* at 2:22–33.

Figure 2 of the '218 Patent (below) shows "a simplified locating feature constructed in accordance with the principles of the present invention." '218 Patent at 4:52–54. In step 202, a user requests the location of another user's device. Step 206 then evaluates if the requesting user has rights to access that location. If the requesting user does not have access rights, step 204 informs the requesting user he is not authorized to know the location. But if the requestor has access rights, "step 208 is initiated and the allowed location information is provided to the user in step

[1] Each of these patents indirectly claims priority to and the benefit of U.S. provisional application no. 60/367,967, filed March 25, 2002, and each issued from a continuation application claiming the benefit of U.S. application no. 10/400,296, filed March 25, 2003. '218 Patent at [60], [63]; '117 Patent at [60], [63].

210," from "a remote database, facility, distribution center, or any other system." '218 Patent at 4:67–5:2, 5:12–14. The patents contemplate using a remote database containing the location data when there are multiple users, but also that "a requesting user's cell phone may *directly* request a user's location from the requested user's cellphone without the need for a database" to provide added security. *Id.* at 5:34–37 (emphasis added).




**FIG. 2**

Most of the disputes relate to four independent claims from the '117 Patent—Claims 1, 15, 29, and 42. Each claim recites a processor, a positioning system for determining a location, and memory storing programing. For example, Claim 1, which is the shortest of the four claims, recites:

> 1. A wireless telephone comprising:
>
> a processor;

> a positioning system for determining a location of said wireless telephone; and
>
> memory storing programming capable of:
>
> providing said location of said wireless telephone to a remote server;
>
> instructing said remote server to change a **list of users** on said remote server for a profile associated with said wireless telephone that are allowed to access said location by way of said remote server providing said location from said remote server to at least one of said users of said **list of users**, wherein each user of said **list of users** is representative of one of a plurality of wireless telephones; and
>
> receiving and displaying directional information to one of said plurality of wireless telephones, wherein said directional information is representative of directions between said location and a second location associated with said one of said plurality of wireless telephones.

’117 Patent at 13:18–38 (disputed term in bold). In addition to the meaning of “list of users,” the parties dispute whether the three programming steps must be performed in some order. The parties also dispute the extent of an order-of-steps requirement for Claims 15, 29, and 42, as well as the meanings of two other terms—“distance-based” and “region-based.” Finally, the parties dispute whether Claim 11 of the ’218 Patent is indefinite.

## II. LEGAL STANDARDS

### A. Generally

“[T]he claims of a patent define the invention to which the patentee is entitled the right to exclude.” *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc). As such, if the parties dispute the scope of the claims, the court must determine their meaning. *See, e.g.*, *Verizon Servs. Corp. v. Vonage Holdings Corp.*, 503 F.3d 1295, 1317 (Fed. Cir. 2007) (Gajarsa, J., concurring in part); *see also Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 390 (1996), *aff’g,* 52

F.3d 967, 976 (Fed. Cir. 1995) (en banc).

Claim construction, however, "is not an obligatory exercise in redundancy." *U.S. Surgical Corp. v. Ethicon, Inc.*, 103 F.3d 1554, 1568 (Fed. Cir. 1997). Rather, "[c]laim construction is a matter of [resolving] disputed meanings and technical scope, to clarify and when necessary to explain what the patentee covered by the claims . . . ." *Id.* A court need not "repeat or restate every claim term in order to comply with the ruling that claim construction is for the court." *Id.*

When construing claims, "[t]here is a heavy presumption that claim terms are to be given their ordinary and customary meaning." *Aventis Pharm. Inc. v. Amino Chems. Ltd.*, 715 F.3d 1363, 1373 (Fed. Cir. 2013) (citing *Phillips*, 415 F.3d at 1312–13). Courts must therefore "look to the words of the claims themselves . . . to define the scope of the patented invention." *Id.* (citations omitted). The "ordinary and customary meaning of a claim term is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention, *i.e.,* as of the effective filing date of the patent application." *Phillips*, 415 F.3d at 1313. This "person of ordinary skill in the art is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification." *Id.*

Intrinsic evidence is the primary resource for claim construction. *See Power-One, Inc. v. Artesyn Techs., Inc.*, 599 F.3d 1343, 1348 (Fed. Cir. 2010) (citing *Phillips*, 415 F.3d at 1312). For certain claim terms, "the ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words." *Phillips*, 415 F.3d at 1314; *see also Medrad, Inc. v. MRI Devices Corp.*, 401 F.3d 1313, 1319 (Fed. Cir. 2005) ("We cannot look at the ordinary meaning of the term . . . in a vacuum. Rather, we must

look at the ordinary meaning in the context of the written description and the prosecution history.”). But for claim terms with less-apparent meanings, courts consider “those sources available to the public that show what a person of skill in the art would have understood disputed claim language to mean . . . [including] the words of the claims themselves, the remainder of the specification, the prosecution history, and extrinsic evidence concerning relevant scientific principles, the meaning of technical terms, and the state of the art.” *Phillips*, 415 F.3d at 1314.

**B. Order of Steps**

Many of the parties’ disputes relate to whether the programming recited in the apparatus claims must be performed in some order. Resolving that question depends on whether the programming steps are reciting a process or method of doing something, as opposed to, for example, unrelated capabilities or even multiple methods. In other words, unlike a method or process claim, an apparatus programmed a certain way does not necessarily require each of the programmed steps to relate to one another.

But to the extent the programming is directed to a method or process, “unless the steps of a method claim actually recite an order, the steps are not ordinarily construed to require one.’” *Mformation Techs., Inc. v. Research in Motion Ltd.*, 764 F.3d 1392, 1398 (Fed. Cir. 2014) (quoting *Interactive Gift Express, Inc. v. Compuserve Inc.*, 256 F.3d 1323, 1342 (Fed. Cir. 2001)) (cleaned up). “When ‘determining if the steps of a method claim that do not otherwise recite an order, must nonetheless be performed in the order in which they are written . . . [f]irst, we look to the claim language to determine if, as a matter of logic or grammar, they must be performed in the order written.’” *Hytera Communc’ns Co. v. Motorola Sols., Inc.*, 841 F. App’x 210, 218 (Fed. Cir. 2021) (quoting *Altiris, Inc. v. Symantec Corp.*, 318 F.3d 1363, 1369 (Fed. Cir. 2003)). “A matter of grammar” includes whether an earlier-recited step provides antecedent basis for a later-recited step. *See*

*id.* at 218 (reasoning that the step of "determining whether *the* timeslot is a current desired timeslot" must be performed after the step of "preparing to transmit a particular payload type in *a* timeslot" because of the antecedent basis the former provides the latter); *see also Medtronic, Inc. v. Teleflex Life Scis. Ltd.*, Nos. 2022-1605, 2022-1606, 2024 WL 1208642, at *3 (Fed. Cir. 2024) ("Although not an ironclad rule, when the current step of a method claim refers to a previous step using the definite article 'the,' the claim language indicates that the previous step occurs sequentially before the current step.").

### C. Indefiniteness

A patent is indefinite "if its claims, read in light of the specification delineating the patent, and the prosecution history, fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention." *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 901 (2014). The claims "must be precise enough to afford clear notice of what is claimed" while recognizing that "some modicum of uncertainty" is inherent due to the limitations of language. *Id.* at 909. "Indefiniteness must be proven by clear and convincing evidence." *Sonix Tech. Co. v. Publ'ns Int'l, Ltd.*, 844 F.3d 1370, 1377 (Fed. Cir. 2017).

## III. THE LEVEL OF ORDINARY SKILL IN THE ART

The level of ordinary skill in the art is the skill level of a hypothetical person who is presumed to have known the relevant art at the time of the invention. *In re GPAC*, 57 F.3d 1573, 1579 (Fed. Cir. 1995). In resolving the appropriate level of ordinary skill, courts consider the types of and solutions to problems encountered in the art, the speed of innovation, the sophistication of the technology, and the education of workers active in the field. *Id.* Importantly, "[a] person of ordinary skill is also a person of ordinary creativity, not an automaton." *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 421 (2007).

Here, neither party addresses the level of ordinary skill in its briefing. Samsung's expert, however, characterizes a skilled artisan as one with a "bachelor's degree in computer science, computer engineering, electrical engineering, or a similar degree, with one or two years of experience with wireless networks and devices, such as cellphones and personal digital assistants ('PDAs'), as well as wireless positioning technologies, such as Global Positioning System ('GPS') or triangulation." Bederson Decl., Dkt. No. 100-5 ¶ 36. Because Mullen does not contest this level of ordinary skill, the Court adopts Samsung's characterization for the purpose of construing the disputed terms.

## IV. THE DISPUTED TERMS

### A. Order of Steps ('117 Patent, Claim 1)

| Mullen's Construction | Samsung's Construction |
|---|---|
| Plain and ordinary meaning; no order required. | Steps [d]–[f] must be performed in order |

Claim 1 of the '117 Patent recites:

> 1. A wireless telephone comprising:
>
> [a] a processor;
>
> [b] a positioning system for determining a location of said wireless telephone; and
>
> [c] memory storing programming capable of:
>
> [d] providing said location of said wireless telephone to a remote server;
>
> [e] instructing said remote server to change a list of users on said remote server for a profile associated with said wireless telephone that are allowed to access said location by way of said remote server providing said location from said remote server to at least one of said users of said list of users, wherein each user of said list of users is representative of one of a plurality of wireless telephones; and

> [f] receiving and displaying directional information to one of said plurality of wireless telephones, wherein said directional information is representative of directions between said location and a second location associated with said one of said plurality of wireless telephones.

’117 Patent at 13:18–38.

Samsung says these steps must be performed in order. According to Samsung, Step [d] must precede Step [e] because the latter relies on the result of the former. Dkt. No. 100 at 1–2. Moreover, says Samsung, Step [e] relies on antecedent basis in Step [d] for both “said remote server” and “said location.” *Id.* at 2. Finally, Step [e] must precede Step [f] for similar reasons. *Id.* Mullen points to the specification’s disclosure that the user can make changes at any time, and stresses antecedent basis is insufficient to impose a required temporal order. Dkt. No. 88 at 7–8.

The Court agrees with Mullen. The programming only requires providing a location, instructing a remote server to change a list of users that can access the location, and receiving and displaying directional information. Nothing about these steps requires an order or even requires that they be connected. The claim simply requires a phone that can participate in a locating system—that is, it can provide its location for other authorized phones to use, and it can receive and display information about the location of those other phones.

Samsung’s arguments to the contrary aren’t persuasive. Samsung says “Step [e] relies on the result of Step [d],” Dkt. No. 100 at 1, but the Court doesn’t see how. Step [d] requires providing the claimed phone’s location to a remote server, but Step [e] doesn’t depend on the remote server receiving that location. Also, Step [b], rather than Step [d], provides the antecedent for Step [e]’s “said location.”

Samsung also says “Step [e] must precede Step [f] because Step [e] is about allowing access

to ‘said location’ from said remote server.” Dkt. No. 100 at 2. Clearly, whatever is sending the directional information must have “said location” to derive it, but Step [f] is silent about from where the “directional information” comes. Also, the specification contemplates that Step [f] is never executed because no other user grants the user of the claimed phone the right to know the location of other phones. Thus, the claimed phone might only be providing location information for others’ use without ever receiving location information from those other users.

The only antecedent basis that supports Samsung’s position is “a plurality of wireless telephones” in Step [e] for “said plurality of wireless telephones” in Step [f], but that just ties the two limitations together structurally. For example, a claim directed to maintaining a car might first recite the step of “inspecting the tread of the tires” and then recite the step of “inflating said tires to the recommended pressure,” but that does not, without more, require the inspecting and inflating steps to be performed in the recited order. That’s to this claim, which simply has two limitations referring to the same “plurality of telephones.” Accordingly, the Court concludes Claim 1 does not require the programming steps, which are just separate capabilities, to be performed in any order.

### B. Order of Steps (’117 Patent, Claim 15)

| Mullen’s Construction | Samsung’s Construction |
|---|---|
| Plain and ordinary meaning: to the extent any order is required, the apparatus is capable of: [d] before [e]; [e] before [h]; [f] before [g]; [g] before [i]; [i] before [j]. | Steps [d]–[j] must be performed in order. |

Claim 15 recites:

> 15. A wireless telephone comprising:
>
> [a] a processor;
>
> [b] a positioning system for determining a location of said wireless telephone; and

[c] memory storing programming capable of:

[d] displaying a plurality of users, wherein each one of said plurality of users is associated to a different one of a plurality of wireless telephones;

[e] receiving a first manual input in a form of a selection of one of said plurality of users;

[f] receiving an input in a form of a login and a second manual input in a form of a password;

[g] providing said login and said password to a remote server for use in determining whether to allow access of location information for said one of said plurality of wireless telephones associated to said selected one of said plurality of users, said determining including identifying a user of said wireless telephone using said login, determining said password is associated with said login, and determining whether said selected one of said plurality of users has provided access rights for said location information to said user of said wireless telephone,

[h] assigning location access rights to said one of said plurality of wireless telephones associated with said selected one of said plurality of users for obtaining said location of said wireless telephone;

[i] receiving said location information for said one of said plurality of wireless telephones from a server; and

[j] displaying said location information.

’117 Patent at 14:23–52. Samsung says all the steps must be performed in order.

The disputes center on Steps [f], [g], and [h]. Starting with Step [f], Samsung says Step [e] must precede Step [f] because those steps recite *first* and *second* manual inputs respectively. Dkt. No. 100 at 3. There is no reason, however, to think that “first” and “second” in this context refer to a required order of steps, as opposed to simply different manual inputs. The claim requires two separate manual inputs, and the drafter chose to differentiate between those two inputs using the

"first" and "second" modifiers. Notably, Samsung does not point to any authority that suggests using "first" and "second" in this way imposes an order of steps. Generally, "[t]he use of the terms 'first' and 'second' is a common patent-law convention to distinguish between repeated instances of an element or limitation." *3M Innovative Props. Co. v. Avery Dennison Corp.*, 350 F.3d 1365, 1371 (Fed. Cir. 2003) (rejecting that the term "multiple embossed pattern" in an apparatus claim required that the patterns be created sequentially based on the recitation of "a first embossed pattern and a second embossed pattern").

Next, Samsung says Step [g] must follow Steps [e] and [f] because these steps require the selection of a user from Step [e] and the login and password from Step [f]. Dkt. No. 100 at 4. Step [g], however, only requires providing the login and password to the remote server. Although Step [g] references the selection of a user, it does so only to limit for what the login and password will be used. It says nothing about when or how the user selection gets to the remote server. The Court agrees that before the remote server determines whether to allow access, it must have the selection, but "determining whether to allow access of location information" is not a step implemented by the claimed phone.

Finally, Samsung says Step [h] must follow Step [g] because, as a matter of logic, access rights would be assigned after "determining whether said selected one plurality of users has provided access rights." Dkt. No. 100 at 4. Mullen responds that these are independent concepts, with Step [g] referring to a different user's location information and Step [h] referring to providing that different (or some other) user with location information about the *claimed* phone. Dkt. No. 102 at 5.

The Court agrees with Mullen. Step [g] provides the password for the remote server to determine "whether to allow access [by the claimed device] of location information" for the

selected user. Step [h], however, concerns "assigning location access rights to" a device associated with a selected user. Figures 4–8, for example, show the user trying to locate "Susan Pracht," and Figures 9–10, show the same user giving location rights to "Mike Gerome." A device operating in this type of system preferably has both capabilities, not just one or the other, and that's the "programming" recited by the claim.

The parties have another dispute with respect to this claim—whether the other steps only need to be "completed," rather than "performed," in order. *See* Dkt. No. 100 at 5–6. Mullen relies on *Ancora Techs., v. LG Elecs. Inc.*, No. 1-20-CV-00034-ADA, 2020 WL 4825716, at *5 (W.D. Tex. Aug. 19, 2020), for the notion that "even when an order is required it refers to when the steps 'complete.'" Dkt. No. 102 at 5. Samsung, on the other hand, cites *Medtronic, Inc. v. Teleflex Life Scis. Ltd.*, 2024 WL 1208642 (Fed. Cir. 2024), which it says rejects parallel performance of steps as sufficient for infringement. Dkt. No. 100 at 5–6.

But given the Court's adoption of what is essentially Mullen's position on the ordering of steps, this dispute becomes less of an issue. If, for example, Step [d] must precede Step [e], it makes no sense that the "displaying" step could start but not complete, yet the user could nonetheless make a selection. Similarly, if Step [i] must precede Step [j], it makes no sense that the "receiving" step could be only partially complete yet the location information could be displayed. Accordingly, the Court holds each of the steps that must be performed before another step must both start and complete before starting the following step. Those steps are [d] before [e], [e] before [h], [f] before [g], [g] before [i], and [i] before [j].

### C. Order of Steps ('117 Patent, Claim 29)

| Mullen's Construction | Samsung's Construction |
|---|---|
| Plain and ordinary meaning: to the extent any order is required, the apparatus is capable of: [d] before [e]; [f] before [g]. | Steps [d]–[g] must be performed in order. |

Claim 29 recites:

> 29. A wireless telephone comprising:
>
> [a] a processor;
>
> [b] a positioning system for determining a location of said wireless telephone; and
>
> [c] memory storing programming capable of:
>
> [d] receiving user information comprising a manually entered login associated with a user of said wireless telephone and a manually entered password associated with said login;
>
> [e] providing said location for recording on a remote system in association with said user information;
>
> [f] selecting a location-based event that is based, at least in part, on a location of a second wireless telephone, wherein said location-based event is operable to be manually pre-selected from a list of at least three types of location-based events; and
>
> [g] receiving a location-based event notification corresponding to said selected location-based event as a result of, at least in part, location access rights of said wireless telephone from said second wireless telephone,
>
> [h] wherein a first one of said at least three types of location-based events is, at least in part, region-based, and a second one of said at least three types of location-based events is, at least in part, distance-based.

'117 Patent at 15:42–67.

The parties dispute whether Step [f] must follow Steps [d] and [e]. Dkt. No. 100 at 7.

Samsung says that, as a matter of logic, "Step [f] cannot be performed until the prior steps complete because the 'location-based event' in Step [f] is 'manually pre-selected from a list of three types of location-based events,' and the claim recites that one type of 'location-based event' is 'distance-based.'" *Id.* "[B]ecause the 'location-based event' relies on the 'location of the wireless telephone,' the device must provide 'said location' to the server (at Step [e]) before a location-based event (such as a 'distance-based' event) can be selected at Step [f]." *Id.*

The Court disagrees. As the specification shows, "selecting a location-based" event is simply the process of selecting a menu item, without regard to whether the location has yet been provided. '117 Patent at 9:27–44, fig.11. In fact, Step [g] confirms as much because that step requires receiving the location-based event notification. The Court sees no reason why, as a matter of logic, selecting a menu option must come after either "receiving user information" or "providing said location for recording on a remote system." Accordingly, the Court holds Step [d] must precede [e], and [f] must precede [g], but no further ordering is required.

### D. Order of Steps ('117 Patent, Claim 42)

| Mullen's Construction | Samsung's Construction |
|---|---|
| Plain and ordinary meaning; no order required. | Steps [d]–[g] must be performed in order. |

Claim 42 recites:

> 42. A wireless telephone comprising:
>
> [a] a processor;
>
> [b] a positioning system for determining a location of said wireless telephone; and
>
> [c] memory storing programming capable of:
>
> [d] requesting a location of a second wireless device from a server located remotely from said wireless telephone and said second wireless device;

> [e] displaying on said wireless telephone an option to request location access rights from said second wireless device after it is determined that said wireless telephone does not have location access rights for said second wireless device;
>
> [f] transmitting a request to said server that said location access rights be assigned for said wireless telephone by said second wireless device; and
>
> [g] receiving said location of said second wireless device from said server dependent upon said access rights.

’117 Patent at 16:55–17:5. Once more, the parties dispute whether the steps must be performed in order.

Samsung says they must. First, Step [d] recites “requesting a location of *a second wireless device*” from a remote server, while Step [e] recites “displaying on said wireless telephone an option to request location access rights from *said second wireless device* after . . . determin[ing] that said wireless telephone does not have location access rights for *said second wireless device*.” Dkt. No. 100 at 8. Samsung also says this order makes sense, requiring the user to first request the location of another “device,” and second, after determining that the user has no rights to obtain that location, the user requests those missing rights. *Id.*

The Court agrees with Samsung. Step [d] provides antecedent basis for “the second wireless device” in Steps [e] and [f]. Logically, Step [f] must happen after Step [e], as it would not make sense to present the option to request location rights (Step [e]) after already making that request (Step [f]). Finally, Step [g] logically follows Step [f]. Thus, unlike aspects of the other claims, the programming here, when executed, implements a complete method where all the steps are related. The Court therefore adopts Samsung’s construction that Steps [d]–[g] must be performed in order.

### E. "list of users" ('117 Patent, Claim 1)

| Mullen's Construction | Samsung's Construction |
|---|---|
| Plain and ordinary meaning | "series of two or more other users" |

This claim recites providing the location of a wireless telephone to a remote server and instructing a remote server to change a list of users that are allowed to access the location. '117 Patent at 13:23–32. The parties dispute whether a "list of users" requires more than one user and whether the user of the wireless telephone can be one of those users.

Taking up the second issue first, the surrounding claim language seemingly supports Samsung's position with respect to the claim as a whole. In fact, Mullen agrees "the server needs to be able to have a list of other users that can access the user of the cell phone's location." Hr'g Tr., Dkt. No. 123 at 97:22–24. But that does not change the meaning of "list of users" in the abstract, which has no such requirement.

As for how many users must compose a list, Samsung says "[t]he claim language, the applicant's prosecution statements, and the specification all confirm that a 'list of users' refers to two or more other users." Dkt. No. 100 at 18. It stresses "users" is plural and cites statements made by the applicant during prosecution that "an individual name is not a list," "[a] list is not one," "[a] list is a series of more than one," and "[t]here is no list of one—only one." *Id.* at 18–19.

Samsung's disclaimer argument relates to what was then Claim 3, which at the time recited "creating on a first wireless telephonic device a list including a plurality of users, wherein each one of said plurality of users is associated with a different one of a plurality of telephonic device[s]." Remarks/Arguments, Dkt. No. 100-3 at 11–12 (quoting the Office Action). The examiner rejected Claim 3 based in part on Figure 16 of U.S. Published Application No. 2001/0048364 (Kalthoff) disclosing the "creating" limitation. *Id.* at 12. Kalthoff shows a phone displaying a

"menu of friends" (108). When any of the friends on the menu is within a predetermined distance, the phone provides a "friend alert" on the display, as shown in Figure 16B. Kalthoff, Dkt. No. 102-3 at [0050].




FIG. 16A




FIG. 16B

In a reply to the Office Action, the applicant characterized Claim 3 as "includ[ing] creating a list and allowing transmission of location information to the list." Remarks/Arguments, Dkt. No. 100-3 at 12. The applicant then asserted "FIG. 16A does not show or suggest such a feature. Kalthoff merely alleges enabling friend alerts for individual names. Kalthoff is silent on creating a list and allowing location information to be sen[t] to the list. An individual name is not a list." *Id.*

The examiner, however, maintained the rejection, asserting "[a]n individual name is a list, it's a list of one." Remarks/Arguments, Dkt. No. 100-4 at 13 (quoting the Office Action). In response, the applicant remarked that "[t]he Examiner's argument is incorrect. A list is not one. A list is a series of more than one. There is no list of one—only one." *Id.* Samsung calls this unambiguous disclaimer. Dkt. No. 100 at 19.

In its reply, Mullen accuses Samsung of mischaracterizing the prosecution history. Dkt. No. 102 at 9. It says Kalthoff's display reflected only a user's ability to enable location alerts on an 'individual' basis. . . . Kalthoff's display showed the individual names of friends, regardless of

whether location alerts were 'enabled' for those friends." *Id.* Thus, says Mullen, the "[a]pplicant stated a friend's individual name and independent designation was not and could not be a list. *Id.*

The Court agrees with Samsung. During prosecution, the applicant twice argued a list cannot have only one element, and then defined a "list" to be "a series of more than one." Regardless of whether the applicant made other arguments to try to overcome Kalthoff, such as that the displayed menu of friends was not a list for other reasons, these statements about the number of elements in a list are clear disclaimer. Accordingly, to the extent the ordinary meaning of "list of users" is different, the applicant narrowed that meaning through the prosecution-history statements to "a series of more than one user."

**F. "region-based" and "distance-based" ('117 Patent, Claim 29)**

| Term | Mullen's Construction | Samsung's Construction |
|---|---|---|
| "region-based" | Plain and ordinary meaning | "based on a wireless telephone entering or leaving a user-specified geographic area" |
| "distance-based" | Plain and ordinary meaning | "based on a wireless telephone being within a user-specified distance of another wireless telephone's current location" |

This claim recites a user of a device "selecting" and "receiving" a "location-based event notification" that can be either "region-based" or "distance-based." '117 Patent at 15:63–67. The parties have three disputes about these terms. First, they dispute whether the region or distance that is the subject of the location-based event must be specified by a user, as opposed to a device's programming. Second, they dispute the meaning of "region." Third, they dispute the correct reference point for measuring the distance in the case of a "distance-based event."

1. *Whether the "region" and "distance" that is the subject of the event notifications must be "user-specified"*

Samsung's justification for this part of its constructions comes from surrounding claim language and Figure 11 of the '117 Patent. *See* Dkt. No. 100 at 21. Claim 29 requires "selecting a location-based event . . . wherein said location-based event is operable to be manually pre-selected from a list of at least three types of location-based events." '117 Patent at 15:53–57. Figure 11 (below) shows a display screen (1100) of alert options that allows a user to set up alerts based on the location of specific users.




FIG. 11

Neither of these support this part of Samsung's construction. Although Claim 29 includes other language that may end with the result Samsung seeks, nothing about "region-based" or "distanced-based" by themselves means anything other than "based on region" or "based on distance." Figure 11 is at most an exemplary embodiment, and Samsung provides no good reason why it should be limiting as to these terms.

2. *The meaning of "region-based"*

The claims refer to both "region-based" and "distanced-based" location events, which

Samsung says cannot mean the same thing. According to Mullen, however, nothing in the record requires “region-based” to be mutually exclusive from “distance-based.” It says “region-based” alerts can also be based on distance, such as by providing an alert when a second user comes within a “region” defined by a circle having a predetermined radius around a first user. Hr’g Tr., Dkt. No. 123 at 7:2–6.

The Court agrees with Samsung. As used by the patent, a region is not an area around the user’s position, but an area defined independent of the user’s position. For example, Figure 11 presents the presence of the two users as “in the same city” as a region-based event, and those city boundaries do not depend on the location of the user. As Mullen acknowledges, “the specification describes examples of region-based events that are based on whether a user is within a country, state, or city.” Dkt. No. 88 at 22. Under the doctrine of *ejusdem generis*, this suggests that regions are independent of the position of the user and are generally fixed. Accordingly, the Court construes “region-based” as “based on a geographic area.”

*3. The correct reference point for measuring distance for a “distance-based event”*

Samsung argues “[e]very example of a ‘distance-based’ event in the specification measures distance based on the current location of another device.” Dkt. No. 100 at 24. Samsung also says “[t]he specification explains how distance-based events facilitate interactions and meetings between users who come within a certain distance or proximity of each other.” *Id.* (citing ’117 Patent at 5:64–6:15). Finally, Samsung calls Mullen’s interpretation of this term “unbounded” and indistinguishable from “region-based,” which are presumed to have different meanings. *Id.*

The Court disagrees with Samsung that “distance-based” requires the distance to be measured from the user. “Distance-based” modifies “location-based event that is based, at least in part,

on a location of a second wireless telephone." Nothing in the specification suggests that a "distance-based location event" *must* be limited to the distance between the device of the claims and some other device. Samsung merely points to exemplary embodiments, which the Court declines to import. Instead, the Court will give this term a "plain and ordinary meaning" construction, which is simply "based on a distance."

### G. "said wireless telephonic device" ('218 Patent, Claim 11)

| Mullen's Construction | Samsung's Construction |
|---|---|
| "said wireless telephonic device" refers to "a wireless device" recited earlier in the claim | Indefinite |

This is an antecedent-basis dispute. Claim 11 recites:

> 11. A system comprising:
>
> a wireless device operable to provide a display screen after a request from said wireless telephonic device for access to a first location of a first wireless device, wherein said display screen includes a map from the perspective of said wireless device, said display screen includes indicia on said map representative of said first location, said display screen includes indicia on said map representative of a second user according to a second location obtained from a second wireless device, and said display screen includes a distance from said wireless telephonic device to said first location, said display screen includes a compass, said display screen includes an address of said first location, and said display screen includes a travel time based on at least the first location and the location of said wireless telephonic device.

Dkt. No. 100 at 27 (highlighting by Samsung). According to Samsung, the claim "is indefinite because there is no antecedent basis for the phrase 'said wireless telephonic device.'" *Id.* Mullen says "said wireless telephonic device" (in pink) refers to "a wireless device" (in yellow). Dkt. No. 88 at 27. But according to Samsung, "this language means that 'said wireless telephonic device'

issues a request and this request results in a separate, subsequent action of providing a 'display screen' on another device, i.e., the 'wireless device.'" Dkt. No. 100 at 28. Thus, "a wireless device" cannot provide antecedent basis for "said wireless telephonic device." *Id.*

This term is not indefinite. A skilled artisan would understand "said wireless telephonic device" refers to "a wireless device" in the preceding clause. The claim contemplates three devices—a device that shows a map with the location of two other devices on it. That aligns with the descriptions of Figures 4–6. In Figure 4, the user selects another user to locate, such as "Susan Pracht." After locating the second user, as shown in Figure 6 (below), the device displays the other user's location on a display screen (600). The map also shows another user, "Rita," but without the distance, compass, and address information recited in the claim for the "first user." *See generally* '117 Patent at 7:31–8:56. In contrast, nothing in the specification discloses a wireless device that issues a request, after which a different wireless device displays the map.




FIG. 6

Samsung also points to the prosecution history. Specifically, Samsung says the claim

originally had no antecedent-basis problem, but that the applicant then modified the claim to remove the antecedent basis for "a wireless device." Dkt. No. 100 at 28. Citing *Ajinomoto Co. v. ITC*, 932 F.3d 1342 (Fed. Cir. 2019), Samsung says this shows "wireless device" is different from "wireless telephonic device." Dkt. No. 100 at 28–29.

*Ajinomoto*, however, simply refers to the well-known presumption that different words have different meanings. *See Ajinomoto*, 932 F.3d at 1351 (noting that "[j]ust as 'when different words are used in separate claims, they are presumed to have different meanings' . . . when a word is changed during prosecution, the change tends to suggest that the new word differs in meaning in some way from the original word" (quoting *Aspex Eyewear, Inc. v. Marchon Eyewear, Inc.*, 672 F.3d 1335, 1349 (Fed. Cir. 2012)). But that does not necessarily mean different words or phrases cannot refer to the same thing.

Here, the Court agrees that "wireless device" and "wireless telephonic device" have different meanings, with the former being broader than the latter, but that's not the issue. Rather, the issue is whether the narrower and later-used term refers to the same element recited earlier. As an analogy, this would be like a claim first referring to "a vehicle" and then referring to that same vehicle as "the car." "Vehicle" and "car" have different scope but can nonetheless refer to the same claim element if that reference is clear to a skilled artisan.

Samsung also cites *Bushnell Hawthorne, LLC v. Cisco Sys., Inc.*, 813 F. App'x 522 (Fed. Cir. 2020), but that case is distinguishable as well. In *Bushnell*, the relevant claim recited:

> 1. A computer system for redirecting Internet communications, said system comprising:
>
> [first through fifth processors that perform various functions regarding "one or more IP Addresses," "one or more second IP Addresses," and "one or more third IP Addresses"]; and
>
> a sixth processor that analyzes a request submitted to said

> different IP Address for one or more alternative bit strings or character sets . . . .

*Bushnell*, 813 F. App'x at 523. The district court held the claim invalid in part because "said different IP Address" in the "sixth processor" limitation lacked antecedent basis and did not have a reasonably certain meaning to a skilled artisan. *Id.* at 524. The appellate court agreed:

> Claim 1 describes three classes of IP addresses prior to the "said different IP Address limitation: "one or more IP Addresses," "one or more second IP Addresses," or "one or more third IP Addresses." Each of those terms is presumed to have a separate meaning and, therefore, presumed to refer to *different* classes of IP addresses. With three different IP addresses to choose from, a POSA faced with the "said different IP Address" limitation is left to wonder which of the different IP addresses is "said" different one.

*Id.* at 526 (citations omitted). Here, however, there are not three options from which to choose—only one.

"Whether [a] claim, despite lack of explicit antecedent basis . . . nonetheless has a reasonably ascertainable meaning must be decided in context." *See Energizer Holdings, Inc. v. Int'l Trade Comm'n*, 435 F.3d 1366, 1370 (Fed. Cir. 2006). Because a skilled artisan would be reasonably certain in the context of this patent and claim that "said wireless telephonic device" refers to the earlier recited "a wireless device," this term is not indefinite.

## V. CONCLUSION

| Disputed Term | The Court's Construction |
|---|---|
| Order of Steps<br>('117 Patent, Claim 1) | Plain and ordinary meaning. |
| Order of Steps<br>('117 Patent, Claim 15) | [d] before [e]; [e] before [h]; [f] before [g]; [g] before [i]; [i] before [j] |

| | |
|---|---|
| Order of Steps<br>('117 Patent, Claim 29) | [d] before [e]; [f] before [g] |
| Order of Steps<br>('117 Patent, Claim 42) | Steps [d]–[g] must be performed in order |
| "list of users"<br>('117 Patent, Claim 1) | "a series of more than one user" |
| "region-based"<br>('117 Patent, Claim 29) | "based on a geographic area" |
| "distance-based"<br>('117 Patent, Claim 29) | Plain and ordinary meaning |
| "said wireless telephonic de-<br>vice"<br>('218 Patent, Claim 11) | Plain and ordinary meaning |

The Court **ORDERS** each party not to refer, directly or indirectly, to its own or any other party's claim-construction positions in the presence of the jury. Likewise, the Court **ORDERS** the parties to refrain from mentioning any part of this opinion, other than the actual positions adopted by the Court, in the presence of the jury. Neither party may take a position before the jury that contradicts the Court's reasoning in this opinion. Any reference to claim construction proceedings is limited to informing the jury of the positions adopted by the Court.

**SIGNED this 15th day of August, 2025.**

ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE